HONORABLE MICHELLE PETERSON

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

NANNETTE BASA, an individual,

Plaintiff,

v.

BRAND SHARED SERVICES, LLC, a
Delaware corporation,

Defendant.

Case No. 2:21-cv-00754 JLR

DEFENDANT BRAND SHARED
SERVICES, LLC'S MOTION FOR
PROTECTIVE ORDER QUASHING
DEPOSITION OF MEG NEWMAN

**HEARING DATE:**
**FRIDAY, SEPTEMBER 2, 2022**

*LCR 26(c) Discovery Conference*
*Conducted on August 22, 2022*

## I.     INTRODUCTION AND RELIEF REQUESTED

Defendant Brand Shared Services, LLC's ("Brand") respectfully moves the Court to

enter a protective order quashing the deposition of Meg Newman currently noted for August 30,

2022 because: (1) Ms. Newman is a C-suite executive that has no first-hand knowledge of the

issues in this case, (2) Plaintiff's attempt to depose Ms. Newman is calculated to harass or

annoy Ms. Newman and Brand rather than to uncover relevant evidence, and (3) Plaintiff's

discovery in this case has eclipsed the value of her claims and has exacted an undue burden and

expense on Brand that is disproportionate to the needs of the case.

In December 2020, Plaintiff Nannette Basa ("Plaintiff") was one of many employees laid

off in a company-wide reduction-in-force.  Plaintiff was selected for layoff because her job was

SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041
(206) 946-4910

86192760v.3

going to be obsolete: Plaintiff had been responsible for managing Brand's contingent labor program, and Brand made the strategic business decision to outsource that work to a professional managed service provider.  In addition, Plaintiff was selected for layoff because she had ongoing performance and communication issues.  The decision to lay off Plaintiff was made by her supervisor Karen Riapos in collaboration with Brand's then-Director of HR Compliance Michelle Roman.

For reasons that have no place in a fair and orderly discovery process, Plaintiff's counsel has unilaterally noted the deposition of Brand's Chief People Officer Meg Newman.  Ms. Newman is a C-suite executive who was never within two reporting levels of Plaintiff.  She did not make the decision to terminate Plaintiff's employment and Brand has never identified her in discovery as being responsible for Plaintiff's layoff.  Further, Ms. Newman's name has not been identified in any substantive discussions related to Plaintiff's selection for lay off.

Despite the fact that there is no evidence that Ms. Newman decided to layoff Plaintiff, and despite the fact that by Plaintiff's own admission Ms. Newman and Plaintiff did not know each other, Plaintiff harbors an inexplicable personal vendetta against Ms. Newman.

Plaintiff's attempt to depose Ms. Newman is clearly calculated to harass and annoy Ms. Newman and Brand.  Ms. Newman has no relevant knowledge of the issues in this case and she has nothing to offer that has not already been provided (or is expected to be provided) via written discovery and deposition testimony from others.

For the foregoing reasons, and as set forth in greater detail *infra*, Brand respectfully asks the Court to enter a protective order quashing Ms. Newman's deposition.

## II.     STATEMENT OF MATERIAL FACTS

DEFENDANT'S MOTION FOR PROTECTIVE ORDER
QUASHING DEPOSITION OF MEG NEWMAN - 2
(CAUSE NO. 2:21-CV-00754 JLR)

SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041
(206) 946-4910

## A.   Brand Has Gone Above-and-Beyond to Respond to Plaintiff's Extensive and Onerous Discovery Requests.

In the course of discovery, Brand has produced tens of thousands of pages of documents in response to Plaintiff's extensive requests for production. *Declaration of Emma Kazaryan in Support of Defendant's Motion for Protective Order Quashing Deposition of Meg Newman* ("*Kazaryan Decl.*") ¶ 7. Brand has also duly answered Plaintiff's numerous and often repetitive interrogatories. *Kazaryan Decl.* ¶ 8.

In addition to written discovery, Plaintiff's counsel has already taken one deposition in this case (the deposition of Plaintiff's supervisor Karen Riapos) and has noted <u>seven</u> additional depositions (including a multi-topic CR 30(b)(6) deposition and the deposition of Brand's former Director of HR Compliance Michelle Roman). *Kazaryan Decl.* ¶ 9.

