1

2

3

4

5

6

7

8

9

10

11

12

13

14

HONORABLE MICHELLE PETERSON

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| NANNETTE BASA, an individual,<br><br>Plaintiff,<br><br>v.<br><br>BRAND SHARED SERVICES, LLC, a Delaware corporation,<br><br>Defendant. | Case No. 2:21-cv-00754 JLR<br><br>DECLARATION OF EMMA KAZARYAN IN SUPPORT OF DEFENDANT BRAND SHARED SERVICES, LLC'S MOTION FOR PROTECTIVE ORDER QUASHING DEPOSITION OF MEG NEWMAN<br><br>**HEARING DATE:**<br>FRIDAY, SEPTEMBER 2, 2022 |

15     I, Emma Kazaryan, hereby declare:

16     1.     I am one of the attorneys of record for Defendant Brand Shares Services, LLC

17 ("Brand") in the above-captioned matter.  I am over the age of eighteen and competent to testify

18 in this matter.  I base this declaration on my personal knowledge and on my review of the file

19 maintained by my law firm in connection with this matter.  That file is kept in the ordinary

20 course of business and is timely and regularly updated.

21     Overview of Discovery Relative to the Needs of this Case

22     2.     This is a relatively simple, single-plaintiff discrimination case: Plaintiff Nannette

23 Basa ("Plaintiff") was laid off as part of a multi-employee reduction-in-force ("RIF") in

24 December 2020.

25     3.     During her deposition in this case, Plaintiff admitted that nobody at Brand ever

26

DECLARATION OF EMMA KAZARYAN IN SUPPORT OF DEFENDANT'S MOTION
FOR PROTECTIVE ORDER QUASHING DEPOSITION OF MEG NEWMAN - 1
(CAUSE NO. 2:2-CV-00754 JLR)

made any racist or ageist comments to her:

Q:      Did anybody ever say anything negative to you because of your race?
A:      No.
Q:      Did anyone ever make fun of you because of your race?
A:      No.
Q:      did anyone ever make fun of you because of your age?
A:      No.
Q:      Did anyone ever say anything negative to you related to your age?
A:      Did you say "say"?
Q:      Yes.
A:      Say, no.

True and correct copies of these excerpts from Plaintiff's deposition are attached to my

declaration as **Exhibit A**.

4.      During her deposition. Plaintiff  also admitted that the only basis for her claim

that she was discriminated against is the fact that two younger, white employees on the Talent

Acquisition team were retained while she was laid off:

Q:      Okay.  How old is Karen Riapos?
A:      She's a couple years younger than me.
Q:      Do you think she's racist?
A:      I don't know.
Q:      **Do you think she didn't like you because of your race?**
A:      **I believe that was part of her decisions**.
Q:      **What do you base that on**?
A:      **She kept Ryan and Nicole**.
Q:      That's the only – **is that the only basis?**
A:      **At this time…**

(Emphasis added).  True and correct copies of these excerpts from Plaintiff's deposition are

attached to my declaration as **Exhibit B**.

5.      Plaintiff was unemployed for about a year before she fully mitigated her damages.

During that time, she did contract work that offsets her economic damages.  True and correct

copies of Plaintiff's discovery responses stating the same are attached to my declaration as

**Exhibit C**.

6.      Plaintiff sent text messages to friends stating that she was not in a rush to find a

DECLARATION OF EMMA KAZARYAN IN SUPPORT OF DEFENDANT'S MOTION
FOR PROTECTIVE ORDER QUASHING DEPOSITION OF MEG NEWMAN - 2
(CAUSE NO. 2:21-CV-00754 JLR)

SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041
(206) 946-4910

86340100v.1

1   job because of how easy it was for her to collect unemployment in the State of Washington and

2   she told friends she enjoyed being (in her words) a "trophy wife."  True and correct copies of

3   those text messages are attached to my declaration as **Exhibit D**.

4          7.     In the course of discovery, Brand has produced tens of thousands of pages of

5   documents in response to Plaintiff's extensive requests for production.

6          8.     Brand has also duly answered Plaintiff's numerous and often repetitive

7   interrogatories.

8          9.     In addition to written discovery, Plaintiff's counsel has already taken one

9   deposition in this case (the deposition of Plaintiff's former supervisor, Karen Riapos) and has

10   noted seven additional depositions (including a multi-topic CR 30(b)(6) deposition and the

11   deposition of Brand's former-Director of HR Compliance Michelle Roman).

12          10.    One of the categories of topics in the CR 30(b)(6) deposition Plaintiff's counsel

13   has noted is "Policies, practices, and procedures relating to hiring, termination and layoff."  A

14   true and correct copy of the CR 30(b)(6) deposition notice is attached to my declaration as

15   **Exhibit E**.

16   <u>The Decision to Terminate Plaintiff</u>

17          11.    In the course of written discovery, Brand has expressly stated that Ms. Riapos and

18   Ms. Roman made the decision to terminate Plaintiff's employment.  A true and correct copy of

19   the relevant discovery response is attached to my declaration as **Exhibit F**.

20          12.    Ms. Riapos testified that she and Ms. Roman made the decision to terminate

21   Plaintiff's employment.  Ms. Riapos testified that she identified Plaintiff for layoff because the

22   business-need for Plaintiff's role was dissolving with the hiring of a managed service provider

23   and because of Plaintiff's ongoing performance and communication issues.  Ms. Riapos also

24   testified that she made the decision to hire a managed service provider based on her prior

25   experience at another company.  True and correct copies of these excerpts from Ms. Riapos's

26

DECLARATION OF EMMA KAZARYAN IN SUPPORT OF DEFENDANT'S MOTION
FOR PROTECTIVE ORDER QUASHING DEPOSITION OF MEG NEWMAN - 3
(CAUSE NO. 2:21-CV-00754 JLR)

SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041
(206) 946-4910

1   deposition transcript are attached to my declaration as **Exhibit G**.

2          13.    Brand has produced numerous emails that pertain to the performance and

3   communication issues Ms. Riapos discussed during her deposition.

4          14.    Brand provided an itemized list of the performance issues and deficiencies that

5   influenced the decision to terminate Plaintiff's employment and Ms. Newman's name did not

6   come up once:

7   •   Late payments that took a long time to resolve;

8   •   Lack of work product (including, without limitation, missing deadlines);

9   •   Combative communications;

10  •   In March 2020, after one of Brand's third-party partners escalated a non-payment
        issue to Defendant's chief information officer Jay Fisher, who reported it to Ms.
11      Riapos.  He revealed that when a contractor inquired about a payment he had not
        received, Plaintiff sent a curt and dismissive email response;
12

13  •   While trying to resolve non-payment issue, Heather Morrison, Defendant's
        Director of IT and Finance, had trouble getting help from Plaintiff.  Ms. Morrison
14      emailed Mr. Fisher stating, "Just for your information—Nannette was not helpful
        in the last email I sent—she kept telling me not to worry about it…"
15

16  •   In approximately April 2020, Ms. Riapos received a complaint from Jerry Dolly
        that Plaintiff failed to help fill a role that he requested help with back in January
17      2020.  Due to Plaintiff's failure, Ms. Riapos had to step in to help fill the role.

18  •   In June 2020, Mike Krach (a branch manager) complained to HR about persistent
        issues working with Plaintiff.  He wrote:
19

20          My experience with Nannette has been nothing but failure,  Over the past 3
            years every time she has been involved with an employee placement/search
21          for my region has come up with nothing.  I do not recall my region hiring
            anyone that she has referred to my region (I might be wrong but that is to
22          the best of my memory).

23
        A true and correct copy of the relevant discovery response is attached to my declaration as
24
    **Exhibit H**.
25

26
    DECLARATION OF EMMA KAZARYAN IN SUPPORT OF DEFENDANT'S MOTION
    FOR PROTECTIVE ORDER QUASHING DEPOSITION OF MEG NEWMAN - 4
    (CAUSE NO. 2:21-CV-00754 JLR)

SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041
(206) 946-4910

86340100v.1

1    Plaintiff's Personal Vendetta Against Ms. Newman

2        15.    At her deposition, Plaintiff testified that she does not really know Ms. Newman:

3    "If you are asking if I like Meg [Newman] or not, I -- there wasn't even time for me to get to

4    know her or her approach to get to know me."  Plaintiff also testified that she thought Ms.

5    Newman was involved in the decision to terminate her employment because "[s]he's the head of

6    HR."  When pressed further about her understanding of Ms. Newman's involvement, Plaintiff

7    said, "From my understanding…you have to get approval from the functional leader.  They sign

8    off on it."  True and correct copies of these excerpts from Plaintiff's deposition transcript are

9    attached to my declaration as **Exhibit I**.

10       16.    In one post-termination message to a friend, Ms. Newman wrote that she was

11   gathering up as much information as possible for her attorney because she wanted Ms. Newman

12   to "suffer the consequences."  A true and correct copy of this text message is attached to my

13   declaration as **Exhibit J**.

14       17.    In another message, Plaintiff baselessly disparaged Ms. Newman's integrity.  A

15   true and correct copy of this text message is attached to my declaration as **Exhibit K**.

16       18.    In a third message, Plaintiff proselytized that it was "time for someone to hold

17   Meg [Newman] accountable."  A true and correct copy of this text message is attached to my

18   declaration as **Exhibit L**.

19   Certification Regarding LCR 26(c) Discovery Conference

20       19.    On August 22, 2022, at my request, Plaintiff's counsel Alex Higgins and I met

21   telephonically to confer regarding Ms. Newman's deposition.

22       20.    During that call, I explained that Brand objects to Ms. Newman's deposition for

23   the reasons set forth in *Defendant Brand Shared Services, LLC's Motion for Protective Order

24   Quashing Deposition of Meg Newman*.  I explained the reasons for the objection in great detail

25   and responded to Mr. Higgins's counterpoints.

26   DECLARATION OF EMMA KAZARYAN IN SUPPORT OF DEFENDANT'S MOTION
     FOR PROTECTIVE ORDER QUASHING DEPOSITION OF MEG NEWMAN - 5
     (CAUSE NO. 2:21-CV-00754 JLR)

     SEYFARTH SHAW LLP
     999 Third Avenue
     Suite 4700
     Seattle, WA  98104-4041
     (206) 946-4910

86340100v.1

21.     In the course of our call, Mr. Higgins said he would not agree to strike Ms. Newman's deposition.

22.     On August 24, 2022, I sent a detailed email to counsel summarizing the call and the reasons why Brand intends to move for a protective order.  In that email, I asked Plaintiff's counsel to please let me know if they had any questions or if they changed their mind about proceeding with the deposition.  On August 25, 2022, Plaintiff's counsel Cody Fenton-Robertson reiterated that they would not agree to strike Ms. Newman's deposition.  A true and correct copy of that email exchange is attached to my declaration as **Exhibit M**.

