Exhibit 1

Page 1

1                IN THE UNITED STATES DISTRICT COURT

2              FOR THE WESTERN DISTRICT OF WASHINGTON

3                            AT SEATTLE

4    _____

5    NANNETTE BASSA,                      )
                                          )
6              Plaintiff,                 )
                                          )
7    vs.                                  )No.2:21-CV-007540-MLP
                                          )
8    BRAND SHARED SERVICES, LLC,          )
                                          )
9              Defendant.                 )
                                          )
10   _____

11    REMOTE VIDEOCONFERENCE DEPOSITION UPON ORAL EXAMINATION

12                              OF

13                        KAREN RIAPOS

14

15   _____

16            Taken via Zoom at: Kennesaw, Georgia

17

18

19

20

21

22

23

24   DATE TAKEN:  June 3, 2022

25   REPORTED BY:  ELIZABETH PATTERSON HARVEY, RPR, CCR 2731

KAREN RIAPOS - 06/03/2022

---

**Page 2**

```
 1   A P P E A R A N C E S:
 2     FOR THE PLAINTIFF:
 3               Alexander J. Higgins
                 alex@alexjhiggins.com
 4               Law Offices of Alex J. Higgins
                 2200 Sixth Avenue Ste 500
 5               Seattle, Washington  98121
                 206.340.4856
 6
                 Cody Fenton-Robertson
 7               cody@beanlawgroup.com
                 Bean Law Group
 8               2200 Sixth Avenue, Suite 600
                 Seattle, Washington  98121
 9               206.522.0618
10
       FOR THE DEFENDANT:
11
                 Emma Kazaryan
12               ekazaryan@seyfarth.com
                 Seyfarth
13               999 Third Avenue
                 Suite 4700
14               Seattle, Washington   98104
                 206.946.4910
15
16
17
18
19       * * * * * * *
20
21
22
23
24
25
```

---

**Page 4**

```
 1                  EXHIBIT INDEX
 2   EXHIBITS FOR IDENTIFICATION              PAGE
 3
     Exhibit 12  December 8-10, 2020 email chain
 4               (BRAND00718-722)              91:13
 5   Exhibit 13  January 5-8, 2021 email chain
                 (BRAND000087-089)            96:5
 6
     Exhibit 14  June 4, 2020 email chain
 7               (BRAND004412)                110:21
 8   Exhibit 15  March 23 - June 17, 2021 email
                 chain (BRAND001436-447)      114:15
 9
     Exhibit 16  June 24, 2020 emails (BRAND004720,
10               4697, 4702)                  116:21
11   Exhibit 17  June 2020 emails (BRAND004523,
                 4681)                        123:12
12
     Exhibit 18  June 8 - 16, 2020 email chain
13               (BRAND004529-533)            125:21
14
15
16
17
18
19
20
21
22
23
24
25
```

---

**Page 3**

```
 1                    I N D E X
                DEPOSITION OF KAREN RIAPOS
 2
                  EXAMINATION INDEX
 3
     EXAMINATION BY:
 4                                            PAGE:
     ATTORNEY HIGGINS:
 5                                            5:19
 6
                  EXHIBIT INDEX
 7   EXHIBITS FOR IDENTIFICATION              PAGE
 8   Exhibit 1   Defendant's Objections and
                 Responses to Plaintiff's First
 9               Interrogatories and Requests for
                 Production                   25:10
10
     Exhibit 2   November 25 - December 11, 2020
11               email chain (BRAND001777-778) 41:13
12   Exhibit 3   December 13, 2019 email chain
                 (BRAND002513-515)            45:16
13
     Exhibit 4   February 4, 2021 email chain
14               (BRAND001586)                49:25
15   Exhibit 5   December 4, 2019 email with
                 attachment (BRAND002001-2003) 54:14
16
     Exhibit 6   Draft VINDLY Project Plan
17               (BRAND003612-615)            60:6
18   Exhibit 7   August 4, 2020 email with
                 attachment (BRAND004930-4939) 62:10
19
     Exhibit 8   August 14, 2020 email with
20               attachment (BRAND004986-005003) 72:18
21   Exhibit 9   September 21 - 23, 2020 email
                 chain (BRAND001637-639)      74:5
22
     Exhibit 10  July 21, 2020 email
23               (BRAND004807-808)            77:20
24   Exhibit 11  September 25-28, 2020 email chain
                 (BRAND001613-616)            82:19
25
```

---

**Page 5**

```
 1         Kennesaw, Georgia  June 3, 2022
 2               9:00 a.m.
 3                -o0o-
 4
 5      KAREN RIAPOS, witness herein, having been first duly
 6            sworn on oath, was examined and
 7            testified as follows:
 8
 9       THE CERTIFIED COURT REPORTER:  Will
10   counsel please stipulate to the validity and agreement to
11   the remote proceedings today.
12       ATTORNEY HIGGINS:  Yes.  On behalf of
13   plaintiff, Nannette Basa, we stipulate.
14       THE CERTIFIED COURT REPORTER:  And for
15   defendant?
16       ATTORNEY KAZARYAN:  Yes.  On behalf of
17   defendant, Brand Shared Services, we stipulate.
18
19       EXAMINATION
20   BY ATTORNEY HIGGINS:
21   Q   (By Attorney Higgins)  Ms. Riapos, how do you
22   pronounce your last name?
23   A   Riapos.
24   Q   Ms. Riapos.  Okay.  Thank you for that.
25       My name is Alex Higgins.  I represent Nannette
```

---

54

1    A   Well, once nextSource started, yeah.  So from
2   April 2021, moving forward, we were able to track the
3   savings that nextSource had provided.
4    Q   Okay.  Got it.
5        All right.  Let's just take a break now.
6    A   Okay.
7        ATTORNEY HIGGINS:  Let's go off the
8   record.
9        (Recess.)
10       ATTORNEY HIGGINS:  All right.  Cody, have
11  you uploaded 2001?
12       ATTORNEY FENTON-ROBERTSON:  I have now.
13  Exhibit 5.
14       (Exhibit Number 5 marked.)
15   Q   (By Attorney Higgins)  All right.  Can you take
16  a look at that and let me know when you have it open.
17   A   Sure.
18       I have it open.
19   Q   Just take a look at all three pages and tell me
20  if you think you've seen this before.  Or do you recall
21  this document, I guess, is a better question?
22   A   Yeah.  Vaguely.  Yeah.
23   Q   Is it your understanding from the email that
24  Mary Ann Goulding sent you that Nannette Basa had created
25  this Brand Recruiting Life Cycle Process?

