The Honorable Michelle L. Peterson
Noted for Friday, October 7, 2022

# THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| NANNETTE BASA, an individual,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>BRAND SHARED SERVICES, LLC, a Delaware corporation,<br><br>　　　　　Defendant. | No. 2:21-cv-00754-MLP<br><br>**MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE**<br><br>**NOTED FOR CONSIDERATION:<br>Friday, October 7, 2022** |

## I.　　INTRODUCTION

Plaintiff Nannette Basa asks for sanctions against Defendant for its spoliation of evidence. Specifically, Defendant did not preserve text messages or Microsoft Teams messages. Plaintiff has discovered that Defendant's managers and employees regularly sent text messages via Company-issued iPhones, and sent messages via Microsoft Teams. Additionally, Defendant failed to preserve or produce a supervisory file kept by Plaintiff's manager which contain notes of conversations with Plaintiff and feedback about her performance.

In depositions, Defendant's managers consistently testified that they used text messages and Microsoft Teams to message each other about work issues. Despite this, Defendant has not produced even a single text message and has produced only one Microsoft Teams message about Plaintiff. We know that such messages existed because Plaintiff, herself, produced nearly 400

MOTION FOR SANCTIONS - 1
(No. 2:21-cv-00754)

Law Offices of Alex J. Higgins
Denny Building, Suite 500
2200 Sixth Avenue
Seattle, WA 98121
(206) 340-4856

pages of text messages from her phone in response to Defendant's discovery requests. Many of these text messages were sent/received from Company-issued cell phones.

Defendant's managers admitted that no searches were done on their Company-issued phones for relevant texts about Plaintiff or any other issue relevant to this case. These depositions occurred in the Summer of 2022. Plaintiff's first evidence preservation notice was sent to Defendant in January 2021, with an additional notice sent in April 2021.

In light of this blatant spoliation, Plaintiff asks for: (a) an adverse inference jury instruction that this missing evidence would have supported Plaintiff's factual assertions; and (b) an order precluding Defendant from using Plaintiff's text messages at trial. (Defendant has sought to use Plaintiff's text messages against her while failing to produce a single text message.)

## II.   BRAND FAILED TO PRESERVE RELEVANT EVIDENCE

**A.   Brand received specific notice of this litigation in early 2021.**

Defendant Brand Shared Services LLC ("Brand") was placed on notice of this litigation on January 6, 2021, when Plaintiff's attorney sent a letter on her behalf. (Higgins Ex. 1.) This letter contained an express instruction to preserve all materials that related to Plaintiff or her termination. (*Id*.) Another letter was sent by Plaintiff's lawyer on April 15, 20221, which specifically identified the legal claims and the relevant witnesses. (Higgins Ex. 2.)

This lawsuit was filed in July 2021 and Brand's counsel entered a Notice of Appearance on August 3, 2021.[1] (Dkt. 7.) The parties exchanged Initial Disclosures on September 10, 2021. (Dkt. 12.)

**B.   Plaintiff requests relevant communications from Brand, including text messages.**

On October 28, 2021, Plaintiff served discovery requests. (Higgins Decl. ¶ 3.) One request sought all communications from September 1, 2020, to present, containing the search

---

[1] The Complaint and Amended Complaint both mention Karen Riapos, Rod Broschinsky, Ryan Wilson, and Nicole Norris by name. (Dkts. 1 & 6.)

MOTION FOR SANCTIONS - 2
(No. 2:21-cv-00754)

Law Offices of Alex J. Higgins
Denny Building, Suite 500
2200 Sixth Avenue
Seattle, WA 98121
(206) 340-4856

terms "Nannette" or "Basa", that were sent to or from Karen Riapos and any other individual identified as a decision maker in Plaintiff's layoff. (Higgins Ex. 3 (RFP No. 3).) The request specifically called for all electronic correspondence, "including but not limited to email, *text messages*, or any other method of written communication". (*Id.*) (emphasis added).

