HONORABLE MICHELLE L. PETERSON

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| NANNETTE BASA, an individual,<br><br>                    Plaintiff,<br><br>          v.<br><br>BRAND SHARED SERVICES, LLC, a<br>Delaware corporation,<br><br>                    Defendant. | Case No. 2:21-cv-00754 MLP<br><br>DECLARATION OF EMMA<br>KAZARYAN IN SUPPORT OF<br>DEFENDANT BRAND SHARED<br>SERVICES, LLC'S RESPONSE IN<br>OPPOSITION TO PLAINTIFF'S<br>MOTION FOR SANCTIONS FOR<br>SPOLIATION OF EVIDENCE<br><br>**HEARING DATE:**<br>**October 7, 2022** |

I, Emma Kazaryan, hereby declare:

1.      I am one of the attorneys for Defendant Brand Shared Services, LLC ("*Brand*") in the above-captioned matter.  I am over the age of eighteen and competent to testify in this matter. I base this declaration on my personal knowledge and on my review of the file maintained by my law firm in connection with this matter.  That file is kept in the ordinary course of business and is timely and regularly updated.

2.      In the course of discovery in this case, Plaintiff has propounded five sets of discovery requests comprised of 14 interrogatories and 19 requests for production.

DECLARATION OF EMMA KAZARYAN IN SUPPORT OF
DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE - 1
(CAUSE NO. 2:2-CV-00754 MLP)

Seyfarth Shaw LLP
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041
(206) 946-4910

87605150v.2

3.      In response to Plaintiff's extensive discovery requests, Brand has produced 62,456 pages of documents.

4.      Brand has also cooperated with the <u>seven depositions</u> Plaintiff has already taken in this case.

5.      In addition to the depositions that have already been taken, Plaintiff is seeking <u>five</u> additional depositions (including a multi-topic CR 30(b)(6) deposition).  Brand has agreed to allow Plaintiff to take 12 depositions in this case without additional motion practice.

6.      At Plaintiff's counsel's request, we have had at least <u>nine discovery conferences</u> in the course of this case:

- January 6, 2022
- February 23, 2022
- April 18, 2022
- June 7, 2022
- July 27/July 28, 2022 (continuation of conference from previous day)
- August 5, 2022
- August 30, 2022
- September 8, 2022 (conference immediately following deposition)
- September 27, 2022

7.      In addition to the telephonic discovery conferences, we have engaged in detailed substantive email discussion about Plaintiff's discovery requests.  Attached to my declaration as **Exhibit A** is a detailed email I sent to Plaintiff's counsel following a discovery conference explaining why Plaintiff's requests were objectionable and, in the interest of resolving the dispute and avoiding a motion, supplementing certain answers as requested by Plaintiff's counsel.

8.      The discovery Plaintiff has requested (and Brand has provided) in this matter has been disproportionate to the needs of this case.  Plaintiff was unemployed for about a year before

DECLARATION OF EMMA KAZARYAN IN OPPOSITION TO PLAINTIFF'S
MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE - 2
(CAUSE NO. 2:21-CV-00754 MLP)

SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041
(206) 946-4910

1  she fully mitigated her damages.  During that time, she did contract work that offsets her

2  economic damages.  Attached to my declaration as **Exhibit B** are true and correct copies of

3  Plaintiff's discovery responses which establish that she has fully mitigated her economic

4  damages and which discuss the contract work she did during her period of unemployment.

5

6  9.  In addition, there is evidence that Plaintiff enjoyed her period of unemployment

7  and took her time finding a new job: she bragged that she was not in a rush to find a job because

8  of how easy it was for her to collect unemployment in the State of Washington and she told

9  friends she enjoyed being (in her words) a "trophy wife."  Attached to my declaration as **Exhibit**

10  **C** are true and correct copies of those text messages.

11  10.  On September 7, 2022, Plaintiff's counsel took the deposition of Michelle Roman.

12  Attached hereto as **Exhibit D** are true and correct copies of excerpts from that deposition.

13  I declare under penalty of perjury under the laws of the United States of America that the

14  foregoing is true and correct to the best of my knowledge.

