The Honorable Michelle L. Peterson
Noted for Friday, October 7, 2022
Set for Oral Argument on October 18, 2022, 1:00 PM

# THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| NANNETTE BASA, an individual,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>BRAND SHARED SERVICES, LLC, a Delaware corporation,<br><br>　　　　　　Defendant. | No. 2:21-cv-00754-MLP<br><br>**REPLY ON MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE**<br><br>**NOTED FOR CONSIDERATION:**<br>　**Friday, October 7, 2022** |

REPLY ON MOTION FOR SANCTIONS - 1
(No. 2:21-cv-00754)

Law Offices of Alex J. Higgins
Denny Building, Suite 500
2200 Sixth Avenue
Seattle, WA 98121
(206) 340-4856

## I. ARGUMENT IN REPLY

Defendant Brand Shared Services LLC ("Brand") admits that it did not send a timely preservation notice to key witnesses and did not preserve Microsoft Teams messages, text messages, or an important supervisory file.  To avoid sanctions, Brand argues that the evidence would have supported its case (which begs the question of why Brand did not preserve it).  Further, Brand asks this Court to give the benefit of the doubt to Brand that: (a) no relevant evidence was lost; and (b) that any evidence would have supported Brand's theories of the case.  That argument is not supported by the facts or the law, as explained below.

This Motion related to spoliation of: (1) a paper supervisory file about Plaintiff kept by her manager; (2) Microsoft Teams messages; and (3) text messages.  Each is discussed below.

**A.     Rod Broschinsky's Supervisory File on Nannette Basa.**

Brand does not assert that it preserved or produce Broschinsky's supervisory file before his deposition in September 2022, despite a clear duty to do so.  This file includes a performance appraisal of Plaintiff that has not been otherwise produced.  Now, that document is gone.

Brand falsely asserts that Broschinsky's supervisory file would be helpful to Brand, but does not include a transcript of his actual testimony.  We do so below.  First, Brand claims that Broschinsky testified "his file contained documentation of Plaintiff's troublesome performance and communication issues…" (Opposition at p. 5.)  In reality, Broschinsky testified that Plaintiff was a good employee who worked hard.[1]  He went on to testify that he gave her a good performance review "to keep her motivated…" (Broschinsky Dep. 50:21-23.)  That positive review was kept in his file; therefore, the review was never produced by Brand.

Although Brand's position is somewhat unclear, it may be alleging that the file contained documentation of Broschinksy's "strained communication" he had with Plaintiff one time.  When asked if he took notes about that occasion and put in her file, he answered: "I don't recall

---

[1] When asked if her performance warranted a pay increase, Broschinksy answered: "I can't say I recall a reason why it wouldn't, but there's no significant event in my mind that would say one way or the other, other than I know she was a hard worker." (Broschinsky Dep. 45:4-9.)  Excerpts of Broschinsky's deposition are attached as Supp. Higgins Ex. 12.

REPLY ON MOTION FOR SANCTIONS - 2
(No. 2:21-cv-00754)

Law Offices of Alex J. Higgins
Denny Building, Suite 500
2200 Sixth Avenue
Seattle, WA 98121
(206) 340-4856

specifically. But I'm the type of person that keeps pretty good notes. So it could be, yeah." (Broschinsky Dep. 90:13-23). If Broschinsky, an experienced HR manager who "keeps pretty good notes," did not take notes, that suggests that any "performance issues" were minor. But Brand failed to preserve the file, so we cannot show that.

Case law from this District establishes that destroyed evidence is presumed to be relevant and goes to the merits of the case. (Case law from this District is presented in Plaintiff's motion, Dkt. 30, at p. 8.) That presumption has not been overcome by Brand's mischaracterization of Broschinsky's testimony.

Next, Brand argues that it made a good faith effort to locate the file, but fails to say when. The first notice to preserve evidence was sent beginning in January 2021. For the next 10 months, Broschinsky worked at Brand and had the supervisory file (he returned it only when he left in "early October 2021"). (Broschinsky Dep. 95:24-25.) By that time, this lawsuit had been filed, served, answered by Brand, and initial disclosures had been exchanged. (*See* Dkt. 12 (Joint Status Report).) At any time during those 10 months, Brand could have and should have obtained the file from him. That blatant failure to preserve a supervisory file is spoliation.