The discovery Plaintiff has requested (and Brand has provided) in this matter has been disproportionate to the needs of this case. This is a simple, single plaintiff discrimination case. *Kazaryan Decl.* ¶ 2. It is undisputed that Plaintiff was laid off as part of a multi-employee reduction-in-force in December 2020 ("RIF"). *Id.* During her deposition in this case, Plaintiff admitted that nobody at Brand ever made any racist or ageist comments to her:

> Q:  Did anybody ever say anything negative to you because of your race?
> A:  No.
> Q:  Did anyone ever make fun of you because of your race?
> A:  No.
> Q:  did anyone ever make fun of you because of your age?
> A:  No.
> Q:  Did anyone ever say anything negative to you related to your age?
> A:  Did you say "say"?
> Q:  Yes.
> A:  Say, no.

*Kazaryan Decl.* ¶ 3, Ex. A.

DEFENDANT'S MOTION FOR PROTECTIVE ORDER
QUASHING DEPOSITION OF MEG NEWMAN - 3
(CAUSE NO. 2:21-CV-00754 JLR)

SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, WA 98104-4041
(206) 946-4910

86192760v.3

She also admitted that the only basis for her claim that she was discriminated

against is the fact that two younger, white employees on her team were retained while she

was laid off:

> Q:    Okay.  How old is Karen Riapos?
> A:    She's a couple years younger than me.
> Q:    Do you think she's racist?
> A:    I don't know.
> Q:    **Do you think she didn't like you because of your race?**
> A:    **I believe that was part of her decisions**.
> Q:    **What do you base that on**?
> A:    **She kept Ryan and Nicole**.
> Q:    That's the only – **is that the only basis?**
> A:    **At this time…**

*Kazaryan Decl.* ¶ 4, Ex. B (emphasis added).

Further, Plaintiff was unemployed for about a year before she fully mitigated her

damages.[1]  *Kazaryan Decl.* ¶ 5. Ex. C.  During that time, she did contract work that offsets her

economic damages.  *Kazaryan Decl.* ¶ 5, Ex. C.

**B.    Ms. Newman Does Not Have Unique, First-Hand, Non-Repetitive Knowledge of the Issues in this Case.**

Ms. Newman is Brand's Chief People Officer.  *Declaration of Meg Newman in Support

of Defendant's Motion for Protective Order Quashing Deposition of Meg Newman ("Newman

Decl.")* ¶ 2.  Ms. Newman joined Brand in July 2019, meaning she only oversaw the human

resources department at Brand for about a year-and-a-half before Plaintiff was laid off.

*Newman Decl.* ¶¶ 2-3.  During that time, Ms. Newman was always at least two reporting levels

---

[1] The evidence is that Plaintiff enjoyed her period of unemployment and took her time finding a new job: she bragged that she was not in a rush to find a job because of how easy it was for her to collect unemployment in the State of Washington and she told friends she enjoyed being (in her words) a "trophy wife."  Kazaryan Decl. ¶ 6, Ex. D.

DEFENDANT'S MOTION FOR PROTECTIVE ORDER
QUASHING DEPOSITION OF MEG NEWMAN - 4
(CAUSE NO. 2:21-CV-00754 JLR)

SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041
(206) 946-4910

removed from Plaintiff.  *Newman Decl.* ¶ 3.  Ms. Newman and Plaintiff worked from different

states.  *Newman Decl.* ¶ 3.  Plaintiff had very few interactions with Ms. Newman and if they

interacted, it was very brief and cursory and only because Ms. Newman oversaw the entire

department of 244 people.  *Newman Decl.* ¶ 4.  Indeed, at her deposition, Plaintiff testified that

she did not really know Ms. Newman: "If you are asking if I like Meg [Newman] or not, I --

there wasn't even time for me to get to know her or her approach to get to know me."  *Kazaryan*

*Decl.* ¶ 15, Ex. I.

       Plaintiff testified that she thought Ms. Newman was involved in the decision to

terminate her employment because "[s]he's the head of HR."  *Kazaryan Decl.* ¶ 15, Ex. I.