*I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct to the best of my knowledge.*

DATED this 30th day of August, 2022, in Seattle, WA.

*s/Emma Kazaryan*

_____
Emma Kazaryan, WSBA No. 49885

DECLARATION OF EMMA KAZARYAN IN SUPPORT OF DEFENDANT'S MOTION
FOR PROTECTIVE ORDER QUASHING DEPOSITION OF MEG NEWMAN - 6
(CAUSE NO. 2:21-CV-00754 JLR)

SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041
(206) 946-4910

1

**CERTIFICATE OF SERVICE**

2      I hereby declare that on this 30th day of August, 2022, I caused a copy of ***Declaration of***

3  ***Emma Kazaryan in Support of Defendant Brand Shared Services, LLC's Motion for***

4  ***Protective Order Quashing Deposition of Meg Newman*** to be electronically filed with the Court

5  using ECF-Filing system which will send notification of such filing to the following:

6      Alexander J. Higgins
       Law Offices of Alex J. Higgins
7      2200 6th Avenue, Ste. 500
       Seattle, WA 98121
8      P: (206) 340-4856
       alex@alexjhiggins.com
9

10     Cody Fenton- Robertson
       Bean Law Group
11     2200 6th Avenue, Ste. 500
       Seattle, WA 98121
12     P: (206) 5220618
       cody@beanlawgroup.com
13

14

15                          */s/ Valerie Macan*
                            Valerie Macan

16

17

18

19

20

21

22

23

24

25

26
DECLARATION OF EMMA KAZARYAN IN SUPPORT OF DEFENDANT'S MOTION
FOR PROTECTIVE ORDER QUASHING DEPOSITION OF MEG NEWMAN - 7
(CAUSE NO. 2:21-CV-00754 JLR)

SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041
(206) 946-4910

# Exhibit A

# Deposition of Nannette Basa

# Basa v. Brand Shared Services, LLC

# April 5, 2022



**206.287.9066  I  800.846.6989**
1325 Fourth Avenue, Suite 1840, Seattle, Washington 98101
www.buellrealtime.com
email: info@buellrealtime.com



Page 1

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

_____

NANNETTE BASA, an individual,    )
                                 )
          Plaintiff,             )
                                 )
     vs.                         )    CASE NO.:
                                 )    2:21-cv-00754 JLR
BRAND SHARED SERVICES, LLC, a    )
Delaware corporation,            )
                                 )
          Defendant.             )
                                 )
_____

VIDEOCONFERENCE DEPOSITION UPON

ORAL EXAMINATION OF

NANNETTE BASA

_____

9:27 A.M.

APRIL 5, 2022

WITNESS LOCATION:  SEATTLE, WASHINGTON


(All participants appearing via videoconference.)




REPORTED BY:  SALLY J. HANDS, CCR 2191

BUELL REALTIME REPORTING, LLC
206.287.9066  |  800.846.6989

343ebadd-a87c-42e3-8164-3ac544e858c9

Basa v. Brand Shared Services, LLC                    Nannette Basa

Page 115

1      Q.   How many interviews do you think you were
2    doing in the last six months that you were working for
3    Brand?
4      A.   How many interviews?
5      Q.   (Nodding.)
6      A.   I couldn't tell you.  But I would say, you
7    know, I'm looking at thousands of resumes.  I'm talking
8    to -- when I interview people, I would probably say
9    there wasn't a day where I didn't interview at least
10   one person.
11     Q.   So you interviewed somebody at least every
12   day, you think, every day that you worked for
13   BrandSafway in the last --
14     A.   Absolutely.
15     Q.   -- six months?
16     A.   Yes.
17     Q.   Would those be contingent workers too?
18     A.   Could be.
19     Q.   Did anybody ever say anything negative to you
20   because of your race?
21     A.   No.
22     Q.   Anyone ever make fun of you because of your
23   race?
24     A.   No.
25     Q.   Did anyone ever make fun of you because of

BUELL REALTIME REPORTING, LLC
206.287.9066  I  800.846.6989

343ebadd-a87c-42e3-8164-3ac544e858c9

Basa v. Brand Shared Services, LLC                     Nannette Basa

Page 116

1    your age?

2        A.   No.

3        Q.   Did anyone ever say anything negative to you

4    related to your age?

5        A.   Did you say "say"?

6        Q.   Yes.

7        A.   Say, no.

8        Q.   Did anyone do anything nonverbal that you

9    determined to be making fun of you because of your age?

10       A.   I don't know how to answer that.

11       Q.   Why not?

12       A.   Well, I think -- I'm data-driven.  And I look

13   at the data and I look how I was treated and I don't

14   know any other reason why.

15              MR. HIGGINS:  I don't think she heard

16   your question.  But go ahead.

17       A.   Can you rephrase that question, then?

18       Q.   (BY MS. McFARLAND)  I believe my question was,

19   did anyone ever do anything that's a nonverbal

20   communication that you considered to be making fun of

21   you because of your age?

22       A.   Well, I think -- I think not ignoring -- when

23   you are ignoring someone and you don't take their input

24   is a reasoning.  When you don't know any other reason,

25   it is hard for me not to reflect and go, it was because

343ebadd-a87c-42e3-8164-3ac544e858c9

Basa v. Brand Shared Services, LLC                    Nannette Basa

                                                           Page 186

1                    C E R T I F I C A T E

2

3    STATE OF WASHINGTON

4    COUNTY OF PIERCE

5

6         I, SALLY HANDS, a Certified Court Reporter in and

7    for the State of Washington, do hereby certify that the

8    foregoing transcript of the deposition of NANNETTE BASA,

9    having been duly sworn, on April 5, 2022, is true and

10   accurate to the best of my knowledge, skill and ability.

11        IN WITNESS WHEREOF, I have hereunto set my hand

12   and seal this 31st day of May, 2022.

13

14

15

16

17   _____
     Sally Hands, CCR 2191

18

19   My commission expires:

20   JANUARY 28th, 2023

21

22

23

24

25

BUELL REALTIME REPORTING, LLC
206.287.9066  I  800.846.6989

343ebadd-a87c-42e3-8164-3ac544e858c9

# Exhibit B

Basa v. Brand Shared Services, LLC                    Nannette Basa

Page 155

1    engineering, the VP of engineering.
2         Mike Kohlmeier.  He's an engineering director
3    in North Carolina.
4         Let me think who else.
5         There were several people up in Michigan in
6    that business.  There were people in Chicago in that
7    business.  There was a few of the -- various people had
8    gotten back to me through -- while Karen was my boss
9    and even, you know, after the fact, after I was laid
10   off.
11        Q.  Okay.  How old is Karen Riapos?
12        A.  She's a couple years younger than me.
13        Q.  Do you think she's racist?
14        A.  I don't know.
15        Q.  Do you think she didn't like you because of
16   your race?
17        A.  I believe that was part of her decisions.
18        Q.  What do you base that on?
19        A.  She kept Ryan and Nicole.
20        Q.  That's the only -- is that the only basis?
21        A.  At this time that --
22        Q.  Why do you think Rod Broschinsky is not a
23   competent boss?
24        A.  He didn't know anything about recruiting.  He
25   had no background in recruiting.  But he was good in

343ebadd-a87c-42e3-8164-3ac544e858c9

# Exhibit C

1

2                                              HONORABLE MICHELLE L. PETERSON

3

4

5

6

7                              UNITED STATES DISTRICT COURT
                           FOR THE WESTERN DISTRICT OF WASHINGTON
8

9   NANNETTE BASA, an individual,              Case No. 2:21-cv-00754 MLP

                        Plaintiff,             DEFENDANT'S FIRST SET OF
                                               INTERROGATORIES AND REQUESTS
    v.                                         FOR PRODUCTION TO PLAINTIFF
10                                             **WITH ANSWERS AND OBJECTIONS
    BRAND SHARED SERVICES, LLC, a              THERERTO**
    Delaware corporation,
11
                        Defendant.

12          Pursuant to Rules 33 and 34 of the Federal Rules of Civil Procedure, Defendant Brand

    Shared Services, LLC ("Brand"), by and through its undersigned attorneys of record, requests

13  that that Plaintiff Nannette Basa answer the following interrogatories and produce and permit

    Brand or its representative to inspect, copy, test, or sample the items identified in the requests

    below.

14                                      **DEFINITIONS**

            The following definitions apply to these Interrogatories and Requests for Production:

15  DEFENDANT'S FIRST SET OF INTERROGATORIES
    AND REQUESTS FOR PRODUCTION TO PLAINTIFF            Law Offices of Alex J. Higgins
    **WITH ANSWERS AND OBJECTIONS THERETO** - 1         2200 6th Ave, Suite 500
                                                        Seattle, WA 98121
                                                        (206) 340-4856

Her search was open to jobs in all industries, not just industrial services.  She applied to both contract and full time opportunities.  She did not decline any jobs based on salary.  In Oct. 2021, she accepted a contract opportunity as a Resource Professional for Abbott at $30/hr.

**INTERROGATORY NO.7:**      Please state with specificity all damages (including, without limitation, economic and non-economic damages) you are claiming in this lawsuit.

**ANSWER:**

Plaintiff seeks compensatory damages and punitive damages.  The compensatory damages include special damages for back pay and the value of lost health benefits, and general damages for emotional distress.

Defendant paid Plaintiff a salary of $100,000/year.  Defendant terminated Plaintiff's employment on December 8, 2020.

Defendant hired Nicole Norris—an external candidate—on January 15, 2020.  It is believed she began work on or about February 17, 2020.  Ms. Norris was paid a salary of $134,000, and was given a "sign on bonus" of $20,000.  Plaintiff should have been hired into this position.  Therefore, Plaintiff calculates her back pay damages as beginning on February 17, 2020.

Plaintiff began employment paying more than $134,000/year on February 21, 2022.  Therefore, Plaintiff has two years of damages totaling $288,000 before factoring for interim earnings.

From February 17, 2020, until December 8, 2020, Plaintiff continued to work for Defendant at a salary of $100,000.  During this 42-week period, Plaintiff earned an estimated $80,770.

From September 27, 2021, until February 18, 2022, Plaintiff worked as a contractor for Prokatchers LLC.  She earned $14,400 in that role in calendar year 2021, and earned an additional 10,027.50 in 2022.