55

1    A   I assume they kind of worked on it together.
2    Q   Okay.  And if you look at the second page of
3   this exhibit, which is the Brand Recruiting Life Cycle
4   Process, it says "Receive Request for New Requisition."
5   And that's the first bullet point.
6        And then underneath, "Receive directly from
7   hiring manager."
8        Do you see that?
9    A   Yep.
10   Q   And then the third bullet is, "Receive request
11  by Nannette to work on a campaign."
12   A   Yep.
13   Q   Do you know what that means?
14   A   I don't.
15   Q   And then down below, underneath New Requisition
16  Intake Discussion, about halfway down the bullet points,
17  it says, "TA cannot begin recruiting until approved by
18  SLT."
19       Do you see that?
20   A   Yes.
21   Q   What's SLT?
22   A   Senior leadership team.
23   Q   Is that true, that talent acquisition couldn't
24  begin recruiting anything until the senior leadership
25  team of the site had approved that?

56

1    A   I believe so.
2    Q   Is that still the process?
3    A   No.
4    Q   "Yes"?
5    A   No.  Sorry.
6    Q   Oh, what is the process now?
7    A   It depends on the role, and it depends on if
8   it's a replacement or an add to staff.  And so the SLT
9   gets involved with some if they're new or budgeted, like
10  additions.  But replacements, they're not always
11  involved.
12   Q   Okay.  And then it's down -- the next one down
13  is Build Recruitment Strategy.
14       Do you see that?
15   A   I do, yes.
16   Q   And it says, "Always post to Direct Employers,
17  300-plus sites, for EEO compliance purposes."
18       Do you know what that means?
19   A   Yeah.  Direct Employers is our job aggregator.
20  So when we post jobs there, it posts to our careers page
21  and over 300 sites around the country.
22   Q   And do you know what is meant by "for EEO
23  compliance purposes"?
24   A   Yeah.  We use Direct Employers to manage, to
25  make sure we're posting jobs in places that will get

57

1   underrepresented people for candidates.
2    Q   And is that requirement to do?
3    A   Yes, it is.
4    Q   And who requires that?
5    A   We're a federal contractor, so the federal
6   government.
7    Q   Why didn't you post the recruiting positions
8   for which you hired Nicole Norris and Ryan Wilson to the
9   Direct Employers site?
10   A   Because at the time, when we would post to
11  Direct Employers, candidates would send us an email with
12  their resume.  And since I had already reached out to
13  Ryan and Nicole directly, there was no reason for them to
14  apply to the position.
15   Q   Right.  But for EEO compliance purposes, why
16  didn't you get -- advertise the position in a broad area
17  of the country?
18   A   Because we already had identified two
19  candidates, who I had previously worked with, so we
20  already knew their work product.
21   Q   Is Ryan white?
22   A   Ryan Wilson?  I'm sorry?
23   Q   Is Ryan Wilson white?
24   A   Yes.
25   Q   Is Nicole Norris white?

KAREN RIAPOS – 06/03/2022

94

1 who manages our careers page. So we post jobs through
2 DirectEmployers to show up on our career's page.
3 **Q    Got it. Okay. I'm sorry. I interrupted. Go**
4 **ahead.**
5 A    No, no. That's fine.
6      You know, we had given her some other projects:
7 Updating offer letter templates, updating applications,
8 you know, around the organizations of the U.S., things
9 like that, other recruitment-operations-type work.
10 **Q    Did she also respond to the general inquiries**
11 **to HR through the website?**
12 A    I don't know.
13 **Q    Okay. What about VNDLY tech support**
14 **issues? Did she do that?**
15 A    I believe she opened up tickets with VNDLY.
16 **Q    Who did that after she left?**
17 A    I don't know. Me, maybe, if there were issues.
18      ATTORNEY HIGGINS:  Let's upload 87 as an
19 exhibit.
20      ATTORNEY FENTON-ROBERTSON:  You've got to
21 give me a second on that one. I did not have that one
22 prepared, I don't think, so.
23      ATTORNEY HIGGINS:  Just to let you know,
24 it's 87 through 89.
25      ATTORNEY KAZARYAN:  Would now be a good

95

1 time to take a break, or do you want to get through this
2 one and then break?
3      ATTORNEY HIGGINS:  I think we should take
4 a longer break in a minute because I didn't know whether
5 Ms. Riapos was going to say there were performance
6 issues, so I had this stack of documents that were sort
7 of potential performance-issue exhibits. And if she said
8 performance was not an issue, I wasn't going to ask her
9 about them. But now I need to kind of go through them
10 and maybe have Cody ready to upload them.
11      So why don't we just take another five
12 minutes on this document and then take a longer, like, a
13 lunch break? Is that okay to take an earlier lunch
14 break, Emma?
15      And then we can come back and finish up,
16 you know, like from noon to -- I mean, this is not going
17 to take a lot longer. I think we will be done well
18 before 2:00 p.m.
19      ATTORNEY KAZARYAN:  Okay. That sounds
20 good. That's fine with me.
21      Karen, is that okay with you?
22      THE WITNESS:  Yes.
23      ATTORNEY KAZARYAN:  Okay. Sounds good.
24      ATTORNEY HIGGINS:  Do you have things you
25 can do, Karen, to keep busy?