Brand responded to this request on December 27, 2021, and made no specific objection to producing text messages. (Higgins Decl. ¶ 3.) Yet Brand did not produce any text messages. (*Id.*) (In fact, very few emails were produced as well, which required follow up.) (*Id.*)

On April 5, 2022, Plaintiff sent a broader request for written communications. (Higgins Decl. ¶ 4.) This new request sought all communications—including text messages—to or from Karen Riapos, Meg Newman, Rod Broschinsky, Ryan Wilson, and Nicole Norris that "relate to Plaintiff and/or Plaintiff's job duties".[2] (Higgins Ex. 4 (RFP No. 7).) Brand responded to this request on May 6, 2022, and again made no specific objection regarding text messages, nor did Brand produce any text messages. (*Id.*)

The individuals named in the request are important for the following reasons:

- Karen Riapos was Plaintiff's manager at the time she was laid off. Riapos and Michelle Roman, a Vice President of Human Resources, were identified as the two individuals who decided to select Plaintiff for layoff. (Higgins Ex. 3 (Interrogatory No. 1).).

- Riapos hired Ryan Wilson and Nicole Norris to work as recruiters less than a year before the layoff; both were retained instead of Plaintiff.

- Meg Newman was the Chief People Officer for Defendant, whose involvement has been discussed in the pending motions regarding a protective order.

- Rod Broschinsky was a Vice-President of Human Resources who was Plaintiff's manager for several years before Riapos assumed that role. (Higgins Decl. ¶ 5.)

---

[2] The parties had a phone conference on April 18, 2022, to discuss this specific discovery request. Brand's counsel raised concerns about the period of time, the number of custodians, and the search terms. (Higgins Decl. ¶ 4.) Notably, Brand did not raise any issue with the scope of the request to include text messages of the identified custodians. (*Id.*)

MOTION FOR SANCTIONS - 3
(No. 2:21-cv-00754)

Law Offices of Alex J. Higgins
Denny Building, Suite 500
2200 Sixth Avenue
Seattle, WA 98121
(206) 340-4856

**C.      Brand's Managers and Employees testified about text and Teams messages.**

On June 3, 2022, Plaintiff took the deposition of Karen Riapos.  During her deposition, she testified that she was provided an iPhone by Defendant and that she had used that same phone for work since December 2019.  (Riapos Dep. 8:22-9:13.)[3]  Riapos did not search her phone for relevant text messages, nor does she know if anyone else or when that occurred.  (Riapos Dep. 9:17-10:22.)  Riapos also testified that she and Roman—the other individual identified by Brand as a decisionmaker relating to Plaintiff's termination—used Microsoft Teams four to five times per week to communicate about work issues.  (Riapos Dep. 105:8-21.)

Following the revelation that Riapos's iPhone belonged to Brand but had never been searched, Plaintiff asked for a FRCP 37 conference.  (Higgins Decl. ¶ 6.)  On June 10, defense counsel said that they would follow up to ensure no responsive messages existed.  (*Id.*)  For almost two weeks, Plaintiff did not hear back, so counsel followed up on June 21: "[W]e understood that you were rechecking the text messages and Teams messages to determine whether messages were preserved and whether there was anything responsive.  When will that be completed?"  (Higgins Ex. 7.)  Brand replied that no responsive messages existed.  (*Id.*)

Next, Plaintiff took depositions of Michelle Roman (former VP of Human Resources), Ryan Wilson, and Rod Broschinsky (former VP of Human Resources and Ms. Basa's former manager) as well as two other witnesses.[4]  All five witnesses testified like Karen Riapos—that they had been provided cell phones by Brand and that they were <u>never</u> asked to provide the phone to counsel or anyone else for a search.[5]  (Higgins Decl. ¶ 7.)  Broschinsky acknowledged that he regularly texted with Plaintiff and that he may have sent messages to others relating to Plaintiff.  (*Id.*)  He further testified that he returned the phone to Brand in October 2021, as his

---

[3] Excerpts of Riapos's deposition are included as Exhibit 5 to the Higgins Declaration.  Likewise, excerpts of Michelle Roman's deposition are included as Exhibit 6.