15  Signed this 3rd day of October, 2022 in Seattle, Washington.

16

17

18  *s/ Emma Kazaryan*
   Emma Kazaryan, WSBA No. 49885

19

20

21

22

23

24

25

26  DECLARATION OF EMMA KAZARYAN IN OPPOSITION TO PLAINTIFF'S
   MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE - 3
   (CAUSE NO. 2:21-CV-00754 MLP)

SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041
(206) 946-4910

1

**CERTIFICATE OF SERVICE**

2      I hereby declare that on this 3rd day of October, 2021, I caused a copy of ***Declaration of***

3   ***Emma Kazaryan in Support of Defendant Brand Shared Services, LLC's Response in***

4   ***Opposition to Plaintiff's Motion for Sanctions*** to be electronically filed with the Court using

5   ECF-Filing system which will send notification of such filing to the following:

6      Alexander J. Higgins
       Law Offices of Alex J. Higgins
7      2200 6th Avenue, Ste. 500
       Seattle, WA 98121
8      P: (206) 340-4856
       alex@alexjhiggins.com
9

       Cody Fenton- Robertson
10     Bean Law Group
       2200 6th Avenue, Ste. 500
11     Seattle, WA 98121
       P: (206) 5220618
12     cody@beanlawgroup.com

13

14

                                    _s/  Valerie Macan_
15                                  Valerie Macan

16

17

18

19

20

21

22

23

24

25

26
       DECLARATION OF EMMA KAZARYAN IN OPPOSITION TO PLAINTIFF'S
       MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE - 4
       (CAUSE NO. 2:21-CV-00754 MLP)

SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041
(206) 946-4910

# Exhibit A

**Kazaryan, Emma J.**

| | |
|---|---|
| **From:** | Kazaryan, Emma J. |
| **Sent:** | Tuesday, August 2, 2022 3:31 PM |
| **To:** | 'Alexander Higgins'; 'Cody Fenton-Robertson' |
| **Cc:** | McFarland, Helen M.; Macan, Valerie |
| **Subject:** | RE: Basa v. Brand Plaintiff's Third and Fourth Set of Discovery Requests:  CR 37 |
| **Attachments:** | BRAND062455.pdf |
| | |
| **Categories:** | Important |

Good afternoon Alex,

Thank you for our calls last week.  As we discussed, and with the additional information Brand has provided or agreed to provide, I believe Brand has fully responded to Ms. Basa's discovery requests and that a motion to compel is not necessary.  I address each of your points in further detail below.

Interrogatory No. 8 and RFP No. 9:  Plaintiff's alleged performance issues.
You have asked Brand to identify what performance issues "influenced" the termination decision.  Brand provided a complete answer to this interrogatory: the answer refers back to Ms. Riapos's deposition testimony and documents previously produced in the course of discovery.

During her deposition, Ms. Riapos specifically testified at length about the performance issues that informed her decision to identify Ms. Basa for layoff (for example, please see her deposition transcript at 35:18-39:20).  In addition, in the course of discovery, Brand has produced numerous emails that pertain to the issues Ms. Riapos discussed during her deposition (in fact, based on some of the questions asked during Ms. Riapos's decision, I suspect you have reviewed these emails).  Also, in the answer to the very next interrogatory in this set (Interrogatory No. 9), Brand provided a detailed, itemized list of specific performance issues that were called to Ms. Riapos's attention and that she testified informed her decision to identify Ms. Basa for layoff.

As I said during our call, I think Brand has provided a complete answer here.  The duplicative nature of Ms. Basa's discovery requests is unduly oppressive and unnecessarily drives up defense costs.