Plaintiff wants to briefly address the "red herring" argument by Brand that discovery has been outsized in this case. Plaintiff started this case focusing on a layoff decision that Brand defended based on a claim that Plaintiff did not want to do recruiting and had been offered a job as a recruiter but had turned it down. (Supp. Higgins Ex. 10 (Rog. Answer No. 6.) Therefore, she was selected for layoff. This did not appear to be a performance-related termination. At Riapos's deposition in June 2022, she announced for the first time that Plaintiff's allegedly poor performance was the reason for the layoff. Brand had not communicated that to Plaintiff, nor created any documentation of the alleged performance issues. This surprising development caused a massive broadening of discovery because Plaintiff was forced to ask for more

REPLY ON MOTION FOR SANCTIONS - 3
(No. 2:21-cv-00754)

Law Offices of Alex J. Higgins
Denny Building, Suite 500
2200 Sixth Avenue
Seattle, WA 98121
(206) 340-4856

documents and find (or depose) every person identified by Brand as a witness to the performance issues.[2] (Supp. Higgins Decl. ¶ 12.)

In any event, none of Brand's complaints about the scope of discovery excuse its spoliation. Brand was in the best position to determine what documents related to its defenses and to preserve those documents.

**B.   Microsoft Teams Communications Between Managers.**

Brand has completely failed to address this issue and, therefore, concedes spoliation. In the opening brief, Plaintiff made clear: "Brand's managers consistently testified that they used text messages <u>and Microsoft Teams</u> to message each other about work issues. Despite this, Brand… has produced only one Microsoft Teams message about Plaintiff." (Motion at p. 1) (emphasis added). Rather than rebutting this assertion, Brand actually helps prove it by submitting a sworn statement by Riapos that she regularly used Teams: "I used email, <u>the Teams messaging system</u>, and I spoke with people either in person or on the phone." (Riapos Decl. ¶ 5) (emphasis added). At her deposition, Riapos said that she and Roman (the other decisionmaker on Plaintiff's layoff) used Microsoft Teams four to five times per week to communicate about work issues. (Riapos Dep. 105:8-21.)[3]

At oral argument, Brand will likely argue (as it did on the other issues) that the Court should give Brand the benefit of the doubt and presume that the missing data was either irrelevant (or helpful) to Brand. This would require the Court to conclude that Riapos (and other managers) did not use Teams to discuss topics such as Plaintiff's performance or why Plaintiff was selected for layoff. That conclusion is contrary to the other evidence in this case. Riapos says that she mainly communicates via <u>emails</u> and <u>Teams</u>. In her emails, she discussed Plaintiff numerous times. For instance, she wrote an email to Meg Newman that she had long-term plans for Plaintiff and cited specific duties, making no mention of performance issues. (Supp. Higgins

---

[2] *See also* Supp. Higgins Ex. 11 (2d Supp. Answer to Rog. No. 8) where Brand identifies numerous witnesses and issues of fact.

[3] Higgins Ex. 5 (Dkt. 31-1).

REPLY ON MOTION FOR SANCTIONS - 4
(No. 2:21-cv-00754)

Law Offices of Alex J. Higgins
Denny Building, Suite 500
2200 Sixth Avenue
Seattle, WA 98121
(206) 340-4856

Ex. 13.) Notably, that email was sent <u>after</u> the alleged performance issues that Riapos now claims caused her to layoff Plaintiff, and only 3 months before the layoff. (*Id.*)

**C.     The Text Messages.**

After many emails and discussions about the failure to produce any text messages, Brand now contends—for the very first time—that Riapos testified "mistakenly" at her deposition.[4] Plaintiff's counsel has been asking about these missing text messages beginning on June 3, 2022—immediately after Riapos's deposition. In addition to discussions, we emailed defense counsel about the missing text messages on June 3, June 10, June 21, June 30, and August 3 (when this item was added to a FRCP 37 Conference agenda).[5] (Supp. Higgins Decl. ¶ 16.) On August 23, Brand reiterated the only explanation ever made: "We have followed up regarding the messages and do not have any additional messages to produce." (Higgins Ex. 7.)