When pressed further about her understanding of Ms. Newman's involvement, Plaintiff said,

"From my understanding…you have to get approval from the functional leader.  They sign off

on it."  *Kazaryan Decl.* ¶ 15, Ex. I.

       But Ms. Newman did not make the decision to terminate Plaintiff's employment.

*Newman Decl.* ¶ 5.  In the course of written discovery, Brand has expressly stated that Ms.

Riapos and Ms. Roman made the decision to terminate Plaintiff's employment.  *Kazaryan Decl.*

¶ 11, Ex. F.   Subsequently, Plaintiff's counsel deposed Ms. Riapos and she testified that she

and Ms. Roman made the decision to terminate Plaintiff's employment.  *Kazaryan Decl.* ¶ 12,

Ex. G.

       In her deposition, Ms. Riapos already testified that she identified Plaintiff for layoff

because the business-need for Plaintiff's role was dissolving with the hiring of a managed

service provider and because of Plaintiff's ongoing performance and communication issues.

*Kazaryan Decl.* ¶ 12, Ex. G.  Ms. Riapos testified that she made the decision to hire a managed

DEFENDANT'S MOTION FOR PROTECTIVE ORDER
QUASHING DEPOSITION OF MEG NEWMAN - 5
(CAUSE NO. 2:21-CV-00754 JLR)

SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041
(206) 946-4910

86192760v.3

service provider based on her prior experience at another company.  *Kazaryan Decl.* ¶ 12, Ex. G.

In addition, in the course of discovery, Brand produced numerous emails that pertain to the performance and communication issues Ms. Riapos discussed during her deposition. *Kazaryan Decl.* ¶ 13. Brand also provided an itemized list of the performance issues and deficiencies that influenced the decision to terminate Plaintiff's employment including:

- Late payments that took a long time to resolve;

- Lack of work product (including, without limitation, missing deadlines);

- Combative communications;

- In March 2020, after one of Brand's third-party partners escalated a non-payment issue to Defendant's chief information officer Jay Fisher, who reported it to Ms. Riapos.  He revealed that when a contractor inquired about a payment he had not received, Plaintiff sent a curt and dismissive email response;

- While trying to resolve non-payment issue, Heather Morrison, Defendant's Director of IT and Finance, had trouble getting help from Plaintiff.  Ms. Morrison emailed Mr. Fisher stating, "Just for your information—Nannette was not helpful in the last email I sent—she kept telling me not to worry about it…"

- In approximately April 2020, Ms. Riapos received a complaint from Jerry Dolly that Plaintiff failed to help fill a role that he requested help with back in January 2020.  Due to Plaintiff's failure, Ms. Riapos had to step in to help fill the role.

- In June 2020, Mike Krach (a branch manager) complained to HR about persistent issues working with Plaintiff.  He wrote:

  > My experience with Nannette has been nothing but failure,  Over the past 3 years every time she has been involved with an employee placement/search for my region has come up with nothing.  I do not recall my region hiring anyone that she has referred to my region (I might be wrong but that is to the best of my memory).

*Kazaryan Decl.* ¶ 14, Ex. H.   Ms. Newman's name did not come up even once in any of these emails.  *Id.*

DEFENDANT'S MOTION FOR PROTECTIVE ORDER
QUASHING DEPOSITION OF MEG NEWMAN - 6
(CAUSE NO. 2:21-CV-00754 JLR)

SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041
(206) 946-4910

86192760v.3

As should be clear to Plaintiff from Ms. Riapos's testimony, the related emails, and Brand's detailed responses to interrogatories,  Ms. Newman does not have any unique, first-hand, non-repetitive knowledge regarding Plaintiff's layoff.

### C.   Plaintiff Wants to Depose Ms. Newman Because She Has an Inexplicable Personal Vendetta Against Her.

In the course of discovery, Brand uncovered that Plaintiff harbors an inexplicable personal vendetta against Ms. Newman, despite the fact that there is no evidence that Ms. Newman decided to layoff Plaintiff and despite the fact that Ms. Newman and Plaintiff did not know each other.  See generally *Kazaryan Decl*. ¶¶ 15-18, Exs. I-L.