Accounting for the above interim earnings, Plaintiff's back pay damages are **$182,802.50**.

Defendant offered Plaintiff a 401k with employer matching contributions.  Plaintiff does not currently have specific details for the 401k, but Plaintiff intends to claim the employer-match amount as damages.

Damages for emotional distress cannot be calculated with precision.

Punitive damages are to be determined by the trier of fact.

DEFENDANT'S ꜰɪʀꜱᴛ SET OF INTERROGATORIES
AND REQUESTS FOR PRODUCTION TO PLAINTIFF - 8

79036524v.1

Sᴇʏꜰᴀʀᴛʜ Sʜᴀᴡ LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041
(206) 946-4910

**PARTY CERTIFICATION**

I, Nannette Basa, hereby declare under penalty of perjury under the laws of the State of Washington that the foregoing responses to *Defendant's First Set of Interrogatories and Requests for Production to Plaintiff* are true and correct to the best of my knowledge.

Signed in _Seattle_, WA_ this 24th day of _March_, 2022.

_____
Nannette Basa

**ATTORNEY CERTIFICATION**

The undersigned attorney for plaintiff has read the foregoing answers and responses and they are in compliance with CR 26(g).

Dated this _____ day of _____, 2022.

_____

DEFENDANT'S FIRST SET OF INTERROGATORIES
AND REQUESTS FOR PRODUCTION TO PLAINTIFF - 12

79036524v.1

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA 98104-4041
(206) 946-4910

**PARTY CERTIFICATION**

I, Nannette Basa, hereby declare under penalty of perjury under the laws of the State of Washington that the foregoing responses to *Defendant's First Set of Interrogatories and Requests for Production to Plaintiff* are true and correct to the best of my knowledge.

Signed in _____, _____ this _____ day of _____, 2022.

_____

Nannette Basa

**ATTORNEY CERTIFICATION**

The undersigned attorney for plaintiff has read the foregoing answers and responses and they are in compliance with CR 26(g).

Dated this _24_ day of _March_____, 2022.

_____

Cody Fenton-Robertson

DEFENDANT'S FIRST SET OF INTERROGATORIES
AND REQUESTS FOR PRODUCTION TO PLAINTIFF - 12

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041
(206) 946-4910

79036524v.1

# **Exhibit D**

4/9/2021 10:13 AM

Connie Rogers (4042716706)

Its feast or famine around here. Last week was fairly quite. This week I have 5 companies interested in me. The Easter Seals is last on my list because its temp, but they needs someone next week. The other 4 are perm roles and as you know they may or may not end up filling the role. I had one today set up to interview me and they called to say they had a former employee take the role.

4/9/2021 10:14 AM

Nannette's iPhone (+14259510818)

I sort of like being Dennis' trophy wife,

4/9/2021 10:16 AM (Viewed 9/9/2021 2:12 PM)

Connie Rogers (4042716706)

Enjoy it and find the right job when you want to return to the rat race.

11/5/2021 11:56 AM (Viewed 11/5/2021 2:02 PM)

Connie Rogers (4042716706)

Hi Nanette, Just letting you know I have changed jobs. I am now at BlueLinx in Marietta. EA to the CFO. Hopefully we can catch up soon.

11/5/2021 2:03 PM

Nannette's iPhone (+14259510818)

EA is where you need to be. I hope you and your boss are a good team

11/5/2021 2:38 PM

Connie Rogers (4042716706)

I believe we will be great together. She previously worked for GE, so we both have the same mindset.

11/15/2021 12:59 PM

Nannette's iPhone (+14259510818)

Can I call you later?

11/15/2021 12:59 PM (Viewed 11/15/2021 1:49 PM)

Connie Rogers (4042716706)

Yes. Any time

You have 46 total messages and 4 total images.

Kim Hunt (7179198399)



6/30/2021 12:31 PM

Nannette's iPhone (+14259510818)

Actually I don't care too much if I do or do not get a job. But, I'll be open until September when my unemployment runs out

6/30/2021 12:32 PM (Viewed 6/30/2021 3:15 PM)

Kim Hunt (7179198399)

Liked "Actually I don't care too much if I do or do not get a job. But, I'll be open until September when my unemployment runs out"

9/9/2021 2:06 PM

Nannette's iPhone (+14259510818)

Hi your VM is full. Just an FYI, my attorney may call you

9/9/2021 5:18 PM (Viewed 9/23/2021 9:25 AM)

Kim Hunt (7179198399)



9/28/2021 8:50 AM

Nannette's iPhone (+14259510818)

Hi, could you call me when you have time? I wanted to get your insight on test assessment data and using to target weaknesses - then decide if can provide learning opportunities to overcome or something that should accept as weaknesses

10/19/2021 1:30 PM (Viewed 10/19/2021 1:31 PM)

Kim Hunt (7179198399)

How is the job?

10/19/2021 1:31 PM

Nannette's iPhone (+14259510818)

I'm contracting for Abbott's MSP Tapfin

10/19/2021 1:32 PM

Nannette's iPhone (+14259510818)

Started 2 weeks ago

10/19/2021 1:32 PM

Nannette's iPhone (+14259510818)

It's good

10/19/2021 1:32 PM

BASA_000819

Sure...just checking in with you

1/22/2021 8:03 AM

Nannette's iPhone (+14259510818)

Am texting back and forth with Tiffany from VNDLY, can I reintroduce you to Shashank, their CEO. He knows a lot of people

1/22/2021 8:59 AM (Viewed 1/22/2021 9:00 AM)

Thomas Yuhas (6308035737)

Absolutely! Would love the opportunity to network with Shashank.

1/22/2021 9:02 AM

Nannette's iPhone (+14259510818)

Can you email me your resume? Nannettekbasa@gmail.com

1/26/2021 7:40 AM (Viewed 1/26/2021 9:02 AM)

Thomas Yuhas (6308035737)

Hey Nannett! Just sent over my resume. Looking forward to connecting with you a Shashank.

1/26/2021 7:40 AM (Viewed 1/26/2021 9:02 AM)

Thomas Yuhas (6308035737)

Does he have any work for you?

1/26/2021 9:41 AM

Nannette's iPhone (+14259510818)

Short answer, no I didn't ask him for myself...and unemployment in the state of Washington makes it relatively easy for me not to rush into something with the added benefit of being married to Dennis

3/30/2021 11:11 AM

Thomas Yuhas (6308035737)

In a meeting. I'll call you back shortly

3/30/2021 11:12 AM

Nannette's iPhone (+14259510818)

Ok, just checking up on both of our mental health

3/30/2021 2:17 PM

Nannette's iPhone (+14259510818)

When you do call me back...remind me. I have some suggestions for you on your job search

5/4/2021 9:52 AM

Nannette's iPhone (+14259510818)

BASA_000874

# Exhibit E

The Honorable Michelle L. Peterson

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

NANNETTE BASA,

              Plaintiff,

    v.

BRAND SHARED SERVICES, LLC,

              Defendant.

No. 2:21-cv-00754-MLP

NOTICE OF VIDEOTAPED
DEPOSITION OF THE CORPORATION
PURSUANT TO FRCP 30(b)(6)

TO:    BRAND SHARED SERVICES, LLC, Defendant
TO:    HELEN MCFARLAND and EMMA KAZARYAN, Defendant's Attorneys

       PLEASE TAKE NOTICE that pursuant to Rule 30 of the Federal Rules of Civil

Procedure, Plaintiff Nannette Basa will take the deposition upon oral examination of Brand

Shared Services, LLC, before an officer authorized to administer oaths, at the date and location

listed below.  Said deposition will be recorded by video and stenographic means and will

continue until it is adjourned.  This examination will be subject to further continuance from time

to time and place to place until completed, and is to be taken on the grounds that said witness

will provide material evidence for Plaintiff's case.

       DATE:         September 20, 2022
       TIME:         9:30 AM PDT
       LOCATION:  Remote videoconference (e.g. Zoom).

Law Offices of Alex J. Higgins
2200 Sixth Ave, Suite 500
Seattle, WA 98121
(206) 340-4856

Pursuant to FRCP 30(b)(6), Brand Shared Services, LLC, is required to designate and fully prepare one or more officers, directors, managing agents or other persons who consent to testify on behalf of Brand Shared Services, LLC, and whom Brand Shared Services, LLC will fully prepare to testify regarding all information that is known or reasonably available to Brand Shared Services, LLC's organization[1] regarding the following designated matters:

## MATTERS OF EXAMINATION

1. **Policies, practices, and procedures relating to hiring, termination, and layoff.**
   a. Past practices and policies (since January 1, 2019) regarding selection of employees for layoff or reduction in force ("RIF").
   b. Past practices and policies (since January 1, 2019) regarding equal employment opportunity in the following areas:
      i. Hiring and promotion;
      ii. Whether and where to advertise or post job openings;
      iii. Separations/terminations/layoffs/RIFs.

2. **The December 2020 RIF.**
   a. The "financial constraints" identified in Defendant's Answer to the Complaint as a reason that a RIF was necessary.
   b. The manner in which employees were selected for layoff (since January 1, 2019).
      i. Guidance provided to decision makers regarding the selection of employees to be retained or not;
      ii. Criteria used to select employees for retention or for layoff (and whether such criteria was in writing);
      iii. The number of employees (and their positions within Defendant's organization) that were selected for layoff.

3. **Document Retention and Document Production.**
   a. Explain Defendant's document retention practices and policies (since January 1, 2019) with regard to emails, text messages, or any other form of electronic communication utilized by Defendant, including whether the policies are written policies or informal.
   b. Identify the steps taken to preserve electronically stored information (since January 1, 2019), such as emails and text messages, regarding Plaintiff,

---

[1] This request includes any and all facts known to Defendant <u>or its counsel</u>. *Taylor v. Shaw,* 2007 WL 710186 (D. Nev. 2007) (citing *Int'l Ass'n of Machinists & Aerospace Workers v. Werner-Masuda,* 390 F.Supp.2d 479, 487 (D.Md. 2005) (citing *In re Vitamins Antitrust Litig.*, 216 F.R.D. 1687, 173 (D.D.C. 2003)).

NOTICE OF DEPOSITION OF BRAND SHARED SERVICES - 2
NO. 2:21-cv-00754-MLP

Law Offices of Alex J. Higgins
2200 Sixth Ave, Suite 500
Seattle, WA 98121
(206) 340-4856

including but not limited to the dates such steps were taken and each step taken to preserve and collect responsive information.