96

1      THE WITNESS:  Always, yes.
2 **Q    (By Attorney Higgins) All right. You've got a**
3 **document there.**
4 A    Okay.
5      (Exhibit Number 13 marked.)
6 **Q    (By Attorney Higgins) All right. So this is a**
7 **series of emails, and the third page is a separate email.**
8 **I want to start with that one.**
9      It looks like it is an interview with Wes
10 Powell that was being set up on December 8, 2020, by
11 Nicole Norris.
12      Do you see that?
13      You have to look at the bottom part to find the
14 December 8 reference. December 8, 2020, 10:18 a.m. is
15 when she's sending out what I think is an invite --
16 A    Yes.
17 **Q    -- for an interview that takes place on Monday,**
18 **September 14.**
19      Do you see that?
20 A    Yes, I do.
21 **Q    Do you know how Wes Powell came to your**
22 **attention or Nicole's attention as a potential contract**
23 **recruiter?**
24 A    I don't remember now.
25 **Q    Okay. Is Wes Powell white?**

97

1 A    I don't know. I'm not sure. He never worked
2 in the office with us.
3 **Q    Okay. So then he -- it looks like if we go to**
4 **page 2 of the exhibit, it looks like the -- there's a**
5 **recommendation, I think, or a proposal from Nicole to**
6 **hire him on a six-month contract at a rate of 45.67 per**
7 **hour.**
8      Do you see that?
9 A    I do, yes.
10 **Q    Which would equate to $95,000 a year, correct?**
11 A    Yes.
12 **Q    All right. And then ultimately that got**
13 **approved, correct?**
14 A    It did, yes.
15 **Q    And does that refresh your recollection as to**
16 **whether he worked for four months or six months or what**
17 **have you?**
18 A    No. I don't think he started until February,
19 but I don't -- I don't remember.
20 **Q    Was there any thought to asking whether**
21 **Nannette Basa wanted to serve as a contract recruiter for**
22 **six months?**
23 A    No.
24 **Q    Why not?**
25 A    We had just let her go. She had said she

KAREN RIAPOS - 06/03/2022

98

1  didn't want to be a recruiter.  She really hadn't thought
2  about it.
3      Q    Do you think she could have done the job?
4      A    No.
5      Q    Why not?
6      A    Just based on a lot of the feedback we had
7  received from managers across the organization, I don't
8  think she would have been successful in those roles.
9      Q    Who were the managers across the organization
10 that provided negative feedback about Nannette?
11     A    Mike Krach, who's an RVP.
12         Jerry Dolly, who was a president of one of our
13 business units.
14         Let's see.  Who else?  Jay Fisher, who was our
15 CIO.
16     Q    Anyone else?
17     A    Not that I can recall off the top of my head,
18 no.
19     Q    Do you have any documents that would help
20 refresh your recollection?
21     A    I don't know.  I'd have to go back and look.
22     Q    Did you take notes of any of these performance
23 issues?
24     A    Not that I remember.  I think we would have
25 talked about them in our one-on-one.

99

1      Q    Okay.  And did you take notes after your
2  one-on-ones with Nannette?
3      A    Not that I remember.
4      Q    Would you have taken notes of any other
5  significant concerns you had with Nannette or
6  conversations you had with Nannette?
7      A    No.  They were mostly emails, so...
8      Q    Do you have any handwritten notes that you keep
9  in your office?
10     A    No.
11     Q    How about typed notes you might keep on your
12 computer?
13     A    No.
14     Q    All right.  We can go through the concerns
15 raised by these people, but I think it makes more sense
16 to wait and do that after the break, after lunch, and
17 then I'll get these other documents uploaded and we can
18 talk about those as well.
19         So shall we just come back at noon?  Top of the
20 hour?
21         ATTORNEY KAZARYAN:  Yes.  And I think you
22 also said you think you will be done then by about 2:00
23 our time?
24         ATTORNEY HIGGINS:  Yes.  I mean, it might
25 not even be that long.  Like I said, Karen is very direct

100

1  and short with her answers, so I don't think it's going
2  to take very long.
3          ATTORNEY KAZARYAN:  Okay.  Sounds good.
4          ATTORNEY HIGGINS:  But I don't want to
5  overpromise and say it should be 1:15 and then it's
6  actually 2:00.  All right?
7          ATTORNEY KAZARYAN:  Okay.  See you at
8  noon.
9          ATTORNEY HIGGINS:  Thanks.
10         (Recess.)
11     Q    (By Attorney Higgins)  Back on the record.
12         Ms. Riapos, are you familiar with a PIP, or a
13 performance improvement plan?
14     A    Yes.
15     Q    Have you ever used that tool in your career in
16 HR?
17     A    Yes, I have.
18     Q    And under what circumstances have you used a
19 PIP?
20     A    I had somebody on my team that was under -- not
21 performing.
22     Q    And about how many times have you used a PIP?
23     A    I don't recall.  A few.
24     Q    Are there other ways to document performance
25 without a formal PIP?

101

1      A    Yes.
2      Q    What are those other ways?
3      A    Email.
4      Q    Other kinds of letters of counseling, or have
5  you ever used things like that?
6      A    No, I haven't.
7      Q    Okay.  But just email --
8      A    Mm-hm.
9      Q    -- to let somebody know that their performance
10 is falling short is one way to document, right?
11     A    Sure.  Yep.
12     Q    And then you could also do a more formal
13 document like a PIP, right?
14     A    Yes.
15     Q    Okay.  So I want to talk about some of the
16 concerns you heard from people.  And I think you
17 identified Jerry Dolly, Jay Fisher, and Mike Krach.
18         Did you think of anybody else while we were on
19 lunch break?
20     A    No.
21     Q    What did you hear from Jerry Dolly?
22     A    He had wanted to hire somebody onto his team
23 and had reached out to Nannette -- I don't know -- maybe
24 in January, and he didn't get any resolution until close
25 to April.