[4] Roald Richards and Daniel McDaniel were also deposed, and neither of these witnesses had been asked to search for text messages on their company-issued cell phones either.  (Higgins Decl. ¶ 7.)

[5] Curiously, Michelle Roman testified that she herself had searched for text messages relating to Plaintiff by using the search terms "Nannette" and "Basa" and that she found responsive text messages.  (Roman Dep. 10:13-18, 11:9-15; 12:10-21.)  She testified that she provided the text messages to Defense counsel.  (*Id.*)  However, Brand has provided no text messages to Plaintiff.  (Higgins Decl. ¶ 7.)

MOTION FOR SANCTIONS - 4
(No. 2:21-cv-00754)

Law Offices of Alex J. Higgins
Denny Building, Suite 500
2200 Sixth Avenue
Seattle, WA 98121
(206) 340-4856

employment with the company ended around that time, and he did not know what happened to his text messages after that. (*Id*.). Additionally, Broschinsky testified that he kept a supervisory file with personnel records and notes about Plaintiff. He turned that over to Brand's HR representatives when he left. That file was not produced. (*Id*.)

**D.     Plaintiff seeks an explanation through a 30(b)(6) deposition.**

In light of this apparent spoliation, Plaintiff sent a notice of FRCP 30(b)(6) deposition to Brand seeking information about Brand's document retention policies and practices, as well as what steps were taken to preserve ESI in the present case. (Higgins Decl. ¶ 9.) The notice was sent on August 17, 2022, with a deposition noted for September 20. Plaintiff's counsel emailed several reminders about this deposition and had discussions with defense counsel about the order of topics for that deposition. (*Id*.) Then, three business days before the deposition, Brand informed counsel that it would not produce <u>any</u> representative on September 20, and did not offer any alternative dates. (*Id*.) No explanation was offered. (*Id*.)  On September 20, Defendant served formal objections to the 30(b)(6) deposition for the very first time. (*Id*.) Also for the first time, Defendant asked for a conference to discuss the topics. (Plaintiff accepts partial responsibility for not realizing that a conference was required sooner, but assumed that a conference was not necessary as Defendant did not raise any objection to the scope of the deposition for more than 4 weeks.)

**E.     Plaintiff produced 384 pages of text messages.**

Meanwhile, Plaintiff has been diligent in her discovery obligations, producing nearly 400 pages of text messages with 25 different contacts. (Higgins Decl. ¶ 10.) Brand attempted to weaponize Plaintiff's texts against her in its Motion for a Protective Order and in Plaintiff's deposition where questioning largely focused on her text messages.[6]

Plaintiff's text messages show that relevant text messages exist. For example, she produced the text exchanges she had with her former manager and VP of HR, Rod Broschinsky.

---

[6] *See, e.g.*, Brand's Motion for Protective Order (Dkt. #21).

MOTION FOR SANCTIONS - 5
(No. 2:21-cv-00754)

(Higgins Ex. 8.) Had Brand met its obligation to preserve and produce relevant ESI, at a minimum, Broschinsky's texts with Plaintiff would have been located and produced. It is impossible for Plaintiff to know how many other text messages, sent by or between Brand's managers and employees, have been lost and/or have been simply not gathered.

**F.    Plaintiff has attempted to once again confer with Brand regarding these issues prior to filing the present motion.**

On September 13, 2022, Plaintiff emailed Brand's counsel regarding the apparent failure to preserve responsive text messages. (Higgins Ex. 9.) Plaintiff explained that a motion regarding the spoliation was likely necessary, but suggested a "final conference" to see if there was a potential resolution. (*Id*.) Brand's counsel did not respond to that request for a conference. (Higgins Decl. ¶ 11.)