However, in the interest of resolving this dispute, in addition to the evidence and documents we cited, we identify:

- Late payments that took a long time to resolve;

- Lack of work product (including, without limitation, missing deadlines);

- Combative communications;

- In March 2020, after one of Brand's third-party partners escalated a non-payment issue to Brand's chief information officer Jay Fisher, who reported it to Ms. Riapos.  He revealed that when a contractor inquired about a payment he had not received, Ms. Basa sent a curt and dismissive email response;

- While trying to resolve non-payment issue, Heather Morrison, Brand's Director of IT and Finance, had trouble getting help from Ms. Basa.  Ms. Morrison emailed Mr. Fisher stating, "Just for your information— Nannette was not helpful in the last email I sent—she kept telling me not to worry about it…"

1

•     In approximately April 2020, Ms. Riapos received a complaint from Jerry Dolly that Ms. Basa failed to help fill a role that he requested help with back in January 2020.  Due to Ms. Basa's failure, Ms. Riapos had to step in to help fill the role.

•     In June 2020, Mike Krach (a branch manager) complained to HR about persistent issues working with Ms. Basa.  He wrote:

> My experience with Nannette has been nothing but failure,  Over the past 3 years every time she has been involved with an employee placement/search for my region has come up with nothing.  I do not recall my region hiring anyone that she has referred to my region (I might be wrong but that is to the best of my memory).

<u>Interrogatory No. 9.   Performance issues reported to Riapos.</u>
Thank you for withdrawing a request for a further response to Interrogatory No. 9.  I think Ms. Riapos was clear during her deposition that each of the issues identified in response to this interrogatory (without limitation) informed her decision to identify Ms. Basa for layoff.

<u>Interrogatory No. 10:  Compensation Paid to NextSource.</u>
You argue that because NextSource "replaced Ms. Basa," you are entitled to know what Brand paid to the vendor.  However, that is not a complete or accurate characterization of Brand's explanation for the reduction-in-force or Ms. Basa's layoff.  The vendor NextSource is not an individual employee.  It is not a "replacement" where you swap out one employee for another.

Further, as I explained during our call, and as Ms. Riapos testified during her deposition, the decision to retain a managed service provider (ultimately, NextSource) was made many months before the decision to layoff Ms. Basa.  Brand has not claimed that it terminated Ms. Basa and turned to NextSource because it resulted in a cost savings (this would not be an apples-to-apples comparison).  In fact, during her deposition, Ms. Riapos testified that she made the decision to hire a managed service provider based on her experience and knowing how difficult it is to manage a contingent-labor program well and her assessment of the change management that would go into handling this work well internally (for example, please see 64:21-65:12 of Ms. Riapos's deposition); she did not mention cost-savings as the impetus for the decision to hire NextSource.

We do not see how or why the contract of an outside vendor is relevant to this case.  However, in the interest of resolving this dispute, we can provide the following information: in 2021, Brand paid $94,666.64 to NextSource.

<u>RFP No. 11:  Personnel files of retained employees.</u>
During our call, you agreed to limit your request for records that pertain to Nicole Norris and Ryan Wilson's performance or job duties (such as a job application, job description, performance reviews, and performance write-ups).  With this limitation, we will produce any non-privileged responsive records subject to the parties' protective order (please see attached).

<u>RFP No. 12.  Job Descriptions.</u>
As we discussed, Brand does not have job descriptions for the roles held by Ms. Basa, Ms. Norris, and Mr. Wilson.

<u>RFP No. 13:  VNDLY Cost Savings.</u>
As with Interrogatory No. 10, your request for information about Brand's software Brand uses is irrelevant and has no bearing on the claims or defenses in this case.

That being said, in the voluminous records that have been produced in response to Ms. Basa's previous sets of discovery requests, Brand has produced responsive documents.  In fact, you asked Ms. Riapos about some of these documents during her deposition.

When I pointed this out during our call, you suggested I should identify the previously-produced responsive documents by Bates number.  Although I remember seeing documents that are responsive to this request when I was reviewing them pursuant to a different request for production, I was not making note of the Bates numbers for those documents because (i) I don't think they are relevant, and (ii) because this Request for Production No. 13 (which was propounded later) was not on my radar.

It would be extraordinarily time-consuming, onerous, and disproportionate to the needs of this case for me to re-review the tens of thousands of pages of documents produced to identify the Bates numbers for you.  Also, because you know precisely what you are looking for and because  you are currently reviewing these documents anyway, you are in a better position than I am to identify the Bates numbers/responsive documents.