In the depositions, Plaintiff asked every witness about text messages and preservation. (Higgins Decl. ¶ 7.) Even during the October 3 discovery conference, defense counsel did not suggest that Riapos "mistakenly" testified at her deposition. (Supp. Higgins Decl. ¶ 16.)

Riapos's new story raises more questions, such as exactly <u>when</u> she searched her phone "before her deposition." Her deposition was 18 months after Brand was first put on notice to preserve documents. Was it only a few days before the deposition? If so, why had she forgotten that fact during her actual deposition? Did counsel tell her to search, and if so, when? In discovery conferences, defense counsel has refused to disclose when Riapos searched, claiming privilege. (Supp. Higgins Decl. ¶ 17.) But <u>when</u> she searched is not privileged. As one court explained: "Plaintiffs were entitled to know what kinds and categories of ESI [the defendant's] employees were instructed to preserve and collect, and what specific actions they were instructed to undertake to that end." *Cohen v. Trump*, 2015 WL 3617124, at *7 (S.D. Cal. June 9, 2015)

---

[4] Notably, Riapos reserved signature on her deposition yet made no corrections. (Supp. Higgins Ex. 14.)

[5] On June 10, defense counsel said that they would follow up to ensure no responsive messages existed. (Higgins Decl. ¶ 6.) For almost two weeks, Plaintiff did not hear back, so counsel followed up on June 21: "[W]e understood that you were rechecking the text messages and Teams messages to determine whether messages were preserved and whether there was anything responsive. When will that be completed?" (Higgins Ex. 7.) Brand replied that no responsive messages existed, but did not correct Riapos's allegedly false testimony about not searching her phone. (*Id.*)

REPLY ON MOTION FOR SANCTIONS - 5
(No. 2:21-cv-00754)

Law Offices of Alex J. Higgins
Denny Building, Suite 500
2200 Sixth Avenue
Seattle, WA 98121
(206) 340-4856

(citations and quotations omitted); see also *Cannata v. Wyndham Worldwide Corp.*, 2011 WL 3495987, at *2 (D. Nev. Aug. 10, 2011).

Brand's refusal to disclose the timing of its document preservation efforts is troubling. In any event, the known facts already show its "grossly untimely" preservation. *City of Colton v. Am. Promotional Events, Inc.*, 2011 WL 13223880, at *4 (C.D. Cal. Nov. 22, 2011) (party was "grossly untimely" because it failed to preserve evidence before the lawsuit was filed and for 3 months <u>after</u> the lawsuit was filed).

Michelle Roman's testimony provides a clue about when Brand first searched for text messages. She testified in September 2022, that a "couple of months ago" she searched her phone. (Roman Dep. 10:17.)[6] (Oddly, she also says that she found a few text messages and turned them over to counsel, but those were not produced.). Also, Broschinsky <u>never</u> searched his phone for text messages concerning Plaintiff,[7] but we know those exist because Plaintiff produced 37 pages of texts between the two of them. Brand claims that Broschinsky's texts with Plaintiff are not relevant, but they actually reveal much about her work, *e.g.*, saving Brand millions in temporary labor costs. (*See, e.g.*, Supp. Higgins Ex. 15, pp. 26, 32.) Their text exchanges also refer to her work that was alleged "untimely." (*Id*. at p. 34.)