In one post-termination message to a friend, Ms. Newman wrote that she was gathering up as much information as possible for her attorney because she wanted Ms. Newman to "suffer the consequences." *Kazaryan Decl*. ¶ 16, Ex. J.   In another message, Plaintiff baselessly disparaged Ms. Newman's integrity.  *Kazaryan Decl*. ¶ 17, Ex. K.   In a third message, Plaintiff proselytized that it was "time for someone to hold  Meg [Newman] accountable." *Kazaryan Decl*. ¶ 18, Ex. L.

### D.   Despite Being Aware of the Foregoing, Plaintiff's Counsel Has Refused to Strike Ms. Newman's Deposition.

On August 22, 2022, at defense counsel's request, counsel for the parties met telephonically to confer regarding Ms. Newman's deposition. *Kazaryan Decl*. ¶ 19.  During that call, Brand's counsel explained that Brand objects to Ms. Newman's deposition for the reasons set forth in this motion. *Kazaryan Decl*. ¶ 20.  Brand's counsel explained the reasons for the objection in great detail and responded to Plaintiff's counsel's counterpoints. *Kazaryan Decl*. ¶ 21.  Nonetheless, Plaintiff's counsel said they would not agree to strike Ms. Newman's

DEFENDANT'S MOTION FOR PROTECTIVE ORDER
QUASHING DEPOSITION OF MEG NEWMAN - 7
(CAUSE NO. 2:21-CV-00754 JLR)

SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041
(206) 946-4910

deposition. *Kazaryan Decl*. ¶ 21.

Following the call, Brand's counsel sent Plaintiff's counsel a detailed email summarizing the call and the reasons why Brand intends to move for a protective order. *Kazaryan Decl*. ¶ 22, Ex. M.   In that email, Brand's counsel asked Plaintiff's counsel to please let her know if they had any questions or if they changed their mind about proceeding with the deposition. *Kazaryan Decl*. ¶ 22, Ex. M.   Plaintiff's counsel reiterated that they would not agree to strike Ms. Newman's deposition. *Kazaryan Decl*. ¶ 22, Ex. M.

### III.      EVIDENCE RELIED UPON

This motion is based on the declaration of Meg Newman and the Emma Kazaryan and all exhibits thereto.

### IV.      ARGUMENT AND AUTHORITY

#### A.      <u>This Court Has the Authority to Quash the Deposition at Issue.</u>

Under Rule 26(c)(1) of the Federal Rules of Civil Procedure, this Court is vested with broad authority to "make any order which justice requires" when deciding a discovery motion:

> **Upon motion by a party or by the person from whom discovery is sought** ... and for good cause shown, **the court in which the action is pending**...**may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense**.

(Emphasis added).  The Court's authority under this rule includes the authority to forbid a deposition.  Fed.R.Civ.P. 26(c)(1)(A).

The United States Supreme Court has held that "district courts should not neglect their power to restrict discovery where 'justice requires [protection for] a party or person from annoyance, embarrassment, oppression, or undue burden or expense.'" *Herbert v. Lando*, 441 U.S. 153, 177, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979) (quoting Rule 26(c)).

DEFENDANT'S MOTION FOR PROTECTIVE ORDER
QUASHING DEPOSITION OF MEG NEWMAN - 8
(CAUSE NO. 2:21-CV-00754 JLR)

SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041
(206) 946-4910

1

2          In the instant case, justice requires the Court to quash Ms. Newman's deposition.  Ms.

3     Newman is a high-level executive that is many degrees of separation removed from Plaintiff and

4     the decision to terminate her employment: she does not have any unique, first-hand information

5     to offer regarding the issues in this case.  Indeed, as Plaintiff admits, she and Ms. Newman do

6     not really know one another and Plaintiff has no reason to believe Ms. Newman was directly

7     involved in the decision to terminate her employment (she was not).  Further, the evidence

8     demonstrates that Plaintiff's attempt to depose Ms. Newman is an outgrowth of her inexplicable

9     personal animus against Ms. Newman rather than an earnest attempt to uncover relevant

10    evidence.

11

12         In addition, justice requires the Court to quash Ms. Newman's deposition because

13    discovery in this case has far eclipsed the value of Plaintiff's claims and has resulted in undue

14    (and disproportionate to the needs of the case) burden and expense to Brand.