**4.     Affirmative Defenses.**

a.  Describe all facts, witnesses, and documents on which Defendant bases its contentions set forth on pages 8 to 9 of the Answer to Plaintiff's Amended Complaint, stating eight various affirmative defenses. Should Defendant wish to withdraw any of these claimed defenses in writing prior to the 30(b)(6) deposition, there will be no need for related deposition testimony.

   i.  First Defense: Identify all facts, witnesses, and documents upon which Defendant bases its contention that Plaintiff's lawsuit is barred or limited by the statute of limitations.

   ii.  Second Defense: Identify all facts, witnesses, and documents upon which Defendant bases its contention that Plaintiff's claims are barred or limited by the doctrine of waiver.

   iii.  Third Defense: Identify all facts, witnesses, and documents upon which Defendant bases its contention that Plaintiff's claims are barred or limited by the doctrine of estoppel.

   iv.  Fourth Defense: Identify all facts, witnesses, and documents upon which Defendant bases its contention that Plaintiff's claims are barred or limited by a failure to mitigate.

   v.  Fifth Defense: Identify all facts, witnesses, and documents upon which Defendant bases its contention that Plaintiff's claims are barred or limited by a lack of injury/lack of standing.

   vi.  Sixth Defense: Identify all facts, witnesses, and documents upon which Defendant bases its contention that Plaintiff's claims are barred or limited by a failure to exhaust applicable administrative remedies.

   vii.  Seventh Defense: Identify all facts, witnesses, and documents upon which Defendant bases its contention that Plaintiff's claims are barred or limited by Plaintiff's consent/authorization.

   viii.  Eighth Defense: Identify all facts, witnesses, and documents upon which Defendant bases its contention that Plaintiff's claims are barred or limited by a non-discriminatory business justification.

DATED this 17th day of August, 2022.

BEAN LAW GROUP

_____
Cody Fenton-Robertson, WSBA# 47879
Attorney for Plaintiff

Law Offices of Alex J. Higgins
2200 Sixth Ave, Suite 500
Seattle, WA 98121
(206) 340-4856

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Law Offices of Alex J. Higgins
2200 Sixth Ave, Suite 500
Seattle, WA 98121
(206) 340-4856

# Exhibit F

HONORABLE MICHELLE L. PETERSON

1
2
3
4
5
6
7                              UNITED STATES DISTRICT COURT
8                         FOR THE WESTERN DISTRICT OF WASHINGTON

NANNETTE BASA, an individual,                    Case No. 2:21-cv-00754 MLP

9
               Plaintiff,                        DEFENDANT'S OBJECTIONS AND
10                                               RESPONSES TO PLAINTIFF'S FIRST
                                                 INTERROGATORIES AND REQUESTS
11      v.                                       FOR PRODUCTION

BRAND SHARED SERVICES, LLC, a
12   Delaware corporation,

13             Defendant.

14

15        Defendant Brand Shared Services, LLC ("Defendant") responds to Plaintiff Nannette

16   Basa's ("Plaintiff") First Interrogatories and Requests for Production as follows:

17                              **PRELIMINARY STATEMENT**

18        The information contained in each response is based only on the information currently

19   available to Defendant. These responses are made solely for purposes of this action. Each

20   response is subject to all objections as to competence, relevance, materiality, propriety, and

21   admissibility, and all other objections and grounds which would require the exclusion of any

22   statements contained herein, if such statements were made by a witness present and testifying at

23   court. All objections and grounds are expressly reserved and may be interposed at the time of

24   trial.

25

26   DEFENDANT'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S FIRST
     INTERROGATORIES AND REQUESTS FOR PRODUCTION  - 1
     (CAUSE NO. 2:21-CV-00754 MLP)

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041
(206) 946-4910

78770822v.1

## INTERROGATORIES

**INTERROGATORY NO. 1:**          Please identify all individuals who were involved in the decision to end Plaintiff's employment and describe in detail each individual's participation in the decision.

**ANSWER:**  Defendant objects to this interrogatory as vague and ambiguous with regard to the meaning of the phrases "involved in" and "participation in the decision."  Subject to and without waiving the foregoing objection, and assuming this interrogatory seeks the person or people who identified Plaintiff as a person to be laid off pursuant to the 2020 reduction-in-force, Defendant answers as follows: Vice President of Human Resources Michelle Roman and Director of Talent Acquisition Karen Riapos.

**INTERROGATORY NO. 2:**          Please identify all employees laid off (or whose jobs were eliminated) as a part of the same reduction(s) in force that lead to Plaintiff's termination. For each individual identified, include their job title, name, age, and race/nationality.

**ANSWER:**  Defendant objects to this interrogatory as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Defendant laid off approximately 100 people as part of the reduction in force that lead to Plaintiff's termination.  It would be very onerous and time-intensive for Defendant to identify every single one of those people and provide all of the detailed demographic and contact information requested by Plaintiff.  Further, this interrogatory is not reasonably calculated to lead to the discovery of admissible evidence, because the hundred employees who were laid off spanned the company and the decisions to terminate their employment were made by different decision-makers in their respective departments.  Most of those decision-makers have likely never worked with or interacted with Plaintiff and were not involved in the decision to terminate her employment.

Defendant further objects that this interrogatory seeks to invade third party privacy rights and seeks confidential employee personnel information.  Defendant also objects to this

DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST INTERROGATORIES
AND REQUESTS FOR PRODUCTION  - 4
(CAUSE NO. 2:21-CV-00754 MLP)

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041
(206) 946-4910

78770822v.1

1  DATED: January 14, 2022.                    SEYFARTH SHAW LLP

2

3                                              By: */s/Emma Kazaryan*

4                                              Helen M. McFarland, WSBA No. 51012
                                               Emma Kazaryan, WSBA No. 49885
5                                              999 3rd Avenue, Ste. 4700
                                               Seattle, WA 98104
6                                              P: (206) 946-9423
                                               F: (206) 299-9974
7                                              hmcfarland@seyfarth.com
                                               ekazaryan@seyfarth.com

8                                              *Attorneys for Defendant Brand Shared*
                                               *Services, LLC*
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST INTERROGATORIES
AND REQUESTS FOR PRODUCTION  - 12
(CAUSE NO. 2:21-CV-00754 MLP)

Seyfarth Shaw LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041
(206) 946-4910

78770822v.1

**CERTIFICATE OF SERVICE**

On this date I caused to be served in the manner noted below a copy of the document entitled ***Defendant's Objections and Supplemental Responses to Plaintiff's First Discovery*** on the following:

Alexander J. Higgins
Law Offices of Alex J. Higgins
2200 6th Avenue, Ste. 500
Seattle, WA 98121
P: (206) 340-4856
alex@alexjhiggins.com

Cody Fenton- Robertson
Bean Law Group
2200 6th Avenue, Ste. 500
Seattle, WA 98121
P: (206) 5220618
cody@beanlawgroup.com

BY:

|   |                  |
|---|------------------|
|   | U.S. MAIL        |
|   | HAND DELIVERED   |
|   | OVERNIGHT MAIL   |
| X | ELECTRONIC MAIL  |

DATED this 14th day of January, 2022.

                                    *s/Valerie Macan*
                                    Valerie Macan, Legal Secretary

DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST INTERROGATORIES
AND REQUESTS FOR PRODUCTION - 13
(CAUSE NO. 2:21-CV-00754 MLP)

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA 98104-4041
(206) 946-4910

78770822v.1

# Exhibit G

Page 1

1            IN THE UNITED STATES DISTRICT COURT

2         FOR THE WESTERN DISTRICT OF WASHINGTON

3                      AT SEATTLE

4   _____

5   NANNETTE BASSA,                    )
                                       )
6            Plaintiff,                )
                                       )
7   vs.                                )No.2:21-CV-007540-MLP
                                       )
8   BRAND SHARED SERVICES, LLC,        )
                                       )
9            Defendant.                )
                                       )
10  _____

11

12   REMOTE VIDEOCONFERENCE DEPOSITION UPON ORAL EXAMINATION

13                         OF

                      KAREN RIAPOS
14

15  _____

16          Taken via Zoom at: Kennesaw, Georgia

17

18

19

20

21

22

23

24  DATE TAKEN:  June 3, 2022

25  REPORTED BY:  ELIZABETH PATTERSON HARVEY, RPR, CCR 2731

KAREN RIAPOS - 06/03/2022

Page 2

```
 1   A P P E A R A N C E S:

 2      FOR THE PLAINTIFF:

 3            Alexander J. Higgins
              alex@alexjhiggins.com
 4            Law Offices of Alex J. Higgins
              2200 Sixth Avenue Ste 500
 5            Seattle, Washington  98121
              206.340.4856
 6
              Cody Fenton-Robertson
 7            cody@beanlawgroup.com
              Bean Law Group
 8            2200 Sixth Avenue, Suite 600
              Seattle, Washington  98121
 9            206.522.0618

10
        FOR THE DEFENDANT:
11
              Emma Kazaryan
12            ekazaryan@seyfarth.com
              Seyfarth
13            999 Third Avenue
              Suite 4700
14            Seattle, Washington   98104
              206.946.4910
15

16

17

18

19      *  *  *  *  *  *  *

20

21

22

23

24

25
```

KAREN RIAPOS - 06/03/2022

Page 34

```
 1        Q     Before laying her off, did you ask her whether
 2   she would be interested in doing recruiting?
 3        A     No, I did not.
 4        Q     Why not?
 5        A     Because she had continued over the year that we
 6   worked together to let me know that she was not
 7   interested in recruiting, that she wanted to do the
 8   contingent labor program and other TA operations work.
 9        Q     Did you confirm that in writing with her?
10        A     I don't remember.
11        Q     All right.  I think what you told me was that
12   you had an MSP, which is a master service provider?
13        A     A managed service provider, yes.
14        Q     So a managed service provider was coming in
15   named?
16        A     NextSource.
17        Q     Right, nextSource.
18              And you no longer needed Nannette's services.
19   Is that a fair summary of the reason?
20        A     Yes.  At the time, yes.
21        Q     Were there any other reasons at the time?
22        A     General performance that we had not seen over
23   the last few months.
24        Q     What do you mean by that?
25        A     You know, Nannette, you know, with the
```

KAREN RIAPOS - 06/03/2022

Page 35

1    implementation of VNDLY, we had payments that were late

2    to vendors that continued to take a long time to resolve.

3            There were leaders in the organization that had

4    brought some issues to my attention around, you know, not

5    being successful when working with her.

6        Q    Anything else?

7        A    I mean, just general work product or lack of

8    work product.