Exhibit 2

**Kazaryan, Emma J.**

| | |
|---|---|
| **From:** | Norris, Nicole <nnorris@brandsafway.com> |
| **Sent:** | Friday, January 8, 2021 7:58 AM |
| **To:** | Riapos, Karen |
| **Subject:** | RE: Contractor |

Wes officially accepted this morning and is going to start his drug/background with Bolton group today.  Once he clears for hire, he will resign and we will determine start date based on whether his current company wants him to work through a two week notice or not.

**Nicole Norris | Senior Manager, Global Talent Acquisition**
BrandSafway | 678.214.3297 | nnorris@brandsafway.com

**From:** Riapos, Karen <kriapos@brandsafway.com>
**Sent:** Thursday, January 7, 2021 3:36 PM
**To:** Norris, Nicole <nnorris@brandsafway.com>
**Subject:** RE: Contractor

Great news!  I'm going to have him report to you.

**From:** Norris, Nicole <nnorris@brandsafway.com>
**Sent:** Thursday, January 7, 2021 3:26 PM
**To:** Riapos, Karen <kriapos@brandsafway.com>
**Subject:** RE: Contractor

Karen, I extended the verbal offer to Wes.  He is very excited and is going to run it all by his wife tonight and call me in the morning with a final.  He said it will probably be a yes but he just wanted to run it by her to avoid getting in trouble.

**Nicole Norris | Senior Manager, Global Talent Acquisition**
BrandSafway | 678.214.3297 | nnorris@brandsafway.com

**From:** Riapos, Karen <kriapos@brandsafway.com>
**Sent:** Wednesday, January 6, 2021 10:24 PM
**To:** Norris, Nicole <nnorris@brandsafway.com>
**Subject:** RE: Contractor

Nicole – We have approval to move forward with an offer to Wes.  I have created the position in VNDLY and have sent it to the Bolton group.  Let me know what you need from me.  Thanks,

Karen

**From:** Norris, Nicole <nnorris@brandsafway.com>
**Sent:** Tuesday, January 5, 2021 5:53 PM
**To:** Riapos, Karen <kriapos@brandsafway.com>
**Subject:** RE: Contractor

Karen,

BRAND000087

**Candidate**: Wes Powell.
-Bachelor Degree, Business. University of Georgia.
-6 years of recruiting experience in agency environments.

**Length**: 6 months with potential to go perm.
**Agency**: Recommend payrolling through Bolton Group to provide benefits.
**Pay Rate**: $45.67
**Bill Rate**: $58.45 (28% markup. Includes benefits.)
**Perm Salary**: $95,000

Let me know if you have any questions or need anything else.

**Nicole Norris | Senior Manager, Global Talent Acquisition**
BrandSafway | 678.214.3297 | nnorris@brandsafway.com

---

**From:** Riapos, Karen <kriapos@brandsafway.com>
**Sent:** Tuesday, January 5, 2021 3:10 PM
**To:** Norris, Nicole <nnorris@brandsafway.com>
**Subject:** Contractor

Nicole – Can you send me the details for the contract recruiter we want to hire? I need to get approval.  Thanks,.

Karen

**Karen Riapos | Director, Talent Acquisition**
Brand Industrial Services | 1325 Cobb International Dr. Suite A-1 | Kennesaw, GA 30152



P: 678.214.4557 | C: 470.249.9027

BRAND000088

**Kazaryan, Emma J.**

| | |
|---|---|
| **From:** | Norris, Nicole <nnorris@brandsafway.com> |
| **Sent:** | Tuesday, December 15, 2020 6:13 AM |
| **To:** | Riapos, Karen |
| **Subject:** | RE: Interview - Wes Powell - Contract Recruiter |

Karen,

How did it go with Wes?

**Nicole Norris | Senior Manager, Global Talent Acquisition**
BrandSafway | 678.214.3297 | nnorris@brandsafway.com

-----Original Appointment-----
**From:** Norris, Nicole
**Sent:** Tuesday, December 8, 2020 10:18 AM
**To:** Norris, Nicole; Riapos, Karen
**Subject:** Interview - Wes Powell - Contract Recruiter
**When:** Monday, December 14, 2020 3:30 PM-4:00 PM (UTC-05:00) Eastern Time (US & Canada).
**Where:** Karen to call Wes (404) 791-8277

BRAND000089

Exhibit 3

| | |
|---|---|
| **From:** | Jones, Kayla <kjones@brandsafway.com> |
| **Sent:** | Wednesday, December 9, 2020 9:36 AM |
| **To:** | Nanette Basa |
| **Subject:** | FW: Documents-Nanette Basa |
| **Attachments:** | Nanette Basa-Cover Letter 12.8.20.docx; Exit Final Pay Benefits Exit Information 09 10 20.docx; Nanette Basa Separation Agreement 12.08.20.pdf |

Hi Nannette!!

I realize that I did spell your name incorrectly…I left out an "n"!!! ☺

See communication below and documents attached. Let me know if you have any questions at all.

**Kayla Jones | Human Resources**
Brand Industrial Services | 1325 Cobb International Dr. | Kennesaw, GA 30152
P: 678 285 1419 | C: 470-707-4940



---

**From:** Jones, Kayla <kjones@brandsafway.com>
**Sent:** Tuesday, December 8, 2020 4:10 PM
**To:** nanettebasa@yahoo.com
**Cc:** Jones, Kayla <kjones@brandsafway.com>
**Subject:** Documents-Nanette Basa

Hi Nanette

Attached are the documents we discussed.

To recap:

1. Please reach out to me at kjones@brandsafway.com to let me know if you have any questions upon review of the documents.
   - Important Reminders:
     - You have 45 days to consider the severance offer
     - If you decide to accept the transition package, please return signed agreement to the contact/address indicated in the agreement
     - There is a 7 day revocation period. If we do not receive formal revocation notice from you 7 days after execution of the agreement, we will proceed to initiate severance payments.
2. PC Depot will be sending to your home address below packaging material to return company assets:
   **16723 24th Dr. SE**
   **Bothell, WA 98012**

Again, please reach out with any questions.