### III.    SANCTIONS ARE APPROPRIATE

Defendant's failure to preserve or collect text messages and Microsoft Teams messages is clear and proven by the testimony of multiple witnesses. Spoliation includes "the failure to preserve property for another's use as evidence, in pending or future litigation." *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 649 (9th Cir. 2009) (citation omitted). Sanctions are determined by "the sound discretion of the trial judge, and is assessed on a case-by-case basis." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003) (quoting *Fujitsu Ltd. v. Federal Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001)). District courts have the "inherent authority" to "sanction a party who has despoiled evidence". *Leon v. IDX Systems Corp.*, 464 F.3d 951, 958 (9th Cir. 2006). *See also Bolding v. Banner Bank*, 2:17-cv-601-RSL, 2020 WL 2614733 (W.D. Wash. May 22, 2020) (a motion for sanctions resulting from a failure of a party to preserve and produce ESI brought under FRCP 37(e)(2), but analyzed by Judge Lasnik under the court's inherent authority).

**A.    Brand had duty to preserve relevant evidence in early 2021.**

Brand's failure to preserve evidence is particularly egregious in light of Plaintiff's specific notices to Brand about its duty to preserve evidence. Those notices remove any doubt

MOTION FOR SANCTIONS - 6
(No. 2:21-cv-00754)

Law Offices of Alex J. Higgins
Denny Building, Suite 500
2200 Sixth Avenue
Seattle, WA 98121
(206) 340-4856

about Brand's duty: "[T]he duty to preserve evidence is triggered when a party knows or reasonably should know that that the evidence may be relevant to pending or future litigation." *E.E.O.C. v. Fry's Electronics, Inc. I*, 874 F.Supp.2d 1042, 2012 WL 1642305, at *1 (W.D. Wash. May 10, 2012); *see also Knickerbocker v. Corinthian Colleges*, 298 F.R.D. 670, 677–78 (W.D. Wash. 2014); *Leon v. IDX Sys. Corp.*, 2:03-cv-1158, 2004 WL 5571412, at *3 (W.D. Wash. Sept. 30, 2004) *aff'd*, 464 F.3d 951 (9th Cir. 2006).

On January 6, 2021, Plaintiff requested a copy of her personnel file, a written explanation as to the reason for her termination, and stated a clear instruction to preserve relevant evidence as litigation was likely necessary.[7] (Higgins Ex. 1.) On April 15, 2021, the undersigned sent a follow-up letter explaining Plaintiff's allegation—that she was discriminated against because younger white employees with less seniority were retained instead of her. (*Id*.) The letter specifically named some obvious records custodians: Karen Riapos, Rod Broschinsky, Ryan Wilson, and Nicole Norris. (Higgins Ex. 2.)

Brand's duty to preserve evidence included an obligation to obtain and preserve documents in the possession of these key players, which is important as Judge Robart explained:

> Once triggered, this duty extends to any documents or tangible items that the party knows or should know are relevant to the litigation, as well as to documents in the possession of employees who are "key players" in the case. If a company has a document retention policy, the company is obligated to suspend that policy and implement a litigation hold to ensure the preservation of relevant documents.

*Knickerbocker v. Corinthian Colls.*, 298 F.R.D. 670, 677-78 (W.D. Wash. 2014) (internal citations omitted).

Brand failed to do anything to preserve the text messages and Teams messages sent or received by any of the "key players." Likewise, Brand did not collect Mr. Broschinsky's supervisory file that he kept concerning Plaintiff.

---

[7] "Since this matter will likely involve litigation, you are specifically advised to keep all records, documents, emails, and other material that, in any way, relate to your former employee and any persons connected to the termination. Secretion or destruction of such documents is spoliation, violates legal rules and may have serious consequences." (Higgins Ex. 1.)

MOTION FOR SANCTIONS - 7
(No. 2:21-cv-00754)

Law Offices of Alex J. Higgins
Denny Building, Suite 500
2200 Sixth Avenue
Seattle, WA 98121
(206) 340-4856

**B.      Basa is prejudiced as a result of Brand's spoliation.**

Plaintiff has no way of knowing exactly what was communicated by these "key players" in their electronic communications that are now missing. But where spoliation occurs, there is a "presumption that the destroyed evidence goes to the merits of the case." *Montoya v. Orange Cnty Sheriff's Dep't*, 2013 WL 12347292, at *9 (C.D. Cal. Oct. 15, 2013); *accord Leon*, 464 F.3d at 959 ("[B]ecause the relevance of ... [destroyed] documents cannot be clearly ascertained because the documents no longer exist, a party 'can hardly assert any presumption of irrelevance as to the destroyed documents'") (internal citations omitted).