RFP No. 14:  Open Requisition Spreadsheet.
We can confirm that we have not seen any reports with the column you describe in RFP 14.

Interrogatory No. 11:  Discrimination and Favoritism.
During our call on Thursday 07/28, you said you doubted this request yield helpful information and withdrew your concerns about Brand's response.

Interrogatory No. 12:  EEO Compliance.
The relevant deposition testimony by Karen Riapos (starting on p. 56):

    Q    And it says, "Always post to Direct Employers,
   17  300-plus sites, for EEO compliance purposes."
   18       Do you know what that means?
   19     A    Yeah.  Direct Employers is our job aggregator.
   20  So when we post jobs there, it posts to our careers page
   21  and over 300 sites around the country.
   22     Q    And do you know what is meant by "for EEO
   23  compliance purposes"?
   24     A    Yeah.  We use Direct Employers to manage, to
   25  make sure we're posting jobs in places that will get
   57
    1  underrepresented people for candidates.
    2    Q    And is that requirement to do?
    3    A    Yes, it is.
    4    Q    And who requires that?
    5    A    We're a federal contractor, so the federal
    6  government.
    7    Q    Why didn't you post the recruiting positions
    8  for which you hired Nicole Norris and Ryan Wilson to the
    9  Direct Employers site?
   10     A    Because at the time, when we would post to
   11  Direct Employers, candidates would send us an email with
   12  their resume.  And since I had already reached out to
   13  Ryan and Nicole directly, there was no reason for them to
   14  apply to the position.
   15     Q    Right.  But for EEO compliance purposes, why
   16  didn't you get -- advertise the position in a broad area
   17  of the country?
   18     A    Because we already had identified two
   19  candidates, who I had previously worked

We are asking about her testimony that Brand was required to follow certain EEO requirements in hiring.  What you are asking for here is different than what the interrogatory calls for.  Brand has provided a complete response to Interrogatory No. 12.

Interrogatory No. 13:  Brand's Hiring Process.
Between Ms. Riapos's deposition (see, for example, 21:25-22:15 of her deposition transcript) and Brand's responses (including, if applicable, supplemental responses) to Interrogatory Nos. 5 and 6 and Request for Production No. 5, this is yet another interrogatory that has been answered in full and is duplicative.

You contend that Brand's answer was not "adequate" and argue that the answer Ms. Riapos provided at her deposition demonstrates that she "hand-picked people who she wanted to hire…"  Whether Brand's <u>hiring process was adequate</u> and whether <u>the answers Ms. Riapos provided are adequate</u> are two different questions.  Even if you think Brand's hiring process for these two positions was inadequate, Brand has already provided a complete response to this interrogatory.   Further, as expressed in our objections, Brand's hiring process is not an issue in this lawsuit.   Basa alleges discrimination in connection with her layoff, not her hiring (or Brand's alleged failure to hire her).

RFP No. 18:  Personnel Records of Comparators.
Based on our discussion, I understand that you are limiting your requests for personnel records to Nicole Norris and Ryan Wilson.  Thus, this request is identical to RFP No. 11, which you have agreed to limit to Ms. Norris and Mr. Wilson's performance or job duties (such as a job application, job description, performance reviews, and performance write-ups).  As stated above, we agree to produce non-privileged responsive records related to Mr. Norris and Mr. Wilson.

With this, it is my understanding that the concerns you raised about Brand's discovery responses have been addressed in full and there are no outstanding issues.  If you wish to address anything else, please do not hesitate to contact me.

Best,
Emma

---

**From:** Kazaryan, Emma J.
**Sent:** Monday, August 1, 2022 2:40 PM
**To:** 'Alexander Higgins' <alex@alexjhiggins.com>; Cody Fenton-Robertson <cody@beanlawgroup.com>
**Cc:** McFarland, Helen M. <hmcfarland@seyfarth.com>; Macan, Valerie <vmacan@seyfarth.com>
**Subject:** RE: Basa v. Brand Plaintiff's Third and Fourth Set of Discovery Requests: CR 37


Good afternoon Alex,

I am working on preparing a response on the issues discussed during the CR 37 conference and expect to have that to you by the end of the day tomorrow.  I am also following up on the deposition date.