**D.   Sanctions are appropriate.**

Brand seeks to avoid any sanction whatsoever, arguing that only intentional spoliation is subject to sanctions. That is not accurate. District courts have "inherent authority" to "sanction a party who has despoiled evidence". *Leon v. IDX Systems Corp.*, 464 F.3d 951, 958 (9th Cir. 2006). *See also Bolding v. Banner Bank*, 2020 WL 2614733 (W.D. Wash. May 22, 2020) (a motion for sanctions resulting from failure to preserve and produce ESI brought under FRCP

---

[6] Higgins Ex. 6 (Dkt. 31-1).
[7] Broschinsky Dep. 12:25-13:6:
   Q.   …Did you ever search your [company-issued] phone for text messages with Nannette Basa or about Nannette Basa?
   A.   No, I did not.
   Q.   Did you ever give your phone over to a third party to look at for information about Nannette or her case?
   A.   Nope.

REPLY ON MOTION FOR SANCTIONS - 6
(No. 2:21-cv-00754)

Law Offices of Alex J. Higgins
Denny Building, Suite 500
2200 Sixth Avenue
Seattle, WA 98121
(206) 340-4856

37(e)(2), but analyzed by Judge Lasnik under inherent authority).[8]  Decisions by Judges Robart and Coughenour are cited on pp. 7 and 9 of the main Motion and reinforce these principles.  As Judge Coughenour explained:  "A litigant has a culpable state of mind for spoliation purposes if the evidence was destroyed knowingly, even without intent to breach a duty to preserve it, or negligently."  *Musse v. King Cnty.*, 2021 WL 4709875, at *3 (W.D. Wash. Oct. 8, 2021).  Fault is less than intentional or in bad faith.  *Knickerbocker*, 298 F.R.D. at 678 (Robart, J.).

Plaintiff cannot know for certain the content of the missing communications and, therefore, the law does not require her to prove this unknowable evidence.  See above and *Montoya v. Orange Cnty Sheriff's Dep't*, 2013 WL 12347292, at *9 (C.D. Cal. Oct. 15, 2013); *accord Leon*, 464 F.3d at 959.   The party seeking sanctions "must not be held to too strict a standard of proof regarding the likely contents of the destroyed or unavailable evidence because doing so would allow parties who have destroyed evidence to profit from that destruction."  *Ottoson v. SMBC Leasing & Fin.*, Inc., 268 F. Supp. 3d 570, 580 (S.D.N.Y. 2017) (cleaned up).

We believe that the text and Teams messages would have been very revealing.  Brand did not create any formal documentation (or even discuss in email) why Wilson and Norris were retained instead of Plaintiff.  (*See, e.g.*, Riapos Dep. 99:1-13; Higgins Ex. 3.)  The real reasons may have been disclosed in more informal communications, such as a text or Teams messages.

Finally, Plaintiff seeks a modest remedy – an instruction that a jury "may" infer that the missing evidence would have supported the Plaintiff.  Brand remains free to argue otherwise.

## II.   CONCLUSION

For the above reasons, Plaintiff respectfully requests that the Court find that spoliation occurred and issue an appropriate order to rectify the issue, including an adverse inference jury instruction, an order preventing Brand from using Plaintiff's text messages and an award of attorneys' fees and costs in pursuing this issue.

---

[8] While the parties did not enter into an ESI agreement, the Model Agreement explicitly states that any obligations created by the Agreement supplement the "common law" duties to preserve evidence. https://www.wawd.uscourts.gov/sites/wawd/files/ModelESIAgreement.pdf at p. 7.

REPLY ON MOTION FOR SANCTIONS - 7
(No. 2:21-cv-00754)

Law Offices of Alex J. Higgins
Denny Building, Suite 500
2200 Sixth Avenue
Seattle, WA 98121
(206) 340-4856

DATED this *7th* day of October, 2022.

        LAW OFFICES OF ALEX J. HIGGINS

        *s/Alex J. Higgins*
        Alex J. Higgins, WSBA No. 20868


        BEAN LAW GROUP

        *s/Cody Fenton-Robertson*
        Cody Fenton-Robertson, WSBA No. 47879
        2200 6th Ave, Suite 500
        Seattle, WA 98121
        (206) 522-0618

REPLY ON MOTION FOR SANCTIONS - 8
(No. 2:21-cv-00754)

Law Offices of Alex J. Higgins
Denny Building, Suite 500
2200 Sixth Avenue
Seattle, WA 98121
(206) 340-4856