15

16    **B.**       **The Deposition at Issue Should Be Quashed Because it is an Impermissible**
              **Apex Deposition.**

17

18         Courts have long-recognized that when a party seeks the deposition of a high-level

19    executive, called an "apex" deposition, there is "tremendous potential for discovery abuse and

20    harassment." *Liberty Mut. Ins. Co. v. Frysinger*, 13 Cal. Rptr.2d 363, 366 (Cal. Ct. App. 1993)

21    (granting protective order against deposition of a party's president and CEO).  Courts have also

22    long-recognized that when a senior executive does not possess personal knowledge of the facts

23    relevant to the litigation, it is necessary and appropriate to issue a protective order.  See

24    *Lewelling v. Farmer Ins. of Columbus. Inc.*, 879 F.2d 212, 218 (6th Cir. 1989) (holding that the

25    protective order entered preventing the deposition of defendant's CEO was not an abuse of

26    DEFENDANT'S MOTION FOR PROTECTIVE ORDER
      QUASHING DEPOSITION OF MEG NEWMAN - 9
      (CAUSE NO. 2:21-CV-00754 JLR)

discretion where he had "no knowledge [of the] facts pertinent to plaintiffs' action").

Courts have developed a straightforward framework for considering motions to quash apex depositions: "In determining whether to allow an apex deposition, courts consider (1) whether the deponent has unique first-hand, non-repetitive knowledge of the facts at issue in the case and (2) whether the party seeking the deposition has exhausted other less intrusive discovery methods." *Apple Inc. v. Samsung Elecs. Co., Ltd*, 282 F.R.D. 259, 263 (N.D. Cal. 2012). Generally speaking:

> On the proverbial sliding scale, **the closer that a proposed witness is to the apex of some particular peak in the corporate mountain range,** and the less directly relevant that person is to the evidence proffered in support of his deposition, **the more appropriate the protections of the apex doctrine become**.

*Id.* (emphasis added).

In the instant case, the first element of the apex test weighs in favor of quashing Ms. Newman's deposition. In the instant case, Plaintiff admitted that she and Ms. Newman did not really know one another. Plaintiff also testified that her understanding of Ms. Newman's involvement in her termination was that Ms. Newman would have to "sign off" on it as the "head of HR." Further, as Ms. Riapos's testimony and Brand's detailed responses to interrogatories make clear, Ms. Newman did not make the decision to terminate Plaintiff's employment. Further still, Ms. Newman's name has not come up in the substantive discussions about why Plaintiff was selected for lay off.

The second element of the apex test also weighs in favor of quashing Ms. Newman's deposition. Plaintiff has conducted extensive written discovery into the reasons for her termination and she has deposed one of the decision-makers (Ms. Riapos) and is set to depose

DEFENDANT'S MOTION FOR PROTECTIVE ORDER
QUASHING DEPOSITION OF MEG NEWMAN - 10
(CAUSE NO. 2:21-CV-00754 JLR)

SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041
(206) 946-4910

86192760v.3

the other (Ms. Roman).  In the course of discovery, Brand and Ms. Riapos have provided

Plaintiff with detailed, specific, and consistent information about how and why Plaintiff was

identified for lay off.  There has been nothing in any of that discovery to suggest that Ms.

Newman has novel, additional, or better information on these issues.

Plaintiff's own testimony demonstrates that Ms. Newman is about as close to the apex as

you can get: Plaintiff believes the extent of Ms. Newman's involvement in this case was to "sign

off" on the termination decision made by Ms. Riapos and Ms. Newman (though there is not

really any evidence that even *that* is true).  Accordingly, since "the closer that a proposed witness

is to the apex of some particular peak in the corporate mountain range…the more appropriate the

protections of the apex doctrine become", Ms. Newman is entitled to the full protection of the

apex doctrine.