9        Q    What do you mean by that, "lack of work

10   product"?

11       A    Again, missing deadlines, kind of combative

12   communication to a lot of her vendors and some leaders

13   within the company, and not following up and meeting

14   those deadlines.

15       Q    Okay.  I wrote down a couple things:  Missing

16   deadlines, combative communications.

17            Could you read back the answer, please.

18            (Requested material read.)

19       Q    (By Attorney Higgins)  Okay.  So I need to go

20   back and ask about each of these.

21            So what examples do you have of her not

22   following up and meeting deadlines?

23       A    Well, I mean, a lot around the late payments

24   for our vendors.  There were vendors that hadn't been

25   paid in over six months.

KAREN RIAPOS - 06/03/2022

Page 36

1    And there was just not a -- there was a <mark>lack of</mark>
2  <mark>urgency to get those issues resolved.</mark> You know,
3  contracts with our vendors that should have been, you
4  know, signed and uploaded into VNDLY were not there.
5        You know, contracts not on file.
6        You know, leaders in the company reaching out
7  to just, you know, kind of express disappointment or, you
8  know, not success in working within that.
9    Q    Did you talk to Nannette about these issues?
10   A    Yes.
11   Q    Did you document your conversations with her
12  about these issues to make clear what you expected of
13  her?
14   A    I don't remember.
15   Q    Do you agree that it would be a good HR
16  practice to document employment performance concerns with
17  an employee?
18   A    Sure.
19        ATTORNEY KAZARYAN:  Object to form.
20   Q    (By Attorney Higgins)  Is there any reason why
21  you wouldn't have done that in Nannette's case?
22   A    I don't remember.
23   Q    Okay.  Let's go back to combative
24  communications.  What examples of combative
25  communications do you recall?

KAREN RIAPOS - 06/03/2022

Page 37

1    A    Well, our CIO reached out directly to me
2  because we had a vendor that hadn't been paid in four
3  months.  And the vendor escalated it to Jay Fisher, our
4  CIO, saying that Nannette was rude, not helpful, and told
5  him that we would no longer work with him and took him
6  off our vendors list.
7    Q    And do you know whether this vendor was rude or
8  not?
9    A    I don't remember exactly.  But, I mean, he was
10 frustrated, I think, because he hadn't been paid in over
11 four months.
12   Q    Okay.  And how did you conclude that it was
13 Nannette who was at fault for that interaction?
14   A    The vendor reached out and said he had been
15 trying to reach her, trying to get payment and
16 resolution, and nothing had happened over, you know, four
17 months.
18   Q    What was the vendor's name?
19   A    Gosh.  I don't remember.
20   Q    Did you speak to Nannette about it?
21   A    Yes.
22   Q    What did she say?
23   A    Something along the lines of he had entered
24 information wrong into the system and it really wasn't
25 her responsibility.

KAREN RIAPOS - 06/03/2022

Page 38

1     Q     Did Nannette have responsibility to send
2  payments to vendors?
3     A     No, but she had responsibility to process the
4  invoices.
5     Q     And did you determine whether it was on her end
6  processing the invoices, or on the AP end for not sending
7  out payment?
8     A     I don't recall.
9     Q     Okay.  And then missing deadlines, you said,
10 was another lack of performance on her part.
11          What deadlines did she miss?
12    A     There were, you know, requests from leaders,
13 Rod Broschinsky, for instance, you know, asking for
14 reports on, you know, what contracts had been
15 renegotiated, what was our temp labor stand.  And he had
16 to follow up multiple times to get that information from
17 her.  You know, when we were trying to redeploy VNDLY,
18 not having all the documentation ready, communication
19 ready to roll out to the field, things like that.
20    Q     Any other deadlines missed that you're
21 referring to?
22    A     Yeah.  I mean, there were some things on the TA
23 operations side.  I think she, when I first started, was
24 responsible for redoing our employment application, and
25 that had gone on for quite some time.  So I think

KAREN RIAPOS - 06/03/2022

Page 39

```
 1   somebody else on the compliance team ended up picking it
 2   up, yeah.
 3        Q    Do you remember who picked that up?
 4        A    I don't, no.
 5        Q    And did you talk to Nannette about why it was
 6   taking her so long to do that?
 7        A    I believe so.
 8        Q    What did she say?
 9        A    I don't remember.
10        Q    All right.  And then you also said her work
11   with some of the leaders in our organization was not
12   successful, words to that effect.
13             What do you mean by that?
14        A    One of our RVPs in one of the businesses, Mike
15   Krach, had reached out, saying that his branches were
16   not, you know -- they weren't able to find the candidates
17   through VNDLY, that Nannette was rude to some of the
18   local vendors that they wanted to work with, and they
19   were just kind of hitting a wall when it came to finding
20   temp labor through Nannette.
21        Q    And did you speak to Nannette about that?
22        A    I did, yes.
23        Q    What did she say?
24        A    I don't remember.
25        Q    Do you know if that situation got better?
```

KAREN RIAPOS - 06/03/2022

Page 130

```
 1        CERTIFICATE OF REPORTER)
          STATE OF WASHINGTON    )
 2                               ) ss
          COUNTY OF KING         )
 3

 4              I, Elizabeth Patterson Harvey, a Certified

 5   Court Reporter and Registered Professional Reporter

 6   within and for the State of Washington, do hereby certify

 7   that the witness, KAREN RIAPOS, whose testimony appears

 8   in the foregoing deposition, was duly sworn by me; that

 9   the testimony of said witness was taken by me and

10   thereafter reduced to typewriting under my direction and

11   is contained in pages 5-129; that I am neither counsel

12   for, related to, nor employed by any of the parties to

13   the action in which this deposition was taken, and

14   further that I am not a relative or employee of any

15   attorney or counsel employed by the parties thereto, nor

16   financially or otherwise interested in the outcome of the

17   action.

18        This certification does not apply to reproduction

19   of this transcript by any means unless under my direct

20   supervision and control.

21              _____

22              Certified Court Reporter in
                The State of Washington
23              License No. 2731

24   My license expires December 21, 2022

25
```

# Exhibit H

Magistrate Judge Michelle L. Peterson

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE**

| | |
|---|---|
| **NANNETTE BASA**,                Plaintiff,<br><br>vs.<br><br>**BRAND SHARED SERVICES, LLC**,<br><br>                         Defendant. | **Case No. 2:21-cv-00754-MLP**<br><br>**PLAINTIFF'S THIRD INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS** *AND DEFENDANT'S SUPPLEMENTAL OBJECTIONS AND RESPONSES THERETO* |

Defendant Brand Shared Services, LLC ("Defendant") responds to Plaintiff Nannette Basa's ("Plaintiff") Third Set of Interrogatories and Requests for Production as follows:

**PRELIMINARY STATEMENT**

The information contained in each response is based only on the information currently available to Defendant. These responses are made solely for purposes of this action. Each response is subject to all objections as to competence, relevance, materiality, propriety, and admissibility, and all other objections and grounds which would require the exclusion of any statements contained herein, if such statements were made by a witness present and testifying at court. All objections and grounds are expressly reserved and may be interposed at the time of trial.

The fact that Defendant has responded to all, or part, of any interrogatory is not intended to be, and shall not be construed to be, a waiver of all, or any part, of any objection to any

PLAINTIFF'S THIRD INTERROGATORIES AND
REQUESTS FOR PRODUCTION *AND
DEFENDANT'S SUPPLEMENTAL OBJECTIONS
AND RESPONSES THERETO* - 1

SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041
(206) 946-4910

1    **ANSWER:**  Defendant objects to this interrogatory as vague and ambiguous, overbroad,

2    unduly burdensome, argumentative, and cumulative.  Defendant further objects to this

3    interrogatory as argumentative and misrepresenting Ms. Riapos' prior testimony to the extent it

4    assumes Ms. Riapos decided to end Plaintiff's employment, decided not to offer her continued

5    employment or contract work, or that Plaintiff's specific performance issues between September

6    23, 2020 and November 30, 2020 were a sole factor in the decision to lay off Plaintiff.

7    Subject to and without waiving the foregoing objections, Defendant answers as follows:

8    Please see documents produced in the course of discovery and transcript of Ms. Riapos's

9    deposition.  Defendant has provided evidence regarding Plaintiff's performance problems both

10   before September 23, 2020 and through her employment, and those performance issues and

11   deficiencies (to the extent Ms. Riapos was aware of them) influenced Ms. Riapos's decision to

12   identify Plaintiff as a possible person for layoff.  However, as referenced in other discovery,

13   Plaintiff's performance problems were not the sole reason Defendant laid her off.

14   **SUPPLEMENTAL ANSWER:** Subject to and without waiving the objections in its

15   original answer to this interrogatory, Defendant supplements its answer as follows:

16   During her deposition, Ms. Riapos testified at length about the performance issues that

17   informed her decision to identify Ms. Basa for layoff (for example, please see her deposition

18   transcript at 35:18-39:20).  In addition, in the course of discovery, Defendant has produced

19   numerous emails that pertain to the issues Ms. Riapos discussed during her deposition.  Also, in

20   the answer to the very next interrogatory in this set (Interrogatory No. 9), Defendant provided a

21   detailed, itemized list of specific performance issues that were called to Ms. Riapos's attention

22   and that she testified informed her decision to identify Ms. Basa for layoff.

23   In addition to the evidence and documents cited, Defendant identifies the following

24   performance issues or deficiencies that influenced the decision to terminate Plaintiff's

25   employment:

26   • Late payments that took a long time to resolve;

27   PLAINTIFF'S THIRD INTERROGATORIES AND
     REQUESTS FOR PRODUCTION *AND*
     *DEFENDANT'S SUPPLEMENTAL OBJECTIONS*
     *AND RESPONSES THERETO* - 4

     SEYFARTH SHAW LLP
     999 Third Avenue
     Suite 4700
     Seattle, WA  98104-4041
     (206) 946-4910

- Lack of work product (including, without limitation, missing deadlines);

- Combative communications;

- In March 2020, after one of Defendant's third-party partners escalated a non-payment issue to Defendant's chief information officer Jay Fisher, who reported it to Ms. Riapos.  He revealed that when a contractor inquired about a payment he had not received, Ms. Basa sent a curt and dismissive email response;

- While trying to resolve non-payment issue, Heather Morrison, Defendant's Director of IT and Finance, had trouble getting help from Ms. Basa.  Ms. Morrison emailed Mr. Fisher stating, "Just for your information—Nannette was not helpful in the last email I sent—she kept telling me not to worry about it…"

- In approximately April 2020, Ms. Riapos received a complaint from Jerry Dolly that Ms. Basa failed to help fill a role that he requested help with back in January 2020.  Due to Ms. Basa's failure, Ms. Riapos had to step in to help fill the role.