Thanks.

**CONFIDENTIAL**

BRAND000062

**Kayla Jones | Human Resources**

Brand Industrial Services | 1325 Cobb International Dr. | Kennesaw, GA 30152
P: 678 285 1419 | C: 470-707-4940

**BRAND⟩SAFWAY.**

BRAND000063

Exhibit 4

HONORABLE MICHELLE L. PETERSON

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

NANNETTE BASA, an individual,

        Plaintiff,

    v.

BRAND SHARED SERVICES, LLC, a
Delaware corporation,

        Defendant.

Case No. 2:21-cv-00754 MLP

DEFENDANT'S OBJECTIONS AND
RESPONSES TO PLAINTIFF'S FIRST
INTERROGATORIES AND REQUESTS
FOR PRODUCTION

Defendant Brand Shared Services, LLC ("Defendant") responds to Plaintiff Nannette

Basa's ("Plaintiff") First Interrogatories and Requests for Production as follows:

## PRELIMINARY STATEMENT

The information contained in each response is based only on the information currently

available to Defendant. These responses are made solely for purposes of this action. Each

response is subject to all objections as to competence, relevance, materiality, propriety, and

admissibility, and all other objections and grounds which would require the exclusion of any

statements contained herein, if such statements were made by a witness present and testifying at

court. All objections and grounds are expressly reserved and may be interposed at the time of

trial.

DEFENDANT'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S FIRST
INTERROGATORIES AND REQUESTS FOR PRODUCTION  - 1
(CAUSE NO. 2:21-CV-00754 MLP)

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041
(206) 946-4910

78770822v.1

1  for each of the  HR work groups.  Once leadership understood where they had opportunity to

2  streamline work within each work group, they took a closer look at the roles and responsibilities

3  for each incumbent in those roles and made a determination of which roles to eliminate.

4  **INTERROGATORY NO. 5:**       Please identify all individuals who were involved in

5  the decision to the hire or create positions for Ryan Wilson, Nicole Norris and "Wes P.", and

6  describe each person's participation in detail.

7  **ANSWER:**  Defendant objects to this interrogatory as vague and ambiguous and to the

8  extent it assumes that positions were "created" for Ryan Wilson, Nicole, Norris, and "Wes P."

9  (believed to be Wes Powell who is a contractor and not Defendant's employee).

10  Subject to and without waiving the foregoing objections, and assuming the interrogatory

11  seeks the names of the person who hired Ryan Wilson, Nicole Norris, and "Wes P." (believed to

12  be Wes Powell), Defendant answers as follows:

13  The decisions to hire Mr. Wilson and Ms. Norris were made by Director of Talent

14  Acquisition Karen Riapos.  Defendant did not hire "Wes P." (believed to be Wes Powell) as an

15  employee; he was a contractor.

16  **INTERROGATORY NO. 6:**       Please identify all individuals who were considered

17  for the positions that were ultimately filled by Ryan Wilson, Nicole Norris and "Wes P.".  For

18  each individual identified, include their job title, name, age, and race/nationality.

19  **ANSWER:**  Defendant objects to this interrogatory as vague and ambiguous with regard

20  to the meaning of the phrase "were considered for the positions."  Defendant also objects to this

21  interrogatory as overbroad, unduly burdensome, and not reasonably calculated to lead to the

22  discovery of admissible evidence.  In the ordinary course of business, Defendant does not store

23  or maintain information related to applicants for a particular position.  It would be

24  extraordinarily difficult for Defendant to try to scour through its records to try to reconstruct the

25  hiring process for the roles that Mr. Wilson and Ms. Norris were ultimately hired into.

26

DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST INTERROGATORIES
AND REQUESTS FOR PRODUCTION  - 8
(CAUSE NO. 2:21-CV-00754 MLP)

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041
(206) 946-4910

78770822v.1

In addition, Defendant objects to this interrogatory because it invades the privacy interests of individuals who are not parties to this lawsuit and who may not be even be employed by Defendant.  Those individuals have legitimate privacy interests in their personal demographic (age, race/nationality) information; the fact that they applied for a job with Defendant; and the fact that they did not receive the job.

Subject to and without waiving the foregoing objections, Defendant answers as follows: Plaintiff Nannette Basa was approached with regard to the positions ultimately filled by Mr. Wilson and Ms. Norris, but she indicated she was not interested in recruiting, which is what these positions entail.

**SUPPLEMENTAL ANSWER:**  Subject to and without waiving the foregoing objections, Defendant supplements as follows -- Plaintiff was the only other person considered for these positions.

## **REQUESTS FOR PRODUCTION**

*All responsive documents may be produced either on paper or searchable .PDF.*  Plaintiff reserves the right to request documents in native electronic format as may be requested in a later date.  All spreadsheets and WORD documents should be produced electronically in their native format.

**REQUEST FOR PRODUCTION NO. 1:**  Please produce copies of all documents relating to Plaintiff contained in any file maintained by Defendant, however named and wherever maintained, including but not limited to the Plaintiff's employee files, personnel files, medical files, etc.

**RESPONSE:**  Defendant objects to this request for production to the extent it seeks attorney client privileged material and attorney work product.  Defendant further objects to this request as vague and ambiguous, overbroad, and unduly burdensome.  Subject to and without waiving the foregoing objections, Defendant will produce Plaintiff's personnel records, medical records, and pay records.

DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST INTERROGATORIES
AND REQUESTS FOR PRODUCTION  - 9
(CAUSE NO. 2:21-CV-00754 MLP)

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041
(206) 946-4910

78770822v.1

1   DATED: January 14, 2022.                    SEYFARTH SHAW LLP

2

3                                               By: */s/Emma Kazaryan*
                                                    Helen M. McFarland, WSBA No. 51012
4                                                   Emma Kazaryan, WSBA No. 49885
                                                    999 3rd Avenue, Ste. 4700
5                                                   Seattle, WA 98104
                                                    P: (206) 946-9423
6                                                   F: (206) 299-9974
                                                    hmcfarland@seyfarth.com
7                                                   ekazaryan@seyfarth.com

8                                                   *Attorneys for Defendant Brand Shared
                                                    Services, LLC*
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26   DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST INTERROGATORIES
     AND REQUESTS FOR PRODUCTION  - 12
     (CAUSE NO. 2:21-CV-00754 MLP)

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041
(206) 946-4910

78770822v.1

Exhibit 5

| From: | Riapos, Karen </O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=7FC01423A1294E04AAA0932E787D8001-RIAPOS, KAR> |
|---|---|
| To: | Newman, Meg |
| Sent: | 7/21/2020 11:29:06 AM |
| Subject: | Meg/Karen 1:1 |
| Attachments: | Revised Pricing for BrandSafway 070820_F (003).pdf |

# Meg/Karen 1:1

Tuesday, July 21, 2020
3:00 PM

**Applicant Tracking System**
- **Workday (Finishing up Business Case)**
  - Pricing
    - ▪ ███████████
  - Final Demo:
    - ▪ Craft Labor - complete
    - ▪ Corporate & SG&A
- **iCIMS**
  - Pricing
    - ▪ ████████ - one-time implementation service fee
    - ▪ ██████ month subscription fee ($███ annually)

**MSP/VNDLY**
- VNDLY
  - ▪ Working site by site to add current vendors to VNDLY
  - ▪ Reporting issues between temps in VNDLY and temps not in VNDLY
    - ▪ Working with Daniel and his team to remedy issues
- MSP (Managed Service Provider)
  - ▪ NextSource
    - ▪ Negotiating pricing and terms
      - § ██████ fee charged back to the agencies
      - § BrandSafway to pick up the difference (~$█████ monthly or $█████ annually)
    - ▪ Nannette's salary elimination would offset this cost

  - ▪ MSP will be the POC for all contingent labor needs
    - ▪ Over the next 2-3 years we will work to bring it back in-house to manage

**Team**
- TA Hiring Needs:
  - TA Operations Manager - Kristen and Myria are not interested at this time
    - ▪ Posted and actively recruiting for a TA Ops Mgr
  - Contract Recruiter (Kennesaw)
    - ▪ Low quality candidates so far; have a few people Nicole has referred that may do a temp-to-perm
- Ryan Wilson
  - Updates: ██████████████████████
  - ███████████████████████████████
- Nannette Basa

CONFIDENTIAL PURSUANT TO STIPULATED PROTECTIVE ORDER

- ○ Once we have the MSP confirmed and working with VNDLY we will let Nannette go
- Nicole Norris
  - ○ She is fine doing recruiting but does not want to do this FT
  - ○ Her strength/interest is in the initiatives and managing of people
    - · Have her manage new recruiters as they come onboard
    - · Continue to be the E&I lead and C&I until Ryan returns
    - · Additional:
      - § **BLP**
      - § **Interns/Co-op Programs**
      - § **Diversity Recruiting Strategy**
      - § **Employment Branding** (LinkedIn, GlassDoor etc.)
      - § **Workforce Planning**
        - · Begin meeting with BU President/HRVP/leaders to discuss/plan future employment needs
      - § **General HM Training** (interviewing/hiring diverse talent)

**Pre-boarding**
- · Drug and background vendor RFP - working with Daniel McDaniel
  - ○ Accurate/CBES
  - ○ First Advantage
  - ○ Hireright
  - ○ Sterling
  - ○ Checkr

Created with Microsoft OneNote 2016.

CONFIDENTIAL PURSUANT TO STIPULATED PROTECTIVE ORDER

Exhibit 6



# HR Org Charts
# as of August 11, 2020

At Work For You™

BRAND〉SAFWAY

CONFIDENTIAL PURSUANT TO STIPULATED PROTECTIVE ORDER

BRAND004987

# HRLT





| COEs | Functions | Generalists |
|---|---|---|
| **Total Rewards**<br>Chad Herring | **Global Communications & Branding**<br>Karla Cuculi | **Energy & Industrial**<br>Brad Smith |
| **Talent Development**<br>Bjorn Erland* | **Real Estate & Construction**<br>Nick Culling | **Construction & Industrial**<br>Bjorn Erland* |
| **HR Operations**<br>Christine Burrell | | **Forming & Shoring**<br>Rod Broschinsky |
| **Talent Acquisition**<br>Karen Riapos | | **Integrity Services Group**<br>Conye Larson |
| **HR Compliance**<br>Michelle Roman* | | **Corporate Functions**<br>Michelle Roman* |

**Chief People Officer**
Meg Newman

**Executive Assistant**
Dawn Emanuel

* Hybrid Role

At Work For You™

**BRAND SAFWAY**

CONFIDENTIAL PURSUANT TO STIPULATED PROTECTIVE ORDER



# Talent Acquisition



At Work For You™

BRAND〉SAFWAY

CONFIDENTIAL PURSUANT TO STIPULATED PROTECTIVE ORDER

BRAND004994

Exhibit 7

CONFIDENTIAL

▮▮▮▮▮▮▮

| | |
|---|---|
| **From:** | Newman, Meg |
| **Sent:** | Wednesday, September 23, 2020 8:18 AM |
| **To:** | Riapos, Karen |
| **Subject:** | Re: Thank you for session |

Thanks Karen!

Get Outlook for iOS

**From:** Riapos, Karen <kriapos@brandsafway.com>
**Sent:** Wednesday, September 23, 2020 10:48 AM
**To:** Newman, Meg
**Subject:** Re: Thank you for session

Hey Meg,

Sorry for the delay in getting back to you, spotty service in the mountains.  Nanette has been involved in the entire RFP process with the MSP and we have spoken in-depth about what they will be doing.  I have told her, that she will be the point person for the MSP as well as turning her focus to the ATS implementation and all other TA Ops (careers page, job boards, direct employers, LinkedIn etc.)