To determine the prejudice caused by spoliation, the court should try to evaluate the importance of the evidence, but the party seeking sanctions "must not be held to too strict a standard of proof regarding the likely contents of the destroyed or unavailable evidence because doing so would allow parties who have destroyed evidence to profit from that destruction." *Ottoson v. SMBC Leasing & Fin.*, Inc., 268 F. Supp. 3d 570, 580 (S.D.N.Y. 2017) (cleaned up).

Because the electronic communications sought here no longer exist, the extent of the prejudice to Plaintiff is difficult to know. Importantly, we suspect the text messages and Teams messages would have been much more revealing than the emails produced. The emails contain only a scant mention of the reasons as to why Wilson and Norris were retained instead of Basa. (*See, e.g.*, Riapos Dep. 99:1-13; Higgins Ex. 3 (Answers to Interrogatory No. 4 and RFP No. 4).) And the real reason is more likely to have been disclosed in a casual communication, like a text message where individuals tend to be more casual.[8]

**C.      Brand willfully (1) failed to collect evidence from key players, and (2) failed to prevent the destruction of email and other evidence.**

Brand's own witnesses make this clear: messages were not preserved at any time. "[T]he failure to collect records—either paper or electronic—from key players constitutes gross

---

[8] Although the casual and candid nature of text messages is well known to anyone who has communicated in that manner, a University of Michigan study showed that people tend to be more honest in text messages. News Release, *OMG! Texting ups truthfulness, new iPhone study suggests*, EurekaAlert (May 16, 2012) https://www.eurekalert.org/news-releases/478802.

MOTION FOR SANCTIONS - 8
(No. 2:21-cv-00754)

Law Offices of Alex J. Higgins
Denny Building, Suite 500
2200 Sixth Avenue
Seattle, WA 98121
(206) 340-4856

negligence or willfulness as does the destruction of email or certain backup tapes after the duty to preserve has attached." *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, 685 F.Supp.2d 456, 465 (S.D.N.Y. 2010).  This extends to a party's failure to collect available information from third-parties, such as former employees.  *See id.* (noting that it is "gross negligence" to fail "to collect information from the files of former employees that remain in a party's possession, custody, or control after a duty to preserve has attached"), citing *Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 627–28 (D. Colo. 2007).

As Judge Coughenour has explained:  "A litigant has a culpable state of mind for spoliation purposes if the evidence was destroyed knowingly, even without intent to breach a duty to preserve it, or negligently." *Musse v. King Cnty*, 2:18-cv-1736-JCC, slip op. at 6 (W.D. Wash. Oct. 8, 2021) (internal quotation marks omitted).  The nature of the "fault" by the spoliating party is less than intentional or in bad faith, as the Western District judges have found:

> [T]he Ninth Circuit has confirmed the power of the district court to sanction under its inherent powers not only for bad faith, but also for willfulness or fault by the offending party.  **A party's failure to preserve evidence qualifies as willful spoliation if the party has some notice that the documents were potentially relevant to the litigation before they were destroyed**.

*Knickerbocker*, 298 F.R.D. at 678 (internal citations and quotes omitted) (emphasis added).

The fact that Brand received notice of Plaintiff's claims in early 2021 is not in dispute.  Further, Brand's counsel contends that it searched for responsive documents and the documents do not exist.  We know that responsive text messages in Broschinsky's possession that were lost or destroyed.  (Higgins Decl. ¶ 8; Ex. 8.)  We also know that text messages were used on a regular basis to conduct business by Brand employees.  It is logical and reasonable to conclude that many other text messages were sent about many of the factual issues in this case:  (a) the real reasons that Plaintiff was selected for layoff when her white peers were not; (b) whether Plaintiff had actual performance issues; and (c) whether Plaintiff's age was discussed among her managers.  A review of the text messages produced by Plaintiff between her and her Brand colleagues shows that they are more casual, more spontaneous and less scripted.  These "excited