Best,
Emma

**From:** Alexander Higgins <alex@alexjhiggins.com>
**Sent:** Monday, August 1, 2022 10:26 AM
**To:** Kazaryan, Emma J. <ekazaryan@seyfarth.com>; Cody Fenton-Robertson <cody@beanlawgroup.com>
**Cc:** McFarland, Helen M. <hmcfarland@seyfarth.com>; Macan, Valerie <vmacan@seyfarth.com>
**Subject:** Re: Basa v. Brand Plaintiff's Third and Fourth Set of Discovery Requests: CR 37

# Exhibit B

HONORABLE MICHELLE L. PETERSON

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| NANNETTE BASA, an individual,<br><br>                Plaintiff,<br><br>v.<br><br>BRAND SHARED SERVICES, LLC, a<br>Delaware corporation,<br><br>                Defendant. | Case No. 2:21-cv-00754 MLP<br><br>**DEFENDANT'S FIRST SET OF<br>INTERROGATORIES AND REQUESTS<br>FOR PRODUCTION TO PLAINTIFF<br>WITH ANSWERS AND OBJECTIONS<br>THERERTO** |

Pursuant to Rules 33 and 34 of the Federal Rules of Civil Procedure, Defendant Brand Shared Services, LLC ("Brand"), by and through its undersigned attorneys of record, requests that that Plaintiff Nannette Basa answer the following interrogatories and produce and permit Brand or its representative to inspect, copy, test, or sample the items identified in the requests below.

## **DEFINITIONS**

The following definitions apply to these Interrogatories and Requests for Production:

DEFENDANT'S FIRST SET OF INTERROGATORIES
AND REQUESTS FOR PRODUCTION TO PLAINTIFF
**WITH ANSWERS AND OBJECTIONS THERETO** - 1

Law Offices of Alex J. Higgins
2200 6th Ave, Suite 500
Seattle, WA 98121
(206) 340-4856

Her search was open to jobs in all industries, not just industrial services.  She applied to both contract and full time opportunities.  She did not decline any jobs based on salary.  In Oct. 2021, she accepted a contract opportunity as a Resource Professional for Abbott at $30/hr.

**INTERROGATORY NO.7:**        Please state with specificity all damages (including, without limitation, economic and non-economic damages) you are claiming in this lawsuit.

**ANSWER:**

Plaintiff seeks compensatory damages and punitive damages.  The compensatory damages include special damages for back pay and the value of lost health benefits, and general damages for emotional distress.

Defendant paid Plaintiff a salary of $100,000/year.  Defendant terminated Plaintiff's employment on December 8, 2020.

Defendant hired Nicole Norris—an external candidate—on January 15, 2020.  It is believed she began work on or about February 17, 2020.  Ms. Norris was paid a salary of $134,000, and was given a "sign on bonus" of $20,000.  Plaintiff should have been hired into this position.  Therefore, Plaintiff calculates her back pay damages as beginning on February 17, 2020.

Plaintiff began employment paying more than $134,000/year on February 21, 2022.  Therefore, Plaintiff has two years of damages totaling $288,000 before factoring for interim earnings.

From February 17, 2020, until December 8, 2020, Plaintiff continued to work for Defendant at a salary of $100,000.  During this 42-week period, Plaintiff earned an estimated $80,770.

From September 27, 2021, until February 18, 2022, Plaintiff worked as a contractor for Prokatchers LLC.  She earned $14,400 in that role in calendar year 2021, and earned an additional 10,027.50 in 2022.

Accounting for the above interim earnings, Plaintiff's back pay damages are **$182,802.50**.

Defendant offered Plaintiff a 401k with employer matching contributions.  Plaintiff does not currently have specific details for the 401k, but Plaintiff intends to claim the employer-match amount as damages.