### C. The Deposition at Issue Should be Quashed because it is Calculated to Harass and Annoy the Witness.

"Justice requires" that Ms. Newman's deposition be quashed because it is being

interposed to harass and annoy her rather than uncover relevant evidence.  As set forth in great

detail *supra*, Ms. Newman does not have unique, first-hand, non-repetitive knowledge of the

issues in this case.  Yet Plaintiff is fixated on haling Ms. Newman into a deposition and making

her "suffer."  Plaintiff's attempt to depose Ms. Newman is clearly an outgrowth of her

inexplicable personal animus against Ms. Newman rather than an earnest attempt to uncover

relevant evidence.  A deposition that is motivated by spite has no place in a fair and orderly

discovery process and Ms. Newman's deposition should be quashed on this basis.

### D. The Deposition at Issue Should be Quashed Due to Undue Burden and Expense to Brand.

DEFENDANT'S MOTION FOR PROTECTIVE ORDER
QUASHING DEPOSITION OF MEG NEWMAN - 11
(CAUSE NO. 2:21-CV-00754 JLR)

86192760v.3

Justice also requires that Ms. Newman's deposition be quashed because discovery in this case has eclipsed the value of Plaintiff's claims and has caused undue burden and expense to Brand.

After she was fired from Brand, Plaintiff chose to be unemployed for about a year. During that time, she did some contract work; bragged that she was not in a rush to find a job because of how easy it was for her to collect unemployment benefits; and told friends she enjoyed being (in her words) a "trophy wife."  Once her unemployment benefits ran out, Plaintiff mitigated her damages in full by finding a job that pays *even more* than she was being paid at Brand.

Brand does not know what Plaintiff intends to ask for at trial, but unless that sum is many, many multiples of her demonstrable economic damages (which would not be an ask supported by the evidence), it is safe to say that the work Brand has done responding to her discovery requests has been vastly disproportionate to the needs of this case.

Now, Plaintiff seeks the deposition of a high-level executive, a request that will exact an even further toll on Brand's time, money, and resources.  Justice requires the Court to intervene and Ms. Newman's deposition on the basis of undue burden and expense.

## V.    CONCLUSION

A federal courthouse is not the place for Plaintiff to play out her petty revenge fantasies against a c-suite executive that hardly knew her.  Plaintiff has already forced discovery that has eclipsed the value of her claims and exacted undue burden and expense on Brand.  Enough is enough.  Justice requires that Ms. Newman's deposition be quashed.

DEFENDANT'S MOTION FOR PROTECTIVE ORDER
QUASHING DEPOSITION OF MEG NEWMAN - 12
(CAUSE NO. 2:21-CV-00754 JLR)

SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041
(206) 946-4910

1

2

3    DATED this 30th day of August, 2022.          SEYFARTH SHAW LLP

4

5                                                  By:  *s/ Emma Kazaryan*
                                                        Helen M. McFarland, WSBA No. 51012
6                                                       Emma Kazaryan, WSBA No. 49885
                                                        999 3rd Avenue, Ste. 4700
7                                                       Seattle, WA 98104
                                                        P: (206) 946-9423
8                                                       F: (206) 299-9974
                                                        hmcfarland@seyfarth.com
9                                                       ekazaryan@seyfarth.com

10                                                      *Attorneys for Defendant Brand Shared*
                                                        *Services, LLC*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANT'S MOTION FOR PROTECTIVE ORDER
QUASHING DEPOSITION OF MEG NEWMAN - 13
(CAUSE NO. 2:21-CV-00754 JLR)

86192760v.3

**CERTIFICATE OF SERVICE**

I hereby declare that on this 30th day of August, 2022, I caused a copy of ***Defendant Brand Shared Services, LLC's Motion for Protective Order Quashing Deposition of Meg Newman*** to be electronically filed with the Court using ECF-Filing system which will send notification of such filing to the following:

Alexander J. Higgins
Law Offices of Alex J. Higgins
2200 6th Avenue, Ste. 500
Seattle, WA 98121
P: (206) 340-4856
alex@alexjhiggins.com

Cody Fenton- Robertson
Bean Law Group
2200 6th Avenue, Ste. 500
Seattle, WA 98121
P: (206) 5220618
cody@beanlawgroup.com


*s/ Valerie Macan*
Valerie Macan

DEFENDANT'S MOTION FOR PROTECTIVE ORDER
QUASHING DEPOSITION OF MEG NEWMAN - 14
(CAUSE NO. 2:21-CV-00754 JLR)

SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041
(206) 946-4910

86192760v.3