- In June 2020, Mike Krach (a branch manager) complained to HR about persistent issues working with Ms. Basa.  He wrote:

    My experience with Nannette has been nothing but failure,  Over the past 3 years every time she has been involved with an employee placement/search for my region has come up with nothing.  I do not recall my region hiring anyone that she has referred to my region (I might be wrong but that is to the best of my memory).

**INTERROGATORY NO. 9:**      Please identify all negative or critical feedback received by Karen Riapos regarding Plaintiff, including but not limited to feedback from Mike Krach, Jerry Dolly, and Jay Fisher, from December 1, 2019, to November 30, 2020.

**ANSWER:**

Defendant objects to this interrogatory as vague and ambiguous regarding "critical feedback," overbroad, unduly burdensome, and cumulative.  Defendant further objects to this interrogatory as not reasonable calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing objections, Defendant answers as follows: Please see documents produced in the course of discovery which contain several examples of complaints by managers regarding Plaintiff's performance.  Ms. Riapos directly received at least four complaints from different managers about Plaintiff's work performance and brusque

PLAINTIFF'S THIRD INTERROGATORIES AND
REQUESTS FOR PRODUCTION *AND
DEFENDANT'S SUPPLEMENTAL OBJECTIONS
AND RESPONSES THERETO* - 5

SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041
(206) 946-4910

1

## VERIFICATION

2

3      I, Karen Riapos, being first duly sworn upon oath depose and state as follows:  that I am
designated to speak for the defendant herein, that I have read the above interrogatories and
prepared the answers thereto, and that to the best of my knowledge the answers provided are true
and correct.

4

5    Date:__8/8/22_____

6                                                    *Karen Riapos*
                                                     Karen Riapos

7

8

9

10                                ## ATTORNEY VERIFICATION

11   I, the attorney of record for the Defendant, hereby certify that the objections and responses are
made in compliance with FRCP 26(g).

12

13   DATED: this 9th day of August_____, 2022

14                                    ***s/Emma Kazaryan***, WSBA No. 49885

15                                    _____
                                     Attorney for Defendant

16

17

18

19

20

21

22

23

24

25

26

27
PLAINTIFF'S THIRD INTERROGATORIES AND
REQUESTS FOR PRODUCTION *AND*
*DEFENDANT'S SUPPLEMENTAL OBJECTIONS*
*AND RESPONSES THERETO* - 11

SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041
(206) 946-4910

# Exhibit I

# Deposition of Nannette Basa

## Basa v. Brand Shared Services, LLC

## April 5, 2022



**206.287.9066  |  800.846.6989**
1325 Fourth Avenue, Suite 1840, Seattle, Washington 98101
www.buellrealtime.com
email: info@buellrealtime.com



Page 1

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

_____

NANNETTE BASA, an individual,       )
                                    )
          Plaintiff,                )
                                    )
      vs.                           )    CASE NO.:
                                    )    2:21-cv-00754 JLR
BRAND SHARED SERVICES, LLC, a       )
Delaware corporation,               )
                                    )
          Defendant.                )
                                    )
_____

VIDEOCONFERENCE DEPOSITION UPON

ORAL EXAMINATION OF

NANNETTE BASA

_____

9:27 A.M.

APRIL 5, 2022

WITNESS LOCATION:  SEATTLE, WASHINGTON

(All participants appearing via videoconference.)

REPORTED BY:  SALLY J. HANDS, CCR 2191

343ebadd-a87c-42e3-8164-3ac544e858c9

Basa v. Brand Shared Services, LLC                    Nannette Basa

Page 157

1        What Meg are you talking about?
2    A.   Meg Newman.
3    Q.   And what's Vania's last name?
4    A.   Garzon.
5    Q.   How did you hear that she left?
6    A.   Through the -- it might have been Jamie Hay.
7    Q.   And does this -- it seems like you didn't like
8  Meg Newman.  You are saying if anyone disagrees with
9  her, they have integrity.  Is that what you mean by
10 that?
11        MR. HIGGINS:  Object to the form.
12   Q.   (BY MS. McFARLAND)  Go ahead.  You can answer.
13        MR. HIGGINS:  You can answer.  There's
14 no judge here to rule on that.  I'm just stating an
15 objection for the record.
16        THE WITNESS:  Okay.
17   Q.   (BY MS. McFARLAND)  Do you need the question
18 again?
19   A.   Yes.
20        MS. McFARLAND:  Actually, Court
21 Reporter, do you mind reading it back.  I don't
22 remember exactly what it was.
23        (The reporter read back as requested.)
24   A.   This was after I was laid off.  If you are
25 asking if I like Meg or not, I -- there wasn't even

BUELL REALTIME REPORTING, LLC
206.287.9066  I  800.846.6989

Basa v. Brand Shared Services, LLC                      Nannette Basa

Page 158

1    time for me to get to know her or her approach to get
2    to know me.
3        Q.   (BY MS. McFARLAND)   Okay.  So then why would
4    you say if somebody didn't get along with Meg that
5    means they have integrity if you didn't know her?
6        A.   You know, based on what I experienced on race
7    and age discrimination and seeing the data, and also
8    other data, seeing data, it is like she's -- she
9    positioned herself as a person that cares about
10   diversity inclusion and equity, but it didn't happen
11   for me.
12       Q.   So do you know anything about her integrity?
13       A.   Well, the actions.  She was okay with laying
14   me off.
15       Q.   So you think she didn't have integrity just
16   because she laid you off?
17       A.   That is one of the data points.
18       Q.   What other data are you referring to?
19       A.   That she allowed a document -- on my severance
20   letter, for example, they specifically did not list
21   Kristen Della Sala and April Wright on that knowing it
22   would drop the average age down.
23            MR. HIGGINS:  She's talking about the
24   OWBPA disclosure.
25            THE WITNESS:  Thank you.

343ebadd-a87c-42e3-8164-3ac544e858c9

Basa v. Brand Shared Services, LLC                    Nannette Basa

Page 162

1          Q.   Any other discussions about OWBP disclosures?
2          A.   Outside of Meg, Gail probably talked -- she
3     was probably already gone.
4               Oh, Connie Rogers.
5          Q.   Who is Connie Rogers?
6          A.   Connie Rogers was also chosen for severance.
7     Her specifically, she was older, older than me.  Her
8     duties actually match more with April Wright's duties.
9     And she was struggling with why didn't they even put
10    her on the list.
11         Q.   And was she somebody who had worked with Brand
12    before Meg?
13         A.   April, yes.
14         Q.   No, Connie Rogers.
15         A.   Connie Rogers, yes.
16         Q.   What's her race?
17         A.   She's white.
18         Q.   What was her title, do you know?
19         A.   HR coordinator, I believe.
20         Q.   Who do you think was involved in deciding to
21    lay you off?
22         A.   Karen Riapos, Meg Newman, and I'm assuming
23    Michelle -- I can't remember her last name, was also
24    part of that discussion.
25         Q.   Why do you think Meg Newman had a role in

343ebadd-a87c-42e3-8164-3ac544e858c9

Basa v. Brand Shared Services, LLC                    Nannette Basa

Page 163

1    laying you off?

2         A.   She's the head of HR.

3         Q.   What role do you think she played as the head

4    of HR?

5         A.   From my understanding with those lists, you

6    have to get approval from the functional leader.  They

7    sign off on it.  So the functional leader for IT, Jay

8    Fisher, would have signed off on it or agreed to that

9    list.  Same thing with legal and same thing with HR.

10        Q.   So she had to ultimately sign off, based on

11   your understanding, about who was going to get laid

12   off?

13        A.   Yes.

14             MS. McFARLAND:  Okay.  Can we go to

15   Exhibit Number 11, please.

16             (Deposition Exhibit 11 was presented

17              virtually and later marked.)

18        Q.  (BY MS. McFARLAND)  Do you recognize

19   Exhibit 11?

20        A.   Yes.

21        Q.   These are text message between you and Thomas

22   Yuhas?

23        A.   Yes.

24        Q.   There's one dated December 14th of 2020:  "I

25   want Meg to suffer the consequences and I'm trying to

BUELL REALTIME REPORTING, LLC
206.287.9066  I  800.846.6989

Basa v. Brand Shared Services, LLC                          Nannette Basa

Page 186

1                    C E R T I F I C A T E

2

3    STATE OF WASHINGTON

4    COUNTY OF PIERCE

5

6         I, SALLY HANDS, a Certified Court Reporter in and

7    for the State of Washington, do hereby certify that the

8    foregoing transcript of the deposition of NANNETTE BASA,

9    having been duly sworn, on April 5, 2022, is true and

10   accurate to the best of my knowledge, skill and ability.

11        IN WITNESS WHEREOF, I have hereunto set my hand

12   and seal this 31st day of May, 2022.

13

14

15

16

17   _____
     Sally Hands, CCR 2191

18

19   My commission expires:

20   JANUARY 28th, 2023

21

22

23

24

25

BUELL REALTIME REPORTING, LLC
206.287.9066  I  800.846.6989

343ebadd-a87c-42e3-8164-3ac544e858c9

# Exhibit J

<u>Conversation between Nannette's iPhone (+14259510818) and Thomas Yuhas (6308035737)</u>

8/21/2019 2:59 PM

Thomas Yuhas (6308035737)



12/14/2020 8:52 AM

Nannette's iPhone (+14259510818)

Hi, understand if you feel uncomfortable talking to me, but was hoping you could give me Charmin's personal phone number. But, I do have good stuff if you do want to talk

12/14/2020 1:27 PM

Thomas Yuhas (6308035737)

Hey Nanette! I have no problem taking with you. You kidding me? Feel to reach anytime you like. Charmin' cell # 678-895-9397.

12/14/2020 1:28 PM

Nannette's iPhone (+14259510818)

Do you have time now? I already spoke to Charmin

12/14/2020 1:33 PM

Nannette's iPhone (+14259510818)

I want Meg to suffer the consequences and I'm trying to gather up as much info as possible for my meeting tomorrow with my attorney

1/8/2021 2:48 PM

Nannette's iPhone (+14259510818)

Nannettekbasa@gmail.com

1/19/2021 6:03 AM (Viewed 1/19/2021 7:56 AM)

Thomas Yuhas (6308035737)

Happy belated Bday! 🎉 🎂

1/21/2021 10:37 AM

Thomas Yuhas (6308035737)

In a meeting. I'll call you back shortly

1/21/2021 10:37 AM

Nannette's iPhone (+14259510818)

# Exhibit K

Camile and Natasha wanted me to send you a link to their Girl Scout Cookie site - it is Cookie Season!! https://digitalcookie.girlscouts.org/scout/camile457274

1/23/2021 1:10 PM (Viewed 1/23/2021 2:58 PM)

Gail (4252447016)

Hope you are doing well...any news?