At this point, we are finalizing contracts for the MSP which legal is reviewing so no need for her to be involved in this part.  I'll be back in civilization on Thursday afternoon so can give you a quick call to catch up.

Thanks!

Karen

Get Outlook for iOS

**From:** Newman, Meg <mnewman@brandsafway.com>
**Sent:** Tuesday, September 22, 2020 9:32:47 PM
**To:** Riapos, Karen <kriapos@brandsafway.com>
**Subject:** FW: Thank you for session

Hey there!

I know you are out this week and I hope you are feeling better, but wanted to share this with you.  Nannette followed up with me after a Listening session.  I am set to talk to her on Friday, but if you have any insights to share, let me know.  Otherwise, I will let you know how it goes.

Thanks,

Meg

Meg Newman
Brand Industrial Services

BRAND001637

CONFIDENTIAL

1325 Cobb International Drive Ste. A-1
Kennesaw, Georgia 30152

**BRAND〉SAFWAY.**

P 678-214-4553
mnewman@brandsafway.com

---

**From:** Newman, Meg
**Sent:** Tuesday, September 22, 2020 8:47 PM
**To:** Basa, Nannette <nbasa@brandsafway.com>
**Subject:** RE: Thank you for session

Hi Nannette,

Thanks so much for reaching out.  I will find time for us to talk through your concerns.

Thanks as well for sharing the article, it's very impressive how you and your family adapted to homeschooling.  I am so impressed with your foresight and how you built cubicles in your home!!  I definitely want to hear more about that!!

Talk to you soon!

Meg

Meg Newman
Brand Industrial Services
1325 Cobb International Drive Ste. A-1
Kennesaw, Georgia 30152

**BRAND〉SAFWAY.**

P 678-214-4553
mnewman@brandsafway.com

---

**From:** Basa, Nannette <nbasa@brandsafway.com>
**Sent:** Monday, September 21, 2020 2:26 PM
**To:** Newman, Meg <mnewman@brandsafway.com>
**Subject:** Thank you for session

Hi Meg,
I wanted a chance to speak to you further about VNDLY and the contingent labor program.   Please let me know when you have time.  The program is continued to expand and evolve and although I understand there is plans to bring in an MSP-I am not included in the scope of the MSP nor what plans are for me in the future.

On a separate note, this is an article that was published last Friday in our community newspaper.  It's on our family and remote learning.
https://www.millcreekbeacon.com/story/2020/09/18/news/remote-learning-is-a-fit-for-local-family/11689.html

Nannette

Nannette Basa|Talent Acquisitions Manager
**Brand Industrial Services**
**425.951.0818**
nbasa@brandsafway.com|www.brandsafway.com

BRAND001638

CONFIDENTIAL



Visit brandsafway.dejobs.org/ for career opportunities

3

BRAND001639

Exhibit 8

HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| NANNETTE BASA, an individual, | Case No. 2:21-cv-00754 JLR |
| Plaintiff, | DEFENDANT'S INITIAL DISCLOSURES |
| v. | |
| BRAND SHARED SERVICES, LLC, a Delaware corporation, | |
| Defendant. | |

Pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure, Defendant, BRAND SHARED SERVICES, LLC ("***Defendant***"), provides its Initial Disclosures.  Defendant has not yet completed discovery concerning the factual basis of its claims and defenses.  Defendant's disclosures are based on its investigation and discovery of the facts and circumstances relating to the allegations in this action as of the date herein, and, therefore, Defendant reserves the right to present supplemental responses, as necessary, to the disclosures provided herein.

## I.    GENERAL STATEMENT

1.    By providing any information pursuant to Fed. R. Civ. P. 26(a)(1), Defendant does not concede the materiality or relevance of the subject to which it refers.  Defendant's responses are made expressly subject to, and without waiving or intending to waive, any questions or objections as to the competency, relevancy, materiality, privilege, or admissibility as

DEFENDANT'S INITIAL DISCLOSURES - 1
(CAUSE NO. 2:21-CV-00754 JLR)

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041
(206) 946-4910

74737930v.2

evidence or for any other purpose, of any of the information produced or identified herein, in any proceeding including the trial of this action or any subsequent proceeding.

2.    Identification of any document that is privileged or is otherwise immune from discovery shall not constitute a waiver of any privilege or of any other ground for objecting to discovery with respect to that document or any other document, or its subject matter, or the information contained therein, or of Defendant's right to object to the use of any such document or the information contained therein during any proceeding in this litigation or otherwise.

3.    Defendant is continuing to search for documents and information relevant to this litigation and, therefore, reserve the right to supplement their responses.  Defendant also reserves the right to object to the future disclosure of any such documents and/or information.

## II.    INITIAL DISCLOSURES

**Provision 26(a)(1)(A):**

The name and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses, unless solely for impeachment, identifying the subjects of the information.

**Response to Provision 26(a)(1)(A):**

The following individuals may presently have (or have had in the past) discoverable information that Defendant may use to support their defenses, with the exception of Plaintiff, all individuals may be contacted through Defendant's counsel:

| Name | Title | Subject of Information |
|---|---|---|
| Nannette Basa | Plaintiff | Plaintiff has information about her employment with Defendant, the allegations in her Complaint, her alleged damages, and her efforts to mitigate her damages (if any). |

DEFENDANT'S INITIAL DISCLOSURES - 2
(CAUSE NO. 2:21-CV-00754 JLR)