MOTION FOR SANCTIONS - 9
(No. 2:21-cv-00754)

Law Offices of Alex J. Higgins
Denny Building, Suite 500
2200 Sixth Avenue
Seattle, WA 98121
(206) 340-4856

utterances" via text are often more revealing than emails. (The same is true for the Teams "instant messaging" that has not been produced but was regularly used by managers at Brand.)[9] People are much less inclined to send candid and "unfiltered" messages via email, which are routed through company servers and easily searched. For instance, Broschinsky—a VP of HR—sent Plaintiff via text a photo of him eating a banana that was borderline inappropriate. (Higgins Ex. 8.) His emails, by contrast, were professional and business-like. (Higgins Decl. ¶ 8.)

We have no way of knowing the number of other responsive and spontaneous messages were sent or received by the key witnesses such as Broschinsky, Riapos, Wilson, Norris, or Newman. It is likely that Plaintiff has suffered significant prejudice in having been denied access to all of those relevant communications.

**D.     An adverse inference jury instruction is warranted.**

Under these circumstances, an adverse inference jury instruction is appropriate. The instruction should make clear that "evidence made unavailable by a party was unfavorable to that party." *Montoya*, 2013 WL 12347292 at *11. *See also*, *E.E.O.C. v. Fry's Elecs., Inc.*, 874 F. Supp. 2d 1042, 1047 (W.D. Wash. 2012) (Lasnik, J.) (directing jury to draw an adverse inference against defendant for failure to preserve potentially relevant evidence); *Apple Inc.*, 888 F.Supp.2d at 994 (imposing an adverse inference where a party showed a conscious disregard for the preservation of evidence); *In re Napster*, 462 F.Supp.2d at 1078 (imposing an adverse inference where defendant's conduct amounted to gross negligence); *Lewis v. Ryan*, 261 F.R.D. 513, 522 (S.D. Cal. 2009) (imposing an adverse inference where defendants "have shown no effort to protect the documents from destruction").

Defendant's actions in this case were egregious. Its failures begin in early 2021 when it received notice of the Plaintiff's claims and did nothing to preserve the messages. That willful failure continued after suit was filed, discovery requests were made, and depositions were taken.

---

[9] Michelle Roman, former VP of Human Resources, and others testified about the regularity of instant messaging with Microsoft Teams and Skype for Business. (Roman Dep. 103:18-104:16; *see also* Riapos Dep. 105:8-21.)

MOTION FOR SANCTIONS - 10
(No. 2:21-cv-00754)

Law Offices of Alex J. Higgins
Denny Building, Suite 500
2200 Sixth Avenue
Seattle, WA 98121
(206) 340-4856

Defendant repeated and on-going failures are well established. Even when Karen Riapos testified on June 13, 2022, and she made it abundantly clear that her text messages were never preserved or searched, Defendant <u>still</u> failed to do anything to look for text messages on the phones of key witnesses. Additionally, Broschinsky had a supervisory file pertaining to Plaintiff's job performance that was neither preserved nor produced. This egregious pattern of spoliation should be sanctioned in the strongest possible way.

### IV.   CONCLUSION

For the above reasons, Plaintiff respectfully requests that the Court find that spoliation occurred and issue an appropriate order to rectify the issue, including an adverse inference jury instruction, an order preventing Brand from using Plaintiff's text messages and an award of attorneys' fees and costs in pursuing this issue.

DATED this *22nd* day of September, 2022.

LAW OFFICES OF ALEX J. HIGGINS

*s/Alex J. Higgins*
Alex J. Higgins, WSBA No. 20868


BEAN LAW GROUP

*s/Cody Fenton-Robertson*
Cody Fenton-Robertson, WSBA No. 47879
2200 6th Ave, Suite 500
Seattle, WA 98121
(206) 522-0618

MOTION FOR SANCTIONS - 11
(No. 2:21-cv-00754)

Law Offices of Alex J. Higgins
Denny Building, Suite 500
2200 Sixth Avenue
Seattle, WA 98121
(206) 340-4856