Damages for emotional distress cannot be calculated with precision.

Punitive damages are to be determined by the trier of fact.

DEFENDANT'S first SET OF INTERROGATORIES
AND REQUESTS FOR PRODUCTION TO PLAINTIFF - 8

79036524v.1

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041
(206) 946-4910

**PARTY CERTIFICATION**

I, Nannette Basa, hereby declare under penalty of perjury under the laws of the State of Washington that the foregoing responses to *Defendant's First Set of Interrogatories and Requests for Production to Plaintiff* are true and correct to the best of my knowledge.

Signed in _Seattle_____, WA__ this 24th day of _March_, 2022.

_____
Nannette Basa

**ATTORNEY CERTIFICATION**

The undersigned attorney for plaintiff has read the foregoing answers and responses and they are in compliance with CR 26(g).

Dated this ____ day of _____, 2022.

_____

DEFENDANT'S FIRST SET OF INTERROGATORIES
AND REQUESTS FOR PRODUCTION TO PLAINTIFF - 12

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA 98104-4041
(206) 946-4910

79036524v.1

**PARTY CERTIFICATION**

I, Nannette Basa, hereby declare under penalty of perjury under the laws of the State of Washington that the foregoing responses to ***Defendant's First Set of Interrogatories and Requests for Production to Plaintiff*** are true and correct to the best of my knowledge.

Signed in _____, _____ this _____ day of _____, 2022.

_____
Nannette Basa

**ATTORNEY CERTIFICATION**

The undersigned attorney for plaintiff has read the foregoing answers and responses and they are in compliance with CR 26(g).

Dated this _24_ day of _March_____, 2022.

_____
Cody Fenton-Robertson

DEFENDANT'S FIRST SET OF INTERROGATORIES
AND REQUESTS FOR PRODUCTION TO PLAINTIFF - 12

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041
(206) 946-4910

79036524v.1

# Exhibit C

4/9/2021 10:13 AM

Connie Rogers (4042716706)

Its feast or famine around here. Last week was fairly quite. This week I have 5 companies interested in me. The Easter Seals is last on my list because its temp, but they needs someone next week. The other 4 are perm roles and as you know they may or may not end up filling the role. I had one today set up to interview me and they called to say they had a former employee take the role.

4/9/2021 10:14 AM

Nannette's iPhone (+14259510818)

I sort of like being Dennis' trophy wife,

4/9/2021 10:16 AM (Viewed 9/9/2021 2:12 PM)

Connie Rogers (4042716706)

Enjoy it and find the right job when you want to return to the rat race.

11/5/2021 11:56 AM (Viewed 11/5/2021 2:02 PM)

Connie Rogers (4042716706)

Hi Nanette, Just letting you know I have changed jobs. I am now at BlueLinx in Marietta. EA to the CFO. Hopefully we can catch up soon.

11/5/2021 2:03 PM

Nannette's iPhone (+14259510818)

EA is where you need to be. I hope you and your boss are a good team

11/5/2021 2:38 PM

Connie Rogers (4042716706)

I believe we will be great together. She previously worked for GE, so we both have the same mindset.

11/15/2021 12:59 PM

Nannette's iPhone (+14259510818)

Can I call you later?

11/15/2021 12:59 PM (Viewed 11/15/2021 1:49 PM)

Connie Rogers (4042716706)

Yes. Any time

You have 46 total messages and 4 total images.

BASA_000688

Kim Hunt (7179198399)



6/30/2021 12:31 PM

Nannette's iPhone (+14259510818)

Actually I don't care too much if I do or do not get a job. But, I'll be open until September when my unemployment runs out

6/30/2021 12:32 PM (Viewed 6/30/2021 3:15 PM)

Kim Hunt (7179198399)

Liked "Actually I don't care too much if I do or do not get a job. But, I'll be open until September when my unemployment runs out"

9/9/2021 2:06 PM

Nannette's iPhone (+14259510818)

Hi your VM is full. Just an FYI, my attorney may call you

9/9/2021 5:18 PM (Viewed 9/23/2021 9:25 AM)

Kim Hunt (7179198399)

Ok

9/28/2021 8:50 AM

Nannette's iPhone (+14259510818)

Hi, could you call me when you have time? I wanted to get your insight on test assessment data and using to target weaknesses - then decide if can provide learning opportunities to overcome or something that should accept as weaknesses

10/19/2021 1:30 PM (Viewed 10/19/2021 1:31 PM)

Kim Hunt (7179198399)

How is the job?