1/28/2021 11:43 AM

Gail (4252447016)

In a meeting

1/28/2021 11:43 AM

Gail (4252447016)

🙂

1/28/2021 11:44 AM

Nannette's iPhone (+14259510818)

Call me when you have time :)

1/28/2021 11:44 AM (Viewed 1/28/2021 12:02 PM)

Gail (4252447016)

Will do

3/11/2021 10:06 AM

Nannette's iPhone (+14259510818)

Wow, I just heard Vania left. Inside info is that I heard she didn't get along with Meg....so I think that means she has integrity

3/11/2021 10:06 AM

Gail (4252447016)

WOW

3/11/2021 10:06 AM

Nannette's iPhone (+14259510818)

Also Gerald called me yesterday to let me know Karen doesn't understand VNDLY

3/11/2021 10:07 AM

Nannette's iPhone (+14259510818)

And pilot program for workday is ceasing

3/11/2021 10:07 AM

Gail (4252447016)

I am not surprised that Meg is not showing up well... She never gave me that positive feeling...

BASA_000739

# Exhibit L

3/11/2021 10:07 AM

Gail (4252447016)

Whoa - VNDLY is not complicated

3/11/2021 10:08 AM

Gail (4252447016)

And they are ceasing Workday pilot - are they ceasing the implentation?

3/11/2021 10:08 AM

Nannette's iPhone (+14259510818)

Karen isn't that smart tho

3/11/2021 10:09 AM

Nannette's iPhone (+14259510818)

It's not launching yet... but maybe international sometime this year

3/11/2021 10:09 AM

Gail (4252447016)

No, Karen is a few rungs short of a ladder  🪜

3/11/2021 10:09 AM

Nannette's iPhone (+14259510818)

Funny

3/11/2021 10:10 AM

Gail (4252447016)

Launching international? Funny - that is going to be a challenge... It would be a
challenge with a better capacity team let alone the skeletal group that is in the field

3/11/2021 10:11 AM

Nannette's iPhone (+14259510818)

Yeah, well time for someone to hold Meg accountable. I think she is better at a
company where everything is set up

3/11/2021 10:12 AM

Gail (4252447016)

Agreed...she clearly does not deal well with an ambiguity

3/11/2021 10:16 AM

Nannette's iPhone (+14259510818)

I was just talking to Jamie...we talked about them posting Thomas job right after they
laid him off and hiring a recruiter. My gut feeling is Meg has never had experience

BASA_000740

# Exhibit M

**Kazaryan, Emma J.**

| | |
|---|---|
| **From:** | Cody Fenton-Robertson <cody@beanlawgroup.com> |
| **Sent:** | Thursday, August 25, 2022 10:17 AM |
| **To:** | Kazaryan, Emma J. |
| **Cc:** | 'Alexander Higgins (alex@alexjhiggins.com)'; McFarland, Helen M. |
| **Subject:** | RE: Basa v. Brand (Notices of Deposition) |

**This Message Is From an External Sender**
This message came from outside your organization.

Hi Emma,

We have not changed our minds about deposing Ms. Newman. When can we expect your motion?

Best,
Cody

---

**From:** Kazaryan, Emma J. <ekazaryan@seyfarth.com>
**Sent:** Wednesday, August 24, 2022 6:36 PM
**To:** Alexander Higgins <alex@alexjhiggins.com>; McFarland, Helen M. <hmcfarland@seyfarth.com>; Cody Fenton-Robertson <cody@beanlawgroup.com>
**Subject:** RE: Basa v. Brand (Notices of Deposition)

Hi Alex,

Thank you for making time for a discovery conference to discuss Meg Newman's deposition.  Please see below my summary of our call and the reasons why Brand intends to move for a protective order.  Please let me know if you have any questions or if you change your mind about proceeding with Ms. Newman's deposition.

You previously said that you want to take Ms. Newman's deposition because she is an HR leader and someone to whom Ms. Basa reported during her tenure.  You said Ms. Newman may have knowledge of Ms. Basa's job duties; Ms. Basa's performance; and general HR policies governing layoffs, hiring, and the like.

During our call, I explained that **Ms. Newman is a senior c-suite executive who was always at least two reporting levels removed from Ms. Basa**.  I pointed out that even **Ms. Basa admits that she and Ms. Newman do not really know each other**.  Indeed, at her deposition, Ms. Basa testified, "If you are asking if I like Meg [Newman] or not, I -- there wasn't even time for me to get to know her or her approach to get to know me."

I also reminded you that Brand's written discovery responses and Karen Riapos's deposition testimony are both unequivocally clear that **Ms. Riapos and Michelle Roman – not Ms. Newman – made the decision to terminate Ms. Basa's employment**.

Further, **Ms. Newman's name has not come up in the substantive discussions about why Ms. Basa was selected for lay off**.  At her deposition, Ms. Riapos testified that the reasons Ms. Basa was selected for layoff included the fact that (i) the business need for her role was dissolving with the hiring of a managed service provider, and (ii) she had performance and communication issues which were the subject of complaints by other managers.  Notably, Ms. Riapos testified that she (Ms. Riapos) made the decision to hire a managed service provider.  In addition, of the manager complaints Ms.

Riaposs talked about, none of them involved Ms. Newman.

At her deposition, Ms. Basa testified that she thought Ms. Newman was involved in the decision to terminate her employment because "[s]he's the head of HR." When asked further about her understanding of Ms. Newman's involvement, Ms. Basa said, "From my understanding…you have to get approval from the functional leader. They sign off on it." **This is the very essence of an apex witness -- someone who is at the apex of the proverbial corporate mountain with regard to a certain issue and someone who does not have unique, first-hand, non-repetitive knowledge of that issue.**
With regard to your point that you want to ask Ms. Newman about "general HR policies governing layoffs, hiring and the like", I pointed out that **you have noted a CR 30(b)(6) deposition that includes this very same topic (among others)**. And again, there is **nothing to suggest that Ms. Newman has unique, first-hand, non-repetitive knowledge of these matters**.

In light of the foregoing, and Ms. Basa's inexplicable fixation with Ms. Newman (i.e., texting friends that she wants Ms. Newman to "suffer the consequences" and baselessly disparaging Ms. Newman's integrity despite the fact that they didn't really know each other and despite the fact that Ms. Newman did not make the decision to terminate her), **the insistence on deposing Ms. Newman appears calculated to harass, burden, and annoy rather than uncover relevant evidence**.

During our call, you responded to my points by saying that there is an agenda for a 1:1 meeting between Ms. Riaposs and Ms. Newman that refers to Ms. Basa being laid off once the managed service provider is onboarded. The agenda was sent from Ms. Riaposs to Ms. Newman and, as you acknowledged, spans many different topics (including high-level reports about the other members of Ms. Riaposs's team). You asked Ms. Riaposs about this meeting at her deposition and I think her answers made clear that the sum and substance of the discussion was her relaying information to Ms. Newman. Accordingly, I don't think this agenda demonstrates that Ms. Newman has unique, first-hand, non-repetitive knowledge of these matters.

As you noted in your email, at the outset of our call, before we got into our substantive discussion of the merits, you asked if we could reach a compromise if you agreed to limit the time of Ms. Newman's deposition. I asked what you had in mind in terms of time and if there were discrete topics you wanted to ask her about. You said you could limit the deposition to 90 minutes. We talked through your proposal and I considered it, but said I don't think we can agree to that for the substantive reasons we proceeded to discuss (and that I've outlined here).

As I say above, please let me know if you have any questions or if you change your mind about proceeding with Ms. Newman's deposition.

Best,
Emma


**Emma Kazaryan** | Associate | Seyfarth Shaw LLP
999 Third Avenue | Suite 4700 | Seattle, Washington 98104-4041
Direct: +1-206-946-4978 | Mobile: +1-206-883-4584 | Fax: +1-206-299-9664
ekazaryan@seyfarth.com | www.seyfarth.com
**From:** Alexander Higgins <alex@alexjhiggins.com>
**Sent:** Monday, August 22, 2022 3:32 PM
**To:** Kazaryan, Emma J. <ekazaryan@seyfarth.com>; McFarland, Helen M. <hmcfarland@seyfarth.com>; Cody Fenton-Robertson <cody@beanlawgroup.com>
**Subject:** Re: Basa v. Brand (Notices of Deposition)

**This Message Is From an External Sender**
This message came from outside your organization.

I'm referring to FRCP 37 (not CR 11)

(B) *If the Motion Is Denied.* If the motion is denied, the court may issue any protective order authorized under Rule 26(c) [law.cornell.edu] and must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees. But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust.

*Law Offices of Alex J. Higgins*
*Labor & Employment Law*
2200 Sixth Ave., Suite 500
Seattle, WA 98121
206.340.4856
206.518.3698 (mobile)
206.260.8803 (fax)
alex@alexjhiggins.com
www.alexjhiggins.com [alexjhiggins.com]

CONFIDENTIALITY NOTICE: This communication is intended for the sole use of the individual and entity to whom it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. You are hereby notified that any dissemination, distribution or duplication of this communication by someone other than the intended addressee or its designated agent is strictly prohibited. If you have received this communication in error, please notify this firm immediately by reply to this communication.



CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

**From:** "Kazaryan, Emma J." <ekazaryan@seyfarth.com>
**Date:** Monday, August 22, 2022 at 3:29 PM
**To:** Alexander Higgins <alex@alexjhiggins.com>, "McFarland, Helen M." <hmcfarland@seyfarth.com>, Cody Fenton-Robertson <cody@beanlawgroup.com>
**Subject:** RE: Basa v. Brand (Notices of Deposition)

Hi Alex -- I intend to respond substantively to this email just as soon as I finish another project, but one quick point of clarification: when you say you will seek terms on our motion, do you mean that you will seek sanctions against us for bringing a motion for a protective order?