74737930v.2

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041
(206) 946-4910

| Name | Title | Subject of Information |
|------|-------|------------------------|
| Rodney Broschinsky | Vice President Human Resources | Mr. Broschinsky may have information regarding Plaintiff's employment with Defendant and Plaintiff's allegations in this lawsuit. Mr. Broschinsky may have information about Plaintiff's job duties and performance, and the facts and circumstances regarding her layoff. Mr. Broschinsky is an employee of Defendant and may be contacted only through counsel. |
| Karen Riapos | Director of Talent Acquisition | Ms. Riapos may have information regarding Plaintiff's employment with Defendant and Plaintiff's allegations in this lawsuit. Ms. Riapos may also have information regarding Plaintiff's job duties and performance, and the facts and circumstances regarding Plaintiff's layoff. Ms. Riapos may further have information about Defendant's staffing for recruiters during and following Plaintiff's layoff. Ms. Riapos is an employee of Defendant and may be contacted only through counsel. |
| Michelle Roman | Vice President of Human Resources and HR Compliance | Ms. Roman may have general information regarding Plaintiff's employment with Defendant. Ms. Roman may also have information regarding Defendant's policies and procedures, and human resources practices. Ms. Roman is an employee of Defendant and may be contacted only through counsel. |
| Kayla Jones | Senior Human Resources Manager | Ms. Jones may have general information regarding Plaintiff's employment with Defendant. Ms. Jones may also have information regarding Defendant's policies and procedures, and human resources practices. Ms. Jones is an employee of Defendant and may be contacted only through counsel. |

DEFENDANT'S INITIAL DISCLOSURES - 3
(CAUSE NO. 2:21-CV-00754 JLR)

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041
(206) 946-4910

74737930v.2

| Name | Title | Subject of Information |
|------|-------|------------------------|
| Ryan Wilson | Manager of Talent Acquisition | Mr. Wilson may have general information regarding Plaintiff's employment with Defendant.  Mr. Wilson may also have information regarding Defendant's policies and procedures.  Mr. Wilson is an employee of Defendant and may be contacted only through counsel. |
| Regina Sibert | HR Coordinator | Ms. Sibert may have general information regarding Plaintiff's employment with Defendant.  Ms. Sibert may also have information regarding Defendant's policies and procedures.  Ms. Sibert is an employee of Defendant and may be contacted only through counsel. |
| Meg Newman | Executive Vice President and Chief People Officer | Ms. Newman may have general information regarding Plaintiff's employment with Defendant.  Ms. Newman may have information regarding Defendant's policies and procedures, and human resources practices.  Ms. Newman is an employee of Defendant and may be contacted only through counsel. |

In addition to the foregoing persons, Defendant identifies anyone that Plaintiff may identify in her disclosures or discovery responses as persons who may have discoverable information or, otherwise, may have knowledge regarding Plaintiff's allegations.  Also, any individuals identified in materials exchanged during discovery may have discoverable information as to the subjects referenced in those materials.

**Provision 26(a)(1)(B)**:

A copy of, or a description by category and location of, all documents, electronically stored information, and other tangible things that are in the possession, custody, or control of the party and that the disclosing party may use to support its claims or defenses, unless solely for impeachment.

**Response to Provision 26(a)(1)(B):**

Defendant's disclosures are made based upon information currently available and only as relating to the claims of Plaintiff or Defendant's general policies and practices regarding the

DEFENDANT'S INITIAL DISCLOSURES - 4
(CAUSE NO. 2:21-CV-00754 JLR)

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041
(206) 946-4910

74737930v.2

claims in the operative Complaint.  By disclosing this information, Defendant does not waive any attorney-client privilege, any work product privilege or any other privilege and reserves its right to supplement, amend, and/or withdraw information provided herein.  Defendant's investigation of the facts underlying Plaintiff's claims and Defendant's defenses continues and Defendant will supplement these initial disclosures as appropriate.

The following documents in Defendant's possession may be used to support Defendant's claims or defenses:

1.   Plaintiff's personnel records;

2.   Plaintiff's pay records;

3.   Relevant portions of Defendant's policies and procedures governing terms and conditions of Plaintiff's employment;

4.   Documents anticipated to be produced and/or identified in pleadings, written discovery responses, responsive documents, documents subpoenaed and obtained from non-parties, and the deposition of Plaintiff and other witnesses in this matter;

5.   Documents regarding Plaintiff's performance, including warnings and records of discussion; and

6.   Documents provided to Plaintiff upon her layoff in December 2020.

The above-referenced documents are in the custody, control and possession Defendant.

**Provision 26(a)(1)(C):**

A computation of any category of damages claimed by the disclosing party, making available for inspection and copying under Rule 34 the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered.

**Response to Provision 26(a)(1)(C):**

Defendant denies that Plaintiff is entitled to any damages under any claims contained in the Complaint.  At this time, Defendant does not allege any of its  own damages, but reserves the

DEFENDANT'S INITIAL DISCLOSURES - 5
(CAUSE NO. 2:21-CV-00754 JLR)

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041
(206) 946-4910

74737930v.2

1   right to supplement or modify this response to the extent that discovery discloses damages to

2   Defendant, and to assert any applicable claim for costs and/or fees.

3   **Provision 26(a)(1)(D)**:

4   For inspection and copying under Rule 34, any insurance agreement under which any person
    carrying on an insurance business may be liable to satisfy part or all of a judgment which may be
5   entered in the action or to indemnify or reimburse for payments made to satisfy the judgment.

6   **Response to Provision 26(a)(1)(D):**

7            Defendant does not have any insurance agreement at issue in this lawsuit.

8   DATED: September 10, 2021.                    SEYFARTH SHAW LLP

9

10

11                                        By: *s/ Helen M. McFarland*
                                             Helen M. McFarland, WSBA No. 51012
12                                           Emma Kazaryan, WSBA No. 49885
                                             999 3rd Avenue, Ste. 4700
13                                           Seattle, WA 98104
                                             P: (206) 946-9423
14                                           F: (206) 299-9974
                                             hmcfarland@seyfarth.com
15                                           ekazaryan@seyfarth.com
                                             *Attorneys for Defendant Brand Shared*
16                                           *Services, LLC*

17

18

19

20

21

22

23

24

25

26

DEFENDANT'S INITIAL DISCLOSURES - 6
(CAUSE NO. 2:21-CV-00754 JLR)

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041
(206) 946-4910

74737930v.2