10/19/2021 1:31 PM

Nannette's iPhone (+14259510818)

I'm contracting for Abbott's MSP Tapfin

10/19/2021 1:32 PM

Nannette's iPhone (+14259510818)

Started 2 weeks ago

10/19/2021 1:32 PM

Nannette's iPhone (+14259510818)

It's good

10/19/2021 1:32 PM

BASA_000819

Sure...just checking in with you

1/22/2021 8:03 AM

Nannette's iPhone (+14259510818)

Am texting back and forth with Tiffany from VNDLY, can I reintroduce you to Shashank, their CEO. He knows a lot of people

1/22/2021 8:59 AM (Viewed 1/22/2021 9:00 AM)

Thomas Yuhas (6308035737)

Absolutely! Would love the opportunity to network with Shashank.

1/22/2021 9:02 AM

Nannette's iPhone (+14259510818)

Can you email me your resume? Nannettekbasa@gmail.com

1/26/2021 7:40 AM (Viewed 1/26/2021 9:02 AM)

Thomas Yuhas (6308035737)

Hey Nannett! Just sent over my resume. Looking forward to connecting with you a Shashank.

1/26/2021 7:40 AM (Viewed 1/26/2021 9:02 AM)

Thomas Yuhas (6308035737)

Does he have any work for you?

1/26/2021 9:41 AM

Nannette's iPhone (+14259510818)

Short answer, no I didn't ask him for myself...and unemployment in the state of Washington makes it relatively easy for me not to rush into something with the added benefit of being married to Dennis

3/30/2021 11:11 AM

Thomas Yuhas (6308035737)

In a meeting. I'll call you back shortly

3/30/2021 11:12 AM

Nannette's iPhone (+14259510818)

Ok, just checking up on both of our mental health

3/30/2021 2:17 PM

Nannette's iPhone (+14259510818)

When you do call me back...remind me. I have some suggestions for you on your job search

5/4/2021 9:52 AM

Nannette's iPhone (+14259510818)

BASA_000874

# Exhibit D

MICHELLE ROMAN - 09/07/2022

Page 1

1          IN THE UNITED STATES DISTRICT COURT

2        FOR THE WESTERN DISTRICT OF WASHINGTON

3                    AT SEATTLE

4

5    NANNETTE BASA,                    )
                                       )
6                    Plaintiff,        )
                                       )
7    vs.                               ) No. 2:21-cv-00754-MLP
                                       )
8    BRAND SHARED SERVICES, LLC,       )
                                       )
9                    Defendant.        )
     _____)

10

11

12

13

14        ORAL VIDEO DEPOSITION OF MICHELLE ROMAN

15            WEDNESDAY, SEPTEMBER 7, 2022

16

17

18

19          THE ORAL VIDEO DEPOSITION OF MICHELLE ROMAN,

20   produced as a witness at the instance of the Plaintiff,

21   was taken in the above-styled and -numbered cause on the

22   7th day of September, 2022, from 9:01 a.m. to 11:36 a.m.