Best,
Emma

**Emma Kazaryan** | Associate | Seyfarth Shaw LLP
999 Third Avenue | Suite 4700 | Seattle, Washington 98104-4041
Direct: +1-206-946-4978 | Mobile: +1-206-883-4584 | Fax: +1-206-299-9664
ekazaryan@seyfarth.com | http://www.seyfarth.com
**From:** Alexander Higgins <alex@alexjhiggins.com>
**Sent:** Monday, August 22, 2022 3:19 PM
**To:** Kazaryan, Emma J. <ekazaryan@seyfarth.com>; McFarland, Helen M. <hmcfarland@seyfarth.com>; Cody Fenton-Robertson <cody@beanlawgroup.com>
**Subject:** Re: Basa v. Brand (Notices of Deposition)

| **This Message Is From an External Sender** |
| This message came from outside your organization. |

Emma,

I'm recapping our CR 37.  You said that Ms. Newman did not make the decision to select my client for layoff.  Your position is that she falls squarely within the Apex doctrine.  You further argued that we could obtain information about HR policies/practices from a 30(b)(6) deposition that we noted.   You also said that Ms. Basa's text messages sent to friends after she was fired by Brand seem to indicate desire to "get back" at Ms. Newman.

Before arguing the merits during our call, I asked if we could perhaps reach a compromise if I agreed to limit my deposition to 90 minutes.  You said no.

I then went on to address your points in the following order during our call:

1.  The Apex doctrine.  It does not apply when the executive was involved in conversations about the plaintiff and whether to terminate (or select for layoff).  Exhibit 10 to Ms. Riapos's deposition shows that Ms. Newman was involved in discussions about whether to layoff Ms. Basa.  Ms. Riapos testified in her deposition that she shared her reasoning with Ms. Newman.  We are entitled to ask what Ms. Newman recalls about that conversation and whether she, as the HR leader, expected to see some objective criteria applied to the decision.  We have other questions about the conversation but we don't have to divulge all of our questions beforehand and eliminate any possibility of getting candid answers.

2.  HR policies/practices.  Your client's 30(b)(6) representative will have information, but given the irregularities in Ms. Basa's case, we would like to hear what Ms. Newman thinks of how it was handled.

3.  Ms. Basa's text messages.  This is a red herring.  Ms. Basa has not made the decision to take Ms. Newman's deposition – her lawyers have done that.  The decision is so obvious that it did not require deliberation.  My co-counsel completely agrees.  Your motion will be the first time either of us have been accused of taking a deposition to harass a witness.  As such, we will take that very seriously.

4

In conclusion, your arguments are baseless.  And given your client's unreasonable refusal to consider any compromise short of a motion, we will seek terms on your motion.

Finally, if you use Ms. Basa's text messages to support your arguments, I hope you will also acknowledge that while Ms. Basa preserved all of her private text messages – even the unflattering ones – your client did nothing to preserve text messages and has not produced a single one (as far as I can tell).

-Alex

*Law Offices of Alex J. Higgins*
*Labor & Employment Law*
2200 Sixth Ave., Suite 500
Seattle, WA 98121
206.340.4856
206.518.3698 (mobile)
206.260.8803 (fax)
alex@alexjhiggins.com
www.alexjhiggins.com [alexjhiggins.com]

CONFIDENTIALITY NOTICE: This communication is intended for the sole use of the individual and entity to whom it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. You are hereby notified that any dissemination, distribution or duplication of this communication by someone other than the intended addressee or its designated agent is strictly prohibited. If you have received this communication in error, please notify this firm immediately by reply to this communication.



CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

**From:** "Kazaryan, Emma J." <ekazaryan@seyfarth.com>
**Date:** Monday, August 22, 2022 at 9:54 AM
**To:** Alexander Higgins <alex@alexjhiggins.com>, "McFarland, Helen M." <hmcfarland@seyfarth.com>, Cody Fenton-Robertson <cody@beanlawgroup.com>
**Subject:** RE: Basa v. Brand (Notices of Deposition)

Thank you!  I'll plan to call you at 11:30 a.m. at 206.518.3698 unless you tell me a different number works best.

Best,
Emma

**Emma Kazaryan** | Associate | Seyfarth Shaw LLP
999 Third Avenue | Suite 4700 | Seattle, Washington 98104-4041
Direct: +1-206-946-4978 | Mobile: +1-206-883-4584 | Fax: +1-206-299-9664
ekazaryan@seyfarth.com | http://www.seyfarth.com

**From:** Alexander Higgins <alex@alexjhiggins.com>
**Sent:** Monday, August 22, 2022 9:45 AM
**To:** Kazaryan, Emma J. <ekazaryan@seyfarth.com>; McFarland, Helen M. <hmcfarland@seyfarth.com>; Cody Fenton-Robertson <cody@beanlawgroup.com>
**Subject:** Re: Basa v. Brand (Notices of Deposition)

**This Message Is From an External Sender**
This message came from outside your organization.

I'm available today at 11:30, 1pm or 4pm.
In a mediation tomorrow all day.

*Law Offices of Alex J. Higgins*
*Labor & Employment Law*
2200 Sixth Ave., Suite 500
Seattle, WA 98121
206.340.4856
206.518.3698 (mobile)
206.260.8803 (fax)
alex@alexjhiggins.com
www.alexjhiggins.com [alexjhiggins.com]

CONFIDENTIALITY NOTICE: This communication is intended for the sole use of the individual and entity to whom it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. You are hereby notified that any dissemination, distribution or duplication of this communication by someone other than the intended addressee or its designated agent is strictly prohibited. If you have received this communication in error, please notify this firm immediately by reply to this communication.



CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

**From:** "Kazaryan, Emma J." <ekazaryan@seyfarth.com>
**Date:** Monday, August 22, 2022 at 9:37 AM
**To:** Alexander Higgins <alex@alexjhiggins.com>, "McFarland, Helen M." <hmcfarland@seyfarth.com>, Cody Fenton-Robertson <cody@beanlawgroup.com>
**Subject:** RE: Basa v. Brand (Notices of Deposition)

Good morning Alex,

Please let me know what your availability is today or tomorrow to meet-and-confer regarding Meg Newman's deposition.

I will ask Daniel McDaniels if he is available on the new September date.

Best,
Emma

**Emma Kazaryan** | Associate | Seyfarth Shaw LLP
999 Third Avenue | Suite 4700 | Seattle, Washington 98104-4041
Direct: +1-206-946-4978 | Mobile: +1-206-883-4584 | Fax: +1-206-299-9664
ekazaryan@seyfarth.com | http://www.seyfarth.com
**From:** Alexander Higgins <alex@alexjhiggins.com>
**Sent:** Friday, August 19, 2022 7:54 PM
**To:** Kazaryan, Emma J. <ekazaryan@seyfarth.com>; McFarland, Helen M. <hmcfarland@seyfarth.com>; Cody Fenton-Robertson <cody@beanlawgroup.com>
**Subject:** Re: Basa v. Brand (Notices of Deposition)

---

**This Message Is From an External Sender**
This message came from outside your organization.

---

As I said in an email to both of you on August 11:

# Also, because we have Daniel McDaniels scheduled on August 30, feel free to suggest that date for Ryan Wilson or Roald Richards to get two depositions done on a single day.

I never received any response to that.

Frankly, it's been difficult to get consistent communication and cooperation in scheduling depositions.   I'm trying to schedule depositions in an orderly and efficient manner.

Please ask if Mr. McDaniels is available in September so we can schedule multiple depositions on each day.

Also, you have made a vague reference to opposing our request to depose Meg Newman, yet you have not asked for a CR 37 nor have you taken any steps to get a protective order.  Time is wasting.  Let's get on with it.

I would appreciate getting a response by Wednesday, August 24, so we can pin down all of the upcoming depositions – including Ms. Newman's.

-Alex

*Law Offices of Alex J. Higgins*
*Labor & Employment Law*
2200 Sixth Ave., Suite 500
Seattle, WA 98121
206.340.4856

206.518.3698 (mobile)
206.260.8803 (fax)
alex@alexjhiggins.com
www.alexjhiggins.com [alexjhiggins.com]

CONFIDENTIALITY NOTICE: This communication is intended for the sole use of the individual and entity to whom it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. You are hereby notified that any dissemination, distribution or duplication of this communication by someone other than the intended addressee or its designated agent is strictly prohibited. If you have received this communication in error, please notify this firm immediately by reply to this communication.



CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

**From:** "Kazaryan, Emma J." <ekazaryan@seyfarth.com>
**Date:** Friday, August 19, 2022 at 6:58 PM
**To:** Alexander Higgins <alex@alexjhiggins.com>, "McFarland, Helen M." <hmcfarland@seyfarth.com>, Cody Fenton-Robertson <cody@beanlawgroup.com>
**Subject:** RE: Basa v. Brand (Notices of Deposition)

Hi Alex,

As Helen said in an email to you on August 3, 2022, Meg Newman is not available on August 30 for a deposition and, if we produce her, it will need to be in September.  Please let us know what dates you propose in the third or fourth week of September.

Also, I saw you sent over a dep notice for Daniel McDaniels with a September date, but we previously agreed to August 30 at 9:30 a.m. for his deposition and that is the date he and I have been holding.  Please let me know if you intended to change his deposition date.

Best,
Emma

**Emma Kazaryan** | Associate | Seyfarth Shaw LLP
999 Third Avenue | Suite 4700 | Seattle, Washington 98104-4041
Direct: +1-206-946-4978 | Mobile: +1-206-883-4584 | Fax: +1-206-299-9664
ekazaryan@seyfarth.com | http://www.seyfarth.com
**From:** Alexander Higgins <alex@alexjhiggins.com>
**Sent:** Monday, August 15, 2022 10:40 AM
**To:** Kazaryan, Emma J. <ekazaryan@seyfarth.com>; McFarland, Helen M. <hmcfarland@seyfarth.com>; Cody Fenton-Robertson <cody@beanlawgroup.com>
**Subject:** Basa v. Brand (Notices of Deposition)

**This Message Is From an External Sender**

This message came from outside your organization.

Helen and Emma,

Please advise ASAP if these dates do not work for you or for the deponents.

-Alex

*Law Offices of Alex J. Higgins*
*Labor & Employment Law*
2200 Sixth Ave., Suite 500
Seattle, WA 98121
206.340.4856
206.518.3698 (mobile)
206.260.8803 (fax)
alex@alexjhiggins.com
www.alexjhiggins.com [alexjhiggins.com]

CONFIDENTIALITY NOTICE: This communication is intended for the sole use of the individual and entity to whom it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. You are hereby notified that any dissemination, distribution or duplication of this communication by someone other than the intended addressee or its designated agent is strictly prohibited. If you have received this communication in error, please notify this firm immediately by reply to this communication.



CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.