23   Pacific Time.  The court reporter was Nor Monroe,

24   Certified Court Reporter for the State of Washington.

25   All participants appeared via Zoom videoconference.

MICHELLE ROMAN - 09/07/2022

Page 2

1                         APPEARANCES

2


3    FOR PLAINTIFF

4            ALEX J. HIGGINS
             alex@alexjhiggins.com
5            LAW OFFICES OF ALEX J. HIGGINS
             2200 6th Avenue
6            Suite 500
             Seattle, Washington  98121-1844
7            Phone:  (206) 340-4856

8            CODY FENTON-ROBERTSON
             cody@beanlawgroup.com
9            BEAN LAW GROUP
             2200 6th Avenue
10           Suite 500
             Seattle, Washington  98121-1844
11           Phone:  (206) 522-0618

12


13   FOR DEFENDANT

14           HELEN MCFARLAND
             hmcfarland@seyfarth.com
15           EMMA KAZARYAN
             ekazaryan@seyfarth.com
16           SEYFARTH SHAW LLP
             999 3rd Avenue
17           Suite 4700
             Seattle, Washington  98104-4041
18           Phone:  (206) 946-4978

19


20


21   ALSO PRESENT:

22           (None)

23


24


25

MICHELLE ROMAN - 09/07/2022

Page 10

```
 1   Twice a day?  I mean, how -- how many times a day would
 2   you have texts about work?
 3        A.   It wasn't often.  I -- it wasn't often.
 4        Q.   So give me a -- give me sort of a weekly
 5   average or monthly average or something you can -- you
 6   can give me a --
 7             (Simultaneous talking.)
 8        A.   For work, I would say, you know, three/four
 9   times a week, maybe.
10        Q.   Okay.  And what did you do with the phone when
11   you left Brand?
12        A.   I returned the company asset.
13        Q.   Did you ever search for text messages on your
14   phone concerning Nannette Basa?
15        A.   Yes.
16        Q.   When did you do that?
17        A.   Couple of months ago.  I don't remember the
18   exact date, but it was a few months ago.
19        Q.   And it was af- -- 'scuse me -- while you were
20   still working at Brand.
21        A.   Correct.
22        Q.   And you worked at Brand until August -- what
23   date in August did --
24             (Simultaneous talking.)
25        A.   Until July 15th.
```

MICHELLE ROMAN - 09/07/2022

Page 11

1        Q.    Oh, July 15th.  Excuse me.  Okay.

2              So it was sometime in June or July that you

3    looked at your phone for text messages?

4        A.    No, that was b- -- before that.

5        Q.    Okay.

6        A.    It was earlier in the year.

7        Q.    Okay.  Earlier in the year.

8        A.    Mm-hmm.

9        Q.    And -- and did you find anything about

10   Nannette Basa?

11       A.    I found a few things, and whatever I found I

12   turned over to legal counsel.

13       Q.    Okay.  And that was counsel for Brand, who's

14   here at the deposition today.

15       A.    Correct.

16       Q.    And did you -- did you notice that some older

17   texts were, you know -- sort of had gone -- well, I'll

18   put it a different way.  Sorry.

19              Did you have settings on your phone to get rid

20   of old text messages that were -- you know, after a year

21   or six months or 30 days or something like that?

22       A.    I don't know that, 'cause I never configured

23   the phone specifically for that, so. . . .

24       Q.    What's the oldest text messages you found when

25   you were searching earlier this year in 2022?

1   this may have been well before that, yeah.

2        Q.   Was there any other form of instant messaging

3   at Brand used to communicate about business matters?

4        A.   Not that I'm aware of.

5        Q.   How often did you use this chat feature to

6   communicate with others while you were at Brand?  Was

7   this a daily thing?

8        A.   Yes.

9        Q.   Multiple times a day?

10       A.   Yes.

11       Q.   What -- why would you do it in a chat versus

12   an email?  What was the -- did you have a criteria in

13   mind for when you'd use one and not the other?

14       A.   Yeah, yeah, when I w- -- had quick questions

15   or just needed a -- you know, to touch base with someone

16   very quickly, I would use chat.

17       Q.   Okay.  All right.  Did you ever go back and

18   search your chat history like you ch- -- checked your

19   phone for text messages about Nannette Basa?

20       A.   Yes, I did.

21       Q.   Okay.  And was that, again, in early 2022?

22       A.   I don't remember the timing, but it was ar- --

23   it was at the same time I would have done the phone.

24       Q.   Okay.  So I can't really tell who's writing

25   what in this.  There's a -- there